Geoffrey M. Davis (SBN 214692)
K&L GATES LLP
10100 Santa Monica Bl., 8th Floor
Los Angeles, CA 90067
Telephone: 310.552.5042
Facsimile: 310.552.5001
Email: geoffrey.davis@klgates.com

Daniel M. Eliades (*Pro Hac Vice* Pending)
K&L GATES LLP
One Newark Center, 10th Floor
Newark, NJ 07102
Telephone: 973.848.4018
Facsimile: 973.848.4001
Email: Daniel.Eliades@klgates.com

*Attorneys for Defendant, Counterclaimant, and
Third Party Plaintiff, Corcoran Group LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELI Realty Investments, LLC, a Nevada limited liability company; Exclusive Lifestyles SoCal, LLC, a California limited liability company; Exclusive Lifestyles San Francisco, Inc., a California corporation; Exclusive Lifestyles Ohio, LLC, an Ohio limited liability company; and Exclusive Lifestyles Las Vegas, LLC, a Nevada limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> Corcoran Group, LLC, a Delaware limited liability company; DOES 1 through 10, <br><br> Defendants | Case No. 8:22-CV-01195-JWH-ADS <br><br> **ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD PARTY COMPLAINT OF CORCORAN GROUP LLC** |

1

Corcoran Group LLC,

      Counterclaimant and Third  Party Plaintiff,

vs.

ELI Realty Investments, LLC; Michael Mahon; Pamela Mahon; MRM Investments, LLC; AIM High Capital Partners, LLC; Libertas Funding LLC; Matek LLC; and DOES 1 - 10,

      Counterclaim Defendants and Third Party Defendants.

---

Corcoran Group LLC, by way of (i) Answer and Affirmative Defenses to the Complaint of ELI Realty Investments, LLC; Exclusive Lifestyles San Francisco, Inc.; Exclusive Lifestyles SoCal, LLC; Exclusive Lifestyles Las Vegas, LLC; Exclusive Lifestyles Ohio, LLC; and (ii) Counterclaims and Third Party Complaint against ELI Realty Investments, LLC; Michael Mahon; Pamela Mahon; MRM Investments LLC; Aim High Capital Partners, LLC; Libertas Funding LLC; Matek LLC; and Does 1 through 10, hereby states and alleges:

## ANSWER

### The Parties

1.    Corcoran Group LLC ("Franchisor" or "Corcoran") admits the allegations in paragraph one of the Complaint.

2.    Corcoran admits the allegations in paragraph two of the Complaint.

3.    Corcoran admits the allegations in paragraph three of the Complaint.

4.    Corcoran admits the allegations in paragraph four of the Complaint.

5.    Corcoran admits the allegations in paragraph five of the Complaint.

6.    Corcoran admits the allegations in paragraph six of the Complaint.

7.    Corcoran admits the allegations in paragraph seven of the Complaint.

### Jurisdiction and Venue

8.      Corcoran admits the allegations in paragraph eight of the Complaint.

9.      Corcoran admits the allegations in paragraph nine of the Complaint only to the extent that this Court has personal jurisdiction over Corcoran.  Corcoran denies all remaining allegations in paragraph nine of the Complaint.

10.     Corcoran admits the allegations in paragraph ten of the Complaint only to the extent that Venue is proper in this District.  Corcoran denies all remaining allegations in paragraph nine of the Complaint.

### Corcoran and the Franchise Agreements

11.     Corcoran admits the allegations in paragraph eleven of the Complaint only to the extent that Corcoran was formed on October 1, 2015 and began offering franchises in 2019.  Corcoran denies all remaining allegations in paragraph eleven of the Complaint.

12.     Corcoran lacks sufficient information and knowledge to form a belief as to the truth of the allegations in the first sentence of paragraph twelve of the Complaint. Corcoran denies the remaining allegations in paragraph twelve of the Complaint.

13.     Corcoran admits the allegations in paragraph thirteen of the Complaint only to the extent that Corcoran provided ELI Realty Investments with a Franchise Disclosure Document.  Corcoran denies all remaining allegations and characterizations, including any characterization of the Franchise Disclosure Document, Policy and Procedures Manuel or Franchise Agreements because the same are written instruments, the terms of which speak for themselves.

14.      Corcoran denies the allegations and characterizations in paragraph 14 of the Complaint, including any characterization of the Franchise Documents because the same are written instruments, the terms of which speak for themselves.

15.     Corcoran denies the allegations and characterizations in paragraph 15 of the Complaint, including any characterization of the Franchise Documents because the same are written instruments, the terms of which speak for themselves.

16.     Corcoran denies the allegations and characterizations in paragraph sixteen of the Complaint, including any characterization of the Franchise Documents because the same are written instruments, the terms of which speak for themselves.

17.     Corcoran denies the allegations and characterizations in paragraph seventeen of the Complaint, including any characterization of the Franchise Documents because the same are written instruments, the terms of which speak for themselves.

18.     Corcoran admits the allegations in paragraph eighteen of the Complaint only to the extent that Corcoran Group and ELI Realty Investments entered a Real Estate Franchise Agreement, the terms of which speaks for itself.  Corcoran lacks sufficient information and knowledge to form a belief as to the truth of the remaining allegations in paragraph eighteen of the Complaint.

19.     Corcoran admits the allegations in paragraph nineteen of the Complaint only to the extent that Corcoran and Exclusive Lifestyles San Francisco Inc. entered a Real Estate Franchise Agreement, the terms of which speaks for itself.  Corcoran lacks sufficient information and knowledge to form a belief as to the truth of the remaining allegations in paragraph nineteen of the Complaint.

20.     Corcoran admits the allegations in paragraph twenty of the Complaint only to the extent that ELI Realty Investments conveyed certain Conversion Promissory Notes to Corcoran. Corcoran denies the remaining allegations and characterizations in paragraph twenty of the Complaint, including any characterization of the Conversion Promissory Notes because the same are written instruments, the terms of which speak for themselves.

**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT OF CORCORAN GROUP LLC**
8:22-CV-01195-JWH-ADS

21.     Corcoran denies the allegations in paragraph twenty-one of the Complaint, including any characterization of the Conversion Promissory Notes because the same are written instruments, the terms of which speak for themselves.

22.     Corcoran denies the allegation of paragraph twenty-two of the Complaint, including any characterization of the Conversion Promissory Notes because the same are written instruments, the terms of which speak for themselves.

23.     Corcoran admits that it entered into a Franchise Agreement with Exclusive Lifestyles SoCal, LLC that speaks for itself, and denies the remaining allegations of paragraph twenty-three of the Complaint.

24.     Corcoran admits that it entered into a Franchise Agreement with Exclusive Lifestyles Las Vegas, LLC that speaks for itself, and denies the remaining allegations of paragraph twenty-four of the Complaint.

25.     Corcoran admits that it entered into a Franchise Agreement on or about June 23, 2021, with Exclusive Lifestyles Ohio, LLC that speaks for itself, and denies the remaining allegations of paragraph twenty-five of the Complaint.

26.     Corcoran denies the allegations in paragraph twenty-six of the Complaint, including any characterization of the Franchise Agreements because the same are written instruments, the terms of which speak for themselves.

27.     Corcoran denies the allegations in paragraph twenty-seven of the Complaint.

28.     Corcoran denies the allegations in paragraph twenty-eight of the Complaint.

29.     Corcoran denies the allegations in paragraph twenty-nine of the Complaint.

30.     Corcoran denies the allegations in paragraph thirty of the Complaint.

31.     Corcoran lacks sufficient information and knowledge to form a belief as to the truth of the allegations in paragraph thirty-one of the Complaint concerning

Plaintiffs' audit.  Corcoran denies the remaining allegations in paragraph thirty-one of the Complaint, including the allegation that Plaintiffs overpaid $388,153 during 2020.

32.     Corcoran denies the allegations in paragraph thirty-two of the Complaint.

33.     Corcoran admits that it received a letter dated March 17, 2022, that speaks for itself, and denies the remaining allegations of paragraph thirty-three of the Complaint.

34.     Corcoran denies the allegations in paragraph thirty-four of the Complaint.

## COUNT I

### Breach of ELI Realty Investments Contract

35.     Corcoran repeats and makes a part hereto each and every response contained in the preceding paragraphs of the Answer.

36.     Corcoran denies the allegations in paragraph thirty-six of the Complaint.

37.     Corcoran denies the allegations in paragraph thirty-seven of the Complaint.

38.     Corcoran denies the allegations in paragraph thirty-eight of the Complaint.

## COUNT II

### Breach of Exclusive Lifestyles SF Contract

39.     Corcoran repeats and makes a part hereto each and every response contained in the preceding paragraphs of the Answer.

40.     Corcoran denies the allegations in paragraph forty of the Complaint.

41.     Corcoran denies the allegations in paragraph forty-one of the Complaint.

42.     Corcoran denies the allegations in paragraph forty-two of the Complaint.

## COUNT III

### Breach of Exclusive Lifestyles SoCal Contract

43.     Corcoran repeats and makes a part hereto each and every response contained in the preceding paragraphs of the Answer.

44.     Corcoran denies the allegations in paragraph forty-four of the Complaint.

6

45.   Corcoran denies the allegations in paragraph forty-five of the Complaint.

46.   Corcoran denies the allegations in paragraph forty-six of the Complaint.

## COUNT IV

### Breach of Exclusive Lifestyles LV Contract

47.   Corcoran repeats and makes a part hereto each and every response contained in the preceding paragraphs of the Answer.

48.   Corcoran denies the allegations in paragraph forty-eight of the Complaint.

49.   Corcoran denies the allegations in paragraph forty-nine of the Complaint.

50.   Corcoran denies the allegations in paragraph fifty of the Complaint.

## COUNT V

### Breach of Exclusive Lifestyles Ohio Contract

51.   Corcoran repeats and makes a part hereto each and every response contained in the preceding paragraphs of the Answer.

52.   Corcoran denies the allegations in paragraph fifty-two of the Complaint.

53.   Corcoran denies the allegations in paragraph fifty-three of the Complaint.

54.   Corcoran denies the allegations in paragraph fifty-four of the Complaint.

## COUNT VI

### Fraud

55.   Corcoran repeats and makes a part hereto each and every response contained in the preceding paragraphs of the Answer.

56.   Corcoran denies the allegations in paragraph fifty-six of the Complaint.

57.   Corcoran denies the allegations in paragraph fifty-seven of the Complaint, including any characterization of the Conversion Promissory Notes because the same are written instruments, the terms of which speak for themselves.

58.   Corcoran denies the allegations in paragraph fifty-eight of the Complaint, including any characterization of the Conversion Promissory Notes because the same are written instruments, the terms of which speak for themselves.

59.   Corcoran denies the allegations in paragraph fifty-nine of the Complaint.

60.   Corcoran denies the allegations in paragraph sixty of the Complaint.

61.   Corcoran denies the allegations in paragraph sixty-one of the Complaint.

62.   Corcoran denies the allegations in paragraph sixty-two of the Complaint.

## COUNT VII

## Violation of Cal. Bus. and Prof. Code § 17200

63.   Corcoran repeats and makes a part hereto each and every response contained in the preceding paragraphs of the Answer.

64.   The allegations in paragraph sixty-four state legal conclusions to which no response is required. To the extent a response is required, Corcoran denies any liability for alleged violations of the referenced statute or acts volatile of the referenced statute.

65.   Corcoran denies the allegations in paragraph sixty-five of the Complaint.

66.   Corcoran denies the allegations in paragraph sixty-six of the Complaint.

67.   Corcoran denies the allegations in paragraph sixty-seven of the Complaint.

## JURY DEMAND

68.   Corcoran denies the allegation and jury demand in paragraph sixty-eight of the Complaint. In their Real Estate Franchise Agreements with Corcoran, each of the Plaintiffs specifically waived ". . . the right to a jury trial in any action arising out of or related to this Agreement or any aspect of the relationship between you, us, any guarantor and their respective successors and assigns."

## ANSWER TO PRAYER FOR RELIEF

Corcoran denies that Plaintiffs are entitled to any of the relief requested against Corcoran in the Complaint, or any other relief of any kind. Wherefore, Corcoran prays for judgment as follows: (i) that Plaintiffs take nothing by their Complaint; (ii) that Corcoran be awarded judgment in its favor and against Plaintiffs; (iii) for its costs of suit incurred herein; and (iv) for such other and further relief as this Court may deem

just and proper, including, but not limited to, attorneys' fees and costs in accordance with applicable law.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a cause of action against Corcoran upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The Complaint fails to plead claims against Corcoran with sufficient particularity as required by Fed. R. Civ. P. 9(b).

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' breached the contracts that are the subject of this action and, as such, are not entitled to the damages they seek.

### FOURTH AFFIRMATIVE DEFENSE

If Plaintiffs suffered damages, the same were caused by Plaintiffs' own actions or inactions.

### FIFTH AFFIRMATIVE DEFENSE

Injuries and damages sustained by Plaintiffs, if any, were the result of the acts and/or omissions of third parties other than Corcoran.

### SIXTH AFFIRMATIVE DEFENSE

Injuries and damages sustained by Plaintiffs, if any, were the result of the intentional acts of third parties over which Corcoran has no control.

### SEVENTH AFFIRMATIVE DEFENSE

Injuries and damages sustained by Plaintiffs, if any, were not proximately caused by the conduct of Corcoran.

### EIGHTH AFFIRMATIVE DEFENSE

Corcoran satisfied each and every duty that was owed to Plaintiffs.

**NINTH AFFIRMATIVE DEFENSE**

Plaintiffs are barred from seeking equitable relief under the doctrine of unclean hands and other inequitable conduct.

**TENTH AFFIRMATIVE DEFENSE**

Although Corcoran disputes that any amounts are due and owing to Plaintiffs, if Plaintiffs establish that amounts are due and owing, Corcoran is entitled to a setoff.

**ELEVENTH SEPARATE DEFENSE**

Plaintiffs' claims are barred by the doctrine of avoidable consequences.

**TWELFTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because of ratification, agreement, acquiescence, or consent to Corcoran's alleged conduct.

**FOURTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred as Plaintiffs have released, settled, entered into an accord and satisfaction or otherwise compromised their claims set forth in the Complaint, and accordingly, said claims are barred by operation of law. Alternatively, Plaintiffs have accepted compensation as partial settlement of those claims for which Corcoran is entitled to a setoff.

**FIFTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred as Plaintiffs have waived, in writing and otherwise, any and all claims sought in this action and are estopped both to assert and to recover upon such claims.

**SIXTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred as Plaintiffs have acknowledged, ratified, consented to and acquiesced in the alleged acts or omissions, if any, of Corcoran, thus barring Plaintiffs from any relief as prayed for herein.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

Corcoran will rely upon any and all other further defenses which become available or appear during discovery proceedings in this action and hereby specifically reserve the right to amend their answer for the purposes of asserting any such additional affirmative defenses.

## COUNTERCLAIMS AND THIRD PARTY CLAIMS

Corcoran Group LLC, by way of Counterclaims and Third Party Complaint against ELI Realty Investments, LLC; Michael Mahon; Pamela Mahon; MRM Investments LLC; Aim High Capital Partners, LLC; Libertas Funding LLC; Matek LLC; and Does 1 through 10, hereby states and alleges:

## PARTIES, JURISDICTION AND VENUE

1.     Corcoran Group LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 175 Park Avenue, Madison, New Jersey. Corcoran's sole member is a limited liability company organized under the laws of the State of Delaware with a principal place of business in New Jersey.

2.     Counterclaim defendant, ELI Realty Investments, LLC ("ELI Realty") is a limited liability company organized and existing under the laws of the State of Nevada with its principal place of business located at 65 Foothill Road, Suite 2, Reno, Nevada 89511. The members of ELI Realty are: (i) MRM Investments LLC, a limited liability company organized and existing under the laws of the State of Nevada, which is owned by Michael Mahon who is a resident of the State of California; (ii) Carbon Brokers LLC, a limited liability company organized and existing under the laws of the State of Kentucky, which is owned by Amon L. Mahon who, upon information and belief, is a resident of the State of Kentucky; (iii) Clermont Capital Consultants, LLC, a limited liability company organized and existing under the laws of the State of Michigan, which

**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT OF CORCORAN GROUP LLC**
8:22-CV-01195-JWH-ADS

is owned by Denise M. Lachman and Larissa Lachman, who, upon information and belief, are residents of the State of Michigan; (iv) Indian Mound Capital Partners, LLC a limited liability company organized and existing under the laws of the State of Michigan, which is owned by Erik. S. Stamell who, upon information and belief, is a resident of the State of Michigan; and (v) MJZ Investments, LLC a limited liability company organized and existing under the laws of the State of Pennsylvania, which is owned by Obie Walli who, upon information and belief, is a resident of the State of Pennsylvania.

3.     Third party defendant, Michael Mahon is an individual and, upon information and belief, a citizen of the State of California, residing at 26 Panorama, Trabuco, California 92679.

4.     Third party defendant, Pamela Mahon is an individual and, upon information and belief, a citizen of the State of California, residing at 26 Panorama, Trabuco, California 92679.

5.     Third party defendant, MRM Investments LLC is a limited liability company organized and existing under the laws of the State of Nevada with its principal place of business located at 112 N. Curry Street, Carson City, Nevada 89703. Upon information and belief, Michael Mahon is the sole member of MRM Investments LLC. Michael Mahon is a resident of the State of California.

6.     Third party defendant, Aim High Capital Partners, LLC is a limited liability company organized and existing under the laws of the State of Nevada with its principal place of business located at 701 S. South Carson Street, Suite 200, Carson City, Nevada 89701. The members of Aim High Capital Partners, LLC are (i) MRM Investments, LLC, a limited liability company organized and existing under the laws of the State of Nevada, which is owned by Michael Mahon who is a resident of the State of California; (ii) Carbon Brokers LLC, a limited liability company organized and existing under the laws of the State of Kentucky, which is owned by Amon L. Mahon who is a resident of

**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT
OF CORCORAN GROUP LLC**
8:22-CV-01195-JWH-ADS

the State of Kentucky; (iii) Clermont Capital Consultants, LLC, a limited liability company organized and existing under the laws of the State of Michigan, which is owned by Denise M. Lachman and Larissa Lachman, residents of the State of Michigan; (iv) Indian Mound Capital Partners, LLC a limited liability company organized and existing under the laws of the State of Michigan, which is owned by Erik. S. Stamell who is a resident of the State of Michigan; and  (v) MJZ Investments, LLC a limited liability company organized and existing under the laws of the State of Pennsylvania, which is owned by Obie Walli who is a resident of the State of Pennsylvania.

7.     The members of ELI Realty and Aim High Capital Partners, LLC are identical.

8.     Third party defendant, Libertas Funding LLC is a limited liability company organized and existing under the laws of the State of Connecticut, with its principal place of business located at 411 West Putnam Avenue, Suite 220, Greenwich, Connecticut 06380. Upon information and belief, Gary Katcher, Rick Spear, and Craig Paul are the members of Libertas Funding LLC and, upon information and belief, all are residents of the State of Connecticut.

9.     Third party defendant, Matek LLC is a limited liability company organized and existing under the laws of the State of Pennsylvania with its principal place of business located at 1839 Majestic Dr, Orefield, PA 18069-9115. Upon information and belief, Obie Walli is the sole member of Matek LLC. Upon information and belief, Obie Walli is a resident of the State of Pennsylvania.

10.     Third party defendants, Does 1 through 10 are fictitious entities and/or individuals.  The names and capacities, whether individual, corporate, associate or otherwise of Does 1 through 10, inclusive, are presently unknown to Plaintiff and, for that reason, each is sued by such fictitious names.  Plaintiff is informed and believes and on that basis alleges that each of the Does 1 through 10 is in some manner

responsible for the damages suffered by Plaintiff herein.  Plaintiff will amend this Complaint when the true names and capacities of the Does are known.

11.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 inasmuch as Corcoran and all of the counterclaim/third party defendants are citizens of different states, and the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

12.    This Court has personal jurisdiction over Counterclaim Third Party Defendant, Eli Realty, because it is a Plaintiff in this action.  This Court has personal jurisdiction over Third Party Defendants, Michael Mahon and Pamela Mahon, because, upon information and belief, they are California residents.  This Court has personal jurisdiction over Third Party Defendants,  MRM Investments LLC, Aim High Capital Partners, LLC, Libertas Funding LLC and Matek LLC because, as more fully alleged herein, each of these entities: (i) purposefully availed themselves to the privileges of conducting activities within California by directing their activities there; (ii) the suit arises out of or relates to their contacts with California; and (3) exercising personal jurisdiction in California comports with due process.

## ALLEGATIONS COMMON TO ALL COUNTS

### A.    Overview.

13.    This controversy has little to do with the allegations contained in the Complaint – which are a smokescreen.

14.    This matter really involves the unlawful (and often clandestine) conduct of ELI Realty and its current management.

15.    Beginning January 2020, Corcoran made loans to ELI Realty that were to be used by ELI Realty to purchase real estate brokerages. ELI Realty and the sellers of those brokerages formed new entities that entered into franchise agreements with Corcoran and thereafter operated approved real estate brokerage offices as franchisees of

Corcoran.  ELI Realty maintained a majority interest in each of the newly formed joint ventures.

16.     ELI Realty holds majority ownership interests in: (i) Exclusive Lifestyles San Francisco, Inc. ("Exclusive San Francisco"); (ii) Exclusive Lifestyles SoCal, LLC ("Exclusive SoCal"); (iii) Exclusive Lifestyles Las Vegas, LLC ("Exclusive Las Vegas"); and (iv) Exclusive Lifestyles Ohio, LLC ("Exclusive Ohio") - (collectively, the "JV Franchisees"). ELI Realty and each of the JV Franchisees are parties to separate franchise agreements and security agreements with Corcoran.

17.     Unbeknownst to Corcoran, ELI Realty used other proceeds of the Corcoran loans and/or proceeds of Corcoran's collateral to engage in a series of fraudulent conveyances – including payment of lavish distributions or bonuses to insiders, including Michael Mahon, Pamela Mahon, and an entity owned by Obie Walli. Upon information and belief, ELI Realty was aided and abetted in its illicit endeavors by individuals and/or entities (including professionals) who may be identified (and added as parties in this action) as discovery proceeds.

18.     In 2021, ELI Realty attempted to raise $25 million in exchange for senior unsecured notes.  Upon information and belief, this effort was unsuccessful and no funds were raised as a result of the "bond offering" of ELI Realty.

19.     Beginning in December 2021, Michael Mahon entered into unlawful agreements with Libertas Funding LLC, purportedly on behalf of ELI Realty, Exclusive San Francisco, and Exclusive SoCal. Pursuant to the Libertas agreements, ELI Realty, Exclusive San Francisco, and Exclusive SoCal agreed to sell Libertas $5,864,666.95 of their combined future receipts in exchange for $4,237,144.06 – meaning that these franchisees would realize only 72.25% of every dollar they earned until more than $5.8 million was paid to Libertas. In exchange, these franchisees agreed to pay Libertas over $100,000 each week. Upon information and belief, Mr. Mahon kept the minority

**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT OF CORCORAN GROUP LLC**
8:22-CV-01195-JWH-ADS

shareholders/members of Exclusive San Francisco and Exclusive SoCal in the dark about the Libertas agreements – and has still not informed them of their existence.

20.     In or around May 2022, management of ELI Realty advised Corcoran that ELI Realty and the JV Franchisees had a cash flow short fall of millions of dollars. At that time, the outstanding franchise fees due to Corcoran exceeded $1 million. Management of ELI Realty requested that Corcoran make an "emergent" multi-million dollar loan to ELI Realty and the JV Franchisees. Upon information and belief, management of ELI Realty did not inform the minority shareholders/members of the JV Franchisees of the financial condition of the businesses or the request for an "emergent" multi-million dollar loan from Corcoran.

21.     In May 2022, Corcoran noticed ELI Realty and the JV Franchisees of various defaults under franchise agreements, notes, and security agreements with Corcoran. Upon information and belief, management of ELI Realty did not inform the minority shareholders/members of the JV Franchisees of any of the default notices.

22.     Corcoran thereafter attempted in good faith to negotiate a forbearance agreement with ELI Realty and the JV Franchisees, but an agreement was not reached. Corcoran believes that a forbearance agreement did not come about because ELI Realty would not consent to discussions between Corcoran and the minority shareholders/members of the JV Franchisees. Upon information and belief, management of ELI Realty did not inform the minority shareholders/members of the JV Franchisees about the forbearance agreement discussions.

23.     Representatives of Corcoran, ELI Realty and the JV Franchisees continued discussions concerning a forbearance agreement throughout the day on June 21, 2022 – with Corcoran waiting to hear back from representatives of ELI Realty and the JV Franchisees. No response came from ELI Realty or the JV Franchisees. Instead, the Complaint was filed on behalf of ELI Realty and the JV Franchisees on June 21, 2022.

**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT OF CORCORAN GROUP LLC**
8:22-CV-01195-JWH-ADS

Upon information and belief, management of ELI Realty did not inform the minority shareholders/members of the JV Franchisees about the filing of the Complaint.

**B.**     **The Corcoran Marks and System.**

24.     Corcoran has the exclusive right to use and sublicense certain trade names, trademarks and service marks that have been registered on the Principal Register of the United States Patent and Trademark Office, with other appropriate state agencies in the United States, and with governmental agencies of foreign countries (which marks, together with certain other trademarks and service marks that are not registered or that are pending registration, are hereinafter collectively referred to as the "Corcoran Marks").

25.     Corcoran has developed a franchise system for the promotion and assistance of independently owned and/or operated real estate brokerage offices, including policies, procedures and techniques designed to enable such offices to compete more effectively in the real estate market (which system is hereinafter referred to as the "Corcoran System"). The Corcoran System includes, but is not limited to, common use and promotion of certain Corcoran Marks, copyrights, trade secrets, centralized advertising programs, recruiting programs, referral programs and sales and management training programs.  Corcoran, from time to time, revises and updates the Corcoran System.

26.     Corcoran or its predecessors have continuously used each of the Corcoran Marks since the date of their registration and those service marks are in full force and effect pursuant to 15 U.S.C. § 1065.  Corcoran has given notice to the public of the registration of the Corcoran Marks as provided in 15 U.S.C. § 1111, and Corcoran uses or has used the Corcoran Marks as abbreviations of its brand name.

27.     Through its franchise system, Corcoran markets, promotes and provides services to its real estate brokerage franchisees throughout the United States.  To identify the origin of their real estate broker services, Corcoran allows its franchisees to utilize the Corcoran Marks and to otherwise associate their brokerage services with Corcoran.

**C.    The ELI Realty Franchise Agreement.**

28.    Corcoran and ELI Realty are parties to that certain Real Estate Franchise Agreement dated January 19, 2020 and certain amendments/addendums thereto[1] (collectively, the "ELI Realty Franchise Agreement").

29.    Pursuant to the ELI Realty Franchise Agreement, ELI Realty obtained the non-exclusive right to utilize the Corcoran System and Corcoran Marks in the operation of approved real estate brokerage offices, defined in the ELI Realty Franchise Agreement, and collectively referred to herein, as the "Offices".

30.    The ELI Realty Franchise Agreement has a term of fifteen (15) years from the "Opening Date".

31.    The ELI Realty Franchise Agreement obligates ELI Realty to pay to Corcoran a "Royalty Fee" and other amounts as and when set forth in Section 7 of the ELI Realty Franchise Agreement.  Nonpayment of the "Royalty Fee" and/or other amounts set forth in Section 7 is an event of default by ELI Realty under the ELI Realty Franchise Agreement.

32.    The ELI Realty Franchise Agreement also requires ELI Realty to report transactions to Corcoran.  Failure by ELI Realty to report transactions as required is an event of default under the ELI Realty Franchise Agreement.

33.    In addition to the Royalty Fee, the ELI Realty Franchise Agreement obligates ELI Realty to pay to Corcoran "Brand Marketing Fund" contributions as and when set forth in Section 8 of the ELI Realty Franchise Agreement.  Nonpayment of Brand Marketing Fund contributions is an event of default under the ELI Realty Franchise Agreement.

---

[1] The amendments/addendums include the Addendum to Franchise Agreement dated January 17, 2020; the Second Addendum to Franchise Agreement dated September 4, 2020; and the Third Addendum and Ownership Change Addendum dated September 2, 2021.

**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT OF CORCORAN GROUP LLC**
8:22-CV-01195-JWH-ADS

34.     The ELI Realty Franchise Agreement obligates ELI Realty to pay Corcoran interest and other amounts as and when set forth in Section 11 of the ELI Realty Franchise Agreement.

35.     The ELI Realty Franchise Agreement obligates ELI Realty to pay Corcoran attorneys' fees, costs and other amounts as and when set forth in Section 22.10 of the ELI Realty Franchise Agreement.

36.     The ELI Realty Franchise Agreement obligates ELI Realty to pay Corcoran certain liquidated damages in the event of that the ELI Realty Franchise Agreement is terminated before the "Expiration Date" (as defined in the ELI Realty Franchise Agreement), other than by mutual consent.

37.     The ELI Realty Franchise Agreement is governed by the laws of the State of New Jersey as set forth in Section 22.5 of the ELI Realty Franchise Agreement.

38.     In Section 22.8 of the ELI Realty Franchise Agreement, ELI Realty waived ". . . the right to a jury trial in any action arising out of or related to this Agreement or any aspect of the relationship between you, us, any guarantor and their respective successors and assigns."

**D.     The ELI Realty Guaranty.**

39.     Michael Mahon, Pamela Mahon, and MRM Investments LLC are collectively referred to as the "Guarantors".

40.     On or around January 17, 2020, Guarantors executed and conveyed to Corcoran a Guaranty of Payment and Performance (collectively the "ELI Realty Guaranty").

41.     Pursuant to the ELI Realty Guaranty, Guarantors guaranteed prompt payment and performance of all of the obligations of ELI Realty to Corcoran under the ELI Realty Franchise Agreement as well as all other agreements or instruments between ELI Realty and Corcoran, including the Notes (defined below) and ELI Realty Security Agreement (defined below).

42.     The ELI Realty Guaranty was conveyed to Corcoran to, among other things, induce Corcoran to accept ELI Realty as a franchisee and to convey certain loans to ELI Realty that are evidenced by the Notes (defined below).

43.     The ELI Realty Guaranty is governed by the laws of the State of New Jersey in all respects.

44.     In the ELI Realty Guaranty, each of the Guarantors waived the right to a jury trial in any action arising out of or related to this ELI Realty Franchise Agreement or any aspect of the relationship between Corcoran, ELI Realty, or any of the Guarantors.

**E.    The Corcoran Loans and the ELI Realty Notes.**

45.     From January 2020 through February 2022, Corcoran advanced various loans to ELI Realty (the "Corcoran Loans").

46.     The proceeds of the Corcoran Loans were to be used by ELI Realty to purchase ownership interests in brokerages, then form entities that would enter into separate Real Estate Franchise Agreements with Corcoran, and thereafter operate approved real estate brokerage offices as franchisees of Corcoran.

47.     In connection with the Corcoran Loans, ELI Realty executed and conveyed to Corcoran the following Conversion Promissory Notes (collectively, the "Notes"): (i) Conversion Promissory Note dated January 23, 2020; (ii) Conversion Promissory Note dated January 28, 2020; (iii) Conversion Promissory Note dated June 30, 2020; (iv) Conversion Promissory Note dated July 27, 2020; (v) Conversion Promissory Note dated September 8, 2020; (vi) Conversion Promissory Note dated September 9, 2020; (vii) Conversion Promissory Note dated September 29, 2020; (viii) Conversion Promissory Note dated November 13, 2020; (ix) Conversion Promissory Note dated November 30, 2020; (x) Conversion Promissory Note dated December 9, 2020; (xi) Conversion Promissory Note dated December 10, 2020; (xii) Conversion Promissory Note dated March 11, 2021; (xiii) Conversion Promissory Note dated March 11, 2021;

**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT OF CORCORAN GROUP LLC**
8:22-CV-01195-JWH-ADS

(xiv) Conversion Promissory Note dated March 15, 2021; (xv) Conversion Promissory Note dated June 2, 2021; (xvi) Conversion Promissory Note dated July 8, 2021; (xvii) Conversion Promissory Note dated August 12, 2021; (xviii) Conversion Promissory Note dated August 18, 2021; (xix) Conversion Promissory Note dated September 1, 2021; (xx) Conversion Promissory Note dated September 1, 2021; (xxi) Conversion Promissory Note dated October 20, 2021; (xxii) Conversion Promissory Note dated November 3, 2021; (xxiii) Conversion Promissory Note dated December 2, 2021; (xxiv) Conversion Promissory Note dated January 10, 2022; (xxv) Conversion Promissory Note dated January 12, 2022; (xxvi) Conversion Promissory Note dated January 27, 2022; and (xxviii) Conversion Promissory Note dated February 28, 2022.

48.     Michael Mahon executed each of the Notes on behalf of ELI Realty.

49.     A default by ELI Realty of any agreement between Corcoran and ELI Realty, including the ELI Realty Franchise Agreement and the ELI Realty Security Agreement (defined below), is an event of default under each of the Notes.

50.     Termination or expiration of the ELI Realty Franchise Agreement is also an event of default under each of the Notes.

51.     Upon an event of default under the Notes, which has not been cured within the applicable time period, if any, Corcoran is entitled to accelerate the unpaid principal of the Notes and all accrued interest, and the same shall become immediately due and payable by ELI Realty, and is not subject to any rights of offset or recoupment.

52.     In the Notes, ELI Realty agreed to pay all expenditures made by Corcoran in any attempt to collect amounts due under the Notes, including reasonable attorneys' fees and costs.

53.     The Notes are governed by the laws of the State of New Jersey.

**F.     The ELI Realty Security Agreement.**

54.     To secure payment and performance of ELI Realty under the ELI Realty Franchise Agreement, Notes, and all other agreements of ELI Realty to Corcoran, ELI

Realty granted security interests to Corcoran in certain property pursuant to that certain Security Agreement dated January 17, 2020 (the "ELI Realty Security Agreement").

55.     Pursuant to the Security Agreement, ELI Realty granted Corcoran a security interest in the following property then owned or thereafter acquired by ELI Realty (the "Corcoran Collateral"):

*For good and valuable consideration, the receipt and sufficiency of which are acknowledged, Debtor grants to Secured Party a security interest in all accounts receivable and payment intangibles; cash proceeds; contract rights; leases; furniture; furnishings; equipment; fixtures; inventory; commissions; real estate listings, listing agreements and related rights which are located at, utilized by or related to the real estate brokerage business conducted by Debtor and including the proceeds therefrom and any and all amendments or replacements thereto and any rebate/award program (or similar incentive programs) to which Debtor and/or any Co-Debtors may be entitled pursuant to any franchise agreement entered into with Secured Party, together with all such rights and property hereafter acquired by Debtor and Co- Debtors; and all general intangibles (collectively, the "Collateral") as well as all parts, replacements, substitutions, profits, products and cash and non-cash proceeds of the foregoing Collateral (including insurance and condemnation proceeds payable by reason of condemnation of or loss or damage thereto). [Add following only for Security Agreements filed in New Jersey - The Collateral described herein falls within the scope of the Uniform Commercial Code enacted in New Jersey, including N.J.S.A. 12A:9-102 and N.J.S.A. 12A:9-109.] The foregoing Collateral is granted to Secured Party as security for (i) the prompt payment of any promissory notes executed by Debtor in favor of Secured Party, and any renewals, compromises, extensions, modifications, accelerations or other changes in the time for performance or other terms (the "Notes"), and (ii) performance under any franchise agreements between Debtor and*

**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT OF CORCORAN GROUP LLC**
8:22-CV-01195-JWH-ADS

*Secured Party, as the same may be amended (the "Franchise Agreements"), and (iii) all other agreements between Debtor and Secured Party.*

56.     The security interests granted per the ELI Realty Security Agreement were perfected by the filing of a UCC-1 Financing Statement with the Secretary of State of the State of Nevada on January 31, 2020 under number 2020069173-2.

57.     At Section 1 of the ELI Realty Security Agreement, ELI Realty[2] agreed as follows:

*(a)     Debtor will properly maintain and care for the Collateral and will not remove the Collateral from the Offices (as defined in the Franchise Agreements);*

*(b)     Debtor will notify Secured Party in writing prior to any change in Debtor's place of business;*

*(c)     Debtor has not executed and will not execute as Debtor any security agreement or financing statement covering any of the Collateral except with Secured Party, nor will Debtor pledge or encumber the Collateral, or allow any lien to be placed against the Collateral, whether voluntary or involuntary;*

*(d)     Debtor represents and warrants to Secured Party that the Collateral shall not become collateral for any other obligations previously incurred, nor collateral under any other security agreement(s) previously executed by Debtor; and*

*(e)     Debtor will not sell, contract for sale or otherwise dispose of any of the Collateral except in the ordinary course of business.*

58.     ELI Realty's breach of any term, provision, warranty or representation in the ELI Realty Security Agreement, the ELI Realty Franchise Agreement, or any other agreement between the parties is an "Event of Default" of the ELI Realty Security Agreement.

---

[2] ELI Realty is the Debtor under the ELI Realty Security Agreement.

**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT OF CORCORAN GROUP LLC**
8:22-CV-01195-JWH-ADS

59.     Upon an Event of Default of the ELI Realty Security Agreement, among other things, Corcoran may (i) declare all obligations secured by the ELI Realty Security Agreement immediately due and payable, and (ii) require ELI Realty to assemble the Corcoran Collateral and make it available to Corcoran.

60.     The ELI Realty Security Agreement is governed by the laws of the State of New Jersey.

**G.     The ELI Realty JV Equity Interests.**

61.     ELI Realty directly or indirectly owns, beneficially and of record, the majority of the issued and outstanding shares of capital stock or membership interests in the following entities: (i) Exclusive Lifestyles San Francisco, Inc.; (ii) Exclusive Lifestyles SoCal, LLC; (iii) Exclusive Lifestyles Las Vegas, LLC[3]; and (iv) Exclusive Lifestyles Ohio, LLC.  The foregoing ownership interests of ELI Realty are collectively referred to as the "ELI Realty JV Equity Interests".

62.     The ELI Realty JV Equity Interests are part of the Corcoran Collateral.

63.     The JV Franchisees are each parties to separate Real Estate Franchise Agreements and Security Agreements with Corcoran.

**H.     The Exclusive San Francisco – Corcoran Agreements.**

64.     ELI Realty owns, beneficially and of record, the majority of the issued and outstanding shares of capital stock of Exclusive San Francisco.

65.     ELI Realty acquired all of its equity interests in Exclusive San Francisco with proceeds of certain of the Corcoran Loans that are evidenced by certain of the Notes.

66.     Corcoran and Exclusive San Francisco are parties to that certain Real Estate     Franchise     Agreement     dated     January     30,     2020     and     certain

---

[3] Exclusive Lifestyles Reno, LLC ("Exclusive Reno") owns 62.99% of the membership interests in Exclusive Las Vegas.  Exclusive Reno is wholly owned by ELI Realty.

amendments/addendums thereto[4] (collectively, the "<u>San Francisco Franchise Agreement</u>").

67.    Guarantors executed and conveyed to Corcoran a Guaranty of Payment and Performance (collectively the "<u>San Francisco Guaranty</u>"), guaranteeing payment and performance of all of the obligations of Exclusive San Francisco to Corcoran under the San Francisco Franchise Agreement as well as all other agreements or instruments between Exclusive San Francisco and Corcoran. The San Francisco Guaranty was conveyed to Corcoran to, among other things, induce Corcoran to accept Exclusive San Francisco as a franchisee.

68.    To secure payment and performance of Exclusive San Francisco under the San Francisco Franchise Agreement and all other agreements of Exclusive San Francisco to Corcoran, Exclusive San Francisco granted security interests to Corcoran in certain property pursuant to that certain Security Agreement dated January 23, 2020 (the "<u>Exclusive San Francisco Security Agreement</u>"). The security interests granted per the Exclusive San Francisco Security Agreement were perfected by the filing of a UCC-1 Financing Statement with the Secretary of State of the State of California on December 10, 2020 under number U200035937533.

**I.    <u>The Exclusive SoCal – Corcoran Agreements.</u>**

69.    ELI Realty owns, beneficially and of record, the majority of the issued and outstanding membership interests in Exclusive SoCal.

70.    ELI Realty acquired all of its equity interests in Exclusive SoCal with the proceeds of certain of the Corcoran Loans that are evidenced by certain of the Notes.

71.    Corcoran has a perfected security interest in the equity interests of ELI Realty in Exclusive SoCal.

---

[4] The amendments/addendums include the Addendum to Franchise Agreement effective January 30, 2020 and the Location Addendum and Seventh Addendum to Franchise Agreement effective September 9, 2021.

72. Corcoran and Exclusive SoCal are parties to that certain Real Estate Franchise Agreement dated September 11, 2020 and certain amendments/addendums thereto[5] (collectively, the "SoCal Franchise Agreement").

73. On or around September 10, 2020, Guarantors executed and conveyed to Corcoran a Guaranty of Payment and Performance (collectively the "SoCal Guaranty"), guaranteeing payment and performance of all of the obligations of Exclusive SoCal to Corcoran under the SoCal Franchise Agreement as well as all other agreements or instruments between Exclusive SoCal and Corcoran. The SoCal Guaranty was conveyed to Corcoran to, among other things, induce Corcoran to accept Exclusive SoCal as a franchisee.

74. To secure payment and performance of Exclusive SoCal under the SoCal Franchise Agreement and all other agreements of Exclusive SoCal to Corcoran, Exclusive SoCal granted security interests to Corcoran in certain property pursuant to that certain Security Agreement dated September 9, 2020 (the "Exclusive SoCal Security Agreement"). The security interests granted per the Exclusive SoCal Security Agreement were perfected by the filing of a UCC-1 Financing Statement with the Secretary of State of the State of California on September 14, 2020 under number U200019083025.

**J.    The Exclusive Las Vegas – Corcoran Agreements.**

75. ELI Realty indirectly owns the majority of the issued and outstanding membership interests in Exclusive Las Vegas.

76. Specifically, Exclusive Reno owns 62.99% of the membership interests in Exclusive Las Vegas. Exclusive Reno is wholly owned by ELI Realty.

---

[5] The amendments/addendums include the Addendum to Franchise Agreement effective September 11, 2020, the Location Addendum and Second Addendum to Franchise Agreement effective November 11, 2020, and the Location Addendum and Sixth Addendum to Franchise Agreement effective March 11, 2021.

**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT OF CORCORAN GROUP LLC**
8:22-CV-01195-JWH-ADS

77.     Exclusive Reno acquired all of its equity interests in Exclusive Las Vegas with proceeds of certain of the Corcoran Loans that are evidenced by certain of the Notes.

78.     Corcoran and Exclusive Las Vegas are parties to that certain Real Estate Franchise Agreement dated June 23, 2021 and certain amendments/addendums thereto[6] (collectively, the "Las Vegas Franchise Agreement").

79.     On or around June 23, 2021, Guarantors executed and conveyed to Corcoran a Guaranty of Payment and Performance (collectively the "Las Vegas Guaranty"), guaranteeing payment and performance of all of the obligations of Exclusive Las Vegas to Corcoran under the Las Vegas Franchise Agreement as well as all other agreements or instruments between Exclusive Las Vegas and Corcoran. The Las Vegas Guaranty was conveyed to Corcoran to, among other things, induce Corcoran to accept Exclusive Las Vegas as a franchisee.

80.     To secure payment and performance of Exclusive Las Vegas under the Las Vegas Franchise Agreement and all other agreements of Exclusive Las Vegas to Corcoran, Exclusive Las Vegas granted security interests to Corcoran in certain property pursuant to that certain Security Agreement dated May 10, 2021 (the "Exclusive Las Vegas Security Agreement"). The security interests granted per the Exclusive Las Vegas Security Agreement were perfected by the filing of a UCC-1 Financing Statement with the Secretary of State of the State of Nevada on September 13, 2021 under number 2021196331-5.

**K.     The Exclusive Ohio – Corcoran Agreements.**

81.     ELI Realty owns, beneficially and of record, the majority of the issued and outstanding membership interests in Exclusive Ohio.

---

[6] The amendments/addendums include the Addendum to Franchise Agreement effective June 23, 2021, the Location Addendum and Second Addendum to Franchise Agreement effective September 3, 2021, the Location Addendum and Third Addendum to Franchise Agreement effective September 28, 2021, and the Location Addendum and Fourth Addendum to Franchise Agreement effective November 3, 2021.

82.     ELI Realty acquired all of its equity interests in Exclusive Ohio with proceeds of certain of the Corcoran Loans that are evidenced by certain of the Notes.

83.     Corcoran has a perfected security interest in the equity interests of ELI Realty in Exclusive Ohio.

84.     Corcoran and Exclusive Ohio are parties to that certain Real Estate Franchise Agreement dated October 22, 2021 and certain amendments/addendums thereto[7] (collectively, the "Ohio Franchise Agreement").

85.     On or around October 20, 2021, Guarantors executed and conveyed to Corcoran a Guaranty of Payment and Performance (collectively the "Ohio Guaranty"), guaranteeing payment and performance of all of the obligations of Exclusive Ohio to Corcoran under the Ohio Franchise Agreement as well as all other agreements or instruments between Exclusive Ohio and Corcoran. The Ohio Guaranty was conveyed to Corcoran to, among other things, induce Corcoran to accept Exclusive Ohio as a franchisee.

86.     To secure payment and performance of Exclusive Ohio under the Ohio Franchise Agreement and all other agreements of Exclusive Ohio to Corcoran, Exclusive Ohio granted security interests to Corcoran in certain property pursuant to that certain Security Agreement dated August 3, 2021 (the "Exclusive Ohio Security Agreement"). The security interests granted per the Exclusive Ohio Security Agreement were perfected by the filing of a UCC-1 Financing Statement with the Secretary of State of the State of Ohio on May 23, 2022 under number OH00263498464.

**L.     ELI Realty Franchise Agreement and Note Defaults – Monetary.**

87.     ELI Realty is in default of its monetary obligations to Corcoran under the ELI Realty Franchise Agreement for failing to pay amounts to Corcoran as and when due under the ELI Realty Franchise Agreement.

---

[7] The amendments/addendums include the Addendum to Franchise Agreement effective October 20, 2021.

88.     As of May 18, 2022, the sum of <u>at least</u> $440,570.75 (the "<u>ELI Realty Arrears</u>") was outstanding and past due by ELI Realty to Corcoran under the ELI Realty Franchise Agreement. The ELI Realty Arrears exclude any amounts due for unreported transactions, attorney's fees and costs, or obligations under the ELI Realty Franchise Agreement which may accrue after May 18, 2022.

89.     ELI Realty is separately in default under the Notes due to, among other things, its foregoing default under the ELI Realty Franchise Agreement.

90.     By letter dated May 22, 2022, Corcoran noticed ELI Realty and Guarantors of defaults under the ELI Realty Franchise Agreement and Notes and demanded that ELI Realty pay the ELI Realty Arrears on or before June 21, 2022.

91.     ELI Realty failed to pay any of the ELI Realty Arrears on or before June 21, 2022.

92.     Because ELI Realty has continued to fail to pay amounts to Corcoran as and when due under the ELI Realty Franchise Agreement, the outstanding amount past due by ELI Realty to Corcoran is greater than the amount of the ELI Realty Arrears.

**M.     <u>Security Agreement and Note Defaults – Sale of Corcoran Collateral to Libertas</u>.**

93.     ELI Realty is in incurable default of the ELI Realty Security Agreement and the Notes on account of its sale of Corcoran Collateral to Libertas Funding LLC ("<u>Libertas</u>").

94.     Exclusive San Francisco and Exclusive SoCal are likewise in incurable default of the respective Exclusive San Francisco Security Agreement and Exclusive SoCal Security Agreement on account of their sale of Corcoran collateral to Libertas.

95.     Pursuant to the (i) Agreement of Sale of Future Receipts dated December 8, 2021; (ii) Agreement of Sale of Future Receipts dated February 18, 2022; and (iii) Agreement of Sale of Future Receipts dated April 13, 2022 (collectively, the "<u>Libertas Agreements</u>"), ELI Realty, Exclusive San Francisco, and Exclusive SoCal agreed to sell

specified amounts of their "Future Receipts" (as defined in the Libertas Agreements) to Libertas in exchange for deeply discounted advance payments.

96.    In the Agreement of Sale of Future Receipts dated December 8, 2021, ELI Realty, Exclusive San Francisco, and Exclusive SoCal agreed to sell Libertas $2,660,000 of their Future Receipts in exchange for $1,980,000.

97.    The Agreement of Sale of Future Receipts dated December 8, 2021, requires ELI Realty, Exclusive San Francisco, and Exclusive SoCal to deliver to Libertas approximately $63,333.35 of their Future Receipts each week until the entire "Completion Amount" (as defined in the Libertas Agreements) is paid to Libertas.

98.    In the Agreement of Sale of Future Receipts dated February 18, 2022, ELI Realty, Exclusive San Francisco, and Exclusive SoCal agreed to sell Libertas $1,995,000 of their Future Receipts in exchange for $1,485,000.

99.    The Agreement of Sale of Future Receipts dated February 18, 2022, requires ELI Realty, Exclusive San Francisco, and Exclusive SoCal to deliver to Libertas approximately $47,500 of their Future Receipts each week until the entire Completion Amount is paid to Libertas.

100.    In the Agreement of Sale of Future Receipts dated April 13, 2022, ELI Realty, Exclusive San Francisco, and Exclusive SoCal agreed to sell Libertas $2,793,000 of their Future Receipts in exchange for (i) $1,306,855.94 to be paid to Libertas "and/or Other Funders" and (ii) $772,144.06 to ELI Realty, Exclusive San Francisco, and/or Exclusive SoCal.

101.    The Agreement of Sale of Future Receipts dated April 13, 2022, requires ELI Realty, Exclusive San Francisco, and Exclusive SoCal to deliver to Libertas approximately $66,500 of their Future Receipts each week until the entire Completion Amount is paid to Libertas.

**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT OF CORCORAN GROUP LLC**
8:22-CV-01195-JWH-ADS

102.   Pursuant to the Libertas Agreements, ELI Realty, Exclusive San Francisco, and Exclusive SoCal agreed to sell Libertas $5,864,666.95 of their combined Future Receipts in exchange for $4,237,144.06.

103.   Michael Mahon is the guarantor of the obligations of ELI Realty, Exclusive San Francisco, and Exclusive SoCal under the Libertas Agreements.

104.   Michael Mahon executed the Libertas Agreements individually and on behalf of ELI Realty, Exclusive San Francisco, Exclusive SoCal, and other entities.

105.   In executing the Libertas Agreements, Michael Mahon falsely represented that entering into and performing under the Libertas Agreements would not result in breach or violation of, or default under, any agreement or instrument by which ELI Realty, Exclusive San Francisco, or Exclusive SoCal were bound.

106.   The Libertas Agreements each state that the transactions amount to a sale of the Future Receipts to Libertas and are not loans from Libertas.  In fact, the Libertas Agreements state: *"Merchant and Guarantor expressly agree not to take the position that this transaction is a loan, and they expressly waive any and all claims and defenses based on that position in any action or proceeding arising out of this Agreement, including without limitation claims or defenses of usury."*

107.   The Future Receipts sold to Libertas by ELI Realty, Exclusive San Francisco, and Exclusive SoCal constitute collateral of Corcoran under the ELI Realty Security Agreement, Exclusive San Francisco Security Agreement and/or Exclusive SoCal Security Agreement.

108.   The sale of Future Receipts to Libertas by ELI Realty, Exclusive San Francisco, and Exclusive SoCal was not in the ordinary course of business of ELI Realty, Exclusive San Francisco, or Exclusive SoCal.

109.   Each sale of Future Receipts to Libertas by ELI Realty, Exclusive San Francisco, and Exclusive SoCal constitutes an incurable event of default under the ELI

Realty Security Agreement, Exclusive San Francisco Security Agreement and/or Exclusive SoCal Security Agreement.

110. By letter dated May 26, 2022, Corcoran noticed ELI Realty and Guarantors of defaults under the terms of the ELI Realty Security Agreement and the Notes as a result of the sale of Corcoran Collateral to Libertas pursuant to the Libertas Agreements.

111. In its letter of May 26, 2022, Corcoran also accelerated the unpaid principal and all interest accrued under each of the Notes and demanded immediate payment thereof.

112. In its letter of May 26, 2022, Corcoran advised ELI Realty and Guarantors of outstanding principal amounts due under the Notes and Corcoran demanded immediate payment thereof.

113. Neither ELI Realty the Guarantors have responded to the notice of default contained in Corcoran's letter of May 26, 2022.

114. ELI Realty and Guarantors have failed to pay Corcoran any of the amounts demanded in the letter of May 26, 2022.

115. By letter dated May 31, 2022, Corcoran noticed Exclusive San Francisco and Guarantors of defaults under the terms of the Exclusive San Francisco Security Agreement and San Francisco Franchise Agreement as a result of the sale of collateral of Corcoran to Libertas pursuant to the Libertas Agreements. Neither Exclusive San Francisco nor the Guarantors have responded to the notice of default contained in Corcoran's letter of May 31, 2022.

116. By letter dated May 31, 2022, Corcoran noticed Exclusive SoCal and Guarantors of defaults under the terms of the Exclusive SoCal Security Agreement and SoCal Franchise Agreement as a result of the sale of collateral of Corcoran to Libertas pursuant to the Libertas Agreements. Neither Exclusive SoCal nor the Guarantors have responded to the notice of default contained in Corcoran's letter of May 31, 2022.

**N.**     **Franchise Agreement Defaults by JV Franchisees.**

117.   The JV Franchisees are each in default of their obligations to Corcoran for failing to pay amounts to Corcoran as and when due under the JV Franchise Agreements.[8]

118.   Exclusive San Francisco is in default of its monetary obligations to Corcoran under the San Francisco Franchise Agreement for failing to pay amounts to Corcoran as and when due under the San Francisco Franchise Agreement. As of May 18, 2022, the sum of at least $429,719.55 (the "San Francisco Arrears") was outstanding and past due by Exclusive San Francisco to Corcoran under the San Francisco Franchise Agreement. The San Francisco Arrears exclude any amounts due for unreported transactions, attorney's fees and costs, or obligations under the San Francisco Franchise Agreement which may accrue after May 18, 2022. By letter dated May 22, 2022, Corcoran noticed Exclusive San Francisco and Guarantors of the defaults under the San Francisco Franchise Agreement.  Despite its receipt of valid and effective notice, Exclusive San Francisco has failed to cure the Existing San Francisco Defaults.

119.   Because Exclusive San Francisco has continued to fail to pay amounts to Corcoran, as and when due under the San Francisco Franchise Agreement, the outstanding amount past due by Exclusive San Francisco to Corcoran is now greater than the San Francisco Arrears.  In this Counterclaim, Corcoran does not seek an affirmative judgment against Exclusive San Francisco, but reserves its right to seek such relief or take additional action including, but not limited to, termination of the San Francisco Franchise Agreement and enforcement of all post termination obligations of the franchisee thereunder.

---

[8] Collectively, the "JV Franchise Agreements" are the San Francisco Franchise Agreement, SoCal Franchise Agreement, Las Vegas Franchise Agreement, and Ohio Franchise Agreement.

**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT OF CORCORAN GROUP LLC**
8:22-CV-01195-JWH-ADS

120.   Exclusive SoCal is in default of its monetary obligations to Corcoran under the SoCal Franchise Agreement for failing to pay amounts to Corcoran as and when due under the SoCal Franchise Agreement. As of May 18, 2022, the sum of <u>at least</u> **$429,903.24** (the "<u>SoCal Arrears</u>") was outstanding and past due by Exclusive SoCal to Corcoran under the SoCal Franchise Agreement.  The SoCal Arrears exclude any amounts due for unreported transactions, attorney's fees and costs, or obligations under the SoCal Franchise Agreement which may accrue after May18, 2022. By letter dated May 22, 2022, Corcoran noticed Exclusive SoCal and Guarantors of the defaults under the SoCal Franchise Agreement. Despite its receipt of valid and effective notice, Exclusive SoCal has failed to cure the noticed defaults.

121.   Because Exclusive SoCal has continued to fail to pay amounts to Corcoran, as and when due under the SoCal Franchise Agreement, the outstanding amount past due by Exclusive SoCal to Corcoran is now greater than the SoCal Arrears.  In this Counterclaim, Corcoran does not seek an affirmative judgment against Exclusive SoCal, but reserves its right to seek such relief or take additional action including, but not limited to, termination of the SoCal Franchise Agreement and enforcement of all post termination obligations of the franchisee thereunder.

122.   Exclusive Las Vegas is in default of its monetary obligations to Corcoran under the Las Vegas Franchise Agreement for failing to pay amounts to Corcoran as and when due under the Las Vegas Franchise Agreement. As of May 18, 2022, the sum of <u>at least</u> **$83,028.42** (the "<u>Las Vegas Arrears</u>") was outstanding and past due by Exclusive Las Vegas to Corcoran under the Franchise Agreement. The Las Vegas Arrears exclude any amounts due for unreported transactions, attorney's fees and costs, or obligations under the Franchise Agreement which may accrue after May 18, 2022. By letter dated May 22, 2022, Corcoran noticed Exclusive Las Vegas and Guarantors of defaults under the Las Vegas Franchise Agreement. Despite its receipt of valid and

effective notice, Exclusive Las Vegas has failed to cure the Existing Las Vegas Defaults.

123.   Because Exclusive Las Vegas has continued to fail to pay amounts to Corcoran, as and when due under the Las Vegas Franchise Agreement, the outstanding amount past due by Exclusive Las Vegas to Corcoran is now greater than the Las Vegas Arrears.  In this Counterclaim, Corcoran does not seek an affirmative judgment against Exclusive Las Vegas, but reserves its right to seek such relief or take additional action including, but not limited to, termination of the Las Vegas Franchise Agreement and enforcement of all post termination obligations of the franchisee thereunder.

124.   Exclusive Ohio is in default of its monetary obligations to Corcoran under the Franchise Agreement for failing to pay amounts to Corcoran as and when due under the Franchise Agreement. As of May 18, 2022, the sum of <u>at least</u> **$88,407.84** (the "<u>Exclusive Ohio Arrears</u>") was outstanding and past due by Exclusive Ohio to Corcoran under the Franchise Agreement.  The Exclusive Ohio Arrears exclude any amounts due for unreported transactions, attorney's fees and costs, or obligations under the Ohio Franchise Agreement which may accrue after May 18, 2022. By letter dated May 22, 2022, Corcoran noticed Exclusive Ohio and Guarantors of defaults under the Ohio Franchise Agreement. Despite its receipt of valid and effective notice, Exclusive Ohio has failed to cure the Existing Ohio Defaults.

125.   Because Exclusive Ohio has continued to fail to pay amounts to Corcoran, as and when due under the Ohio Franchise Agreement, the outstanding amount past due by Exclusive Ohio to Corcoran is now greater than the Ohio Arrears.   In this Counterclaim, Corcoran does not seek an affirmative judgment against Exclusive Ohio, but reserves its right to seek such relief or take additional action including, but not limited to, termination of the Ohio Franchise Agreement and enforcement of all post termination obligations of the franchisee thereunder.

**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT OF CORCORAN GROUP LLC**
8:22-CV-01195-JWH-ADS

126.   Upon information and belief, some or all of the JV Franchisees have paid ELI Realty, Michael Mahon, and/or Does 1 -10 (collectively, the "<u>Franchise Fee Trustees</u>"), undetermined amounts that are due to Corcoran under the JV Franchise Agreements.

127.   Michael Mahon advised Corcoran that amounts due to Corcoran under the JV Franchise Agreements (as well as under the ELI Realty Franchise Agreement) are being held "in escrow".  The so called "escrowed" funds are collectively referred to as the "<u>Franchise Fee Trust Funds</u>".

128.   Michael Mahon has refused to disclose: (i) who is holding the funds "in escrow"; (ii) where the "escrow" is being held; (iii) how much is being held in "escrow"; or (iv) the reason for the "escrow" – i.e. why the funds have not been remitted to Corcoran.

**O.     The Mortgage Company Transfer.**

129.   On or around August 3, 2021, Aim High Capital Partners, LLC ("<u>Aim High Capital</u>") made an initial capital contribution of **$800,000** (the "<u>Mortgage Company Capital Contribution</u>") into Aim High Mortgage LLC (the "<u>Mortgage Company</u>") in exchange for a 50% ownership interest in the Mortgage Company.

130.   The members of Aim High Capital are identical to the members of ELI Realty.

131.   The Mortgage Company Capital Contribution was transferred by ELI Realty to Aim High Capital.

132.   There was no consideration paid by Aim High Capital to ELI Realty for the Mortgage Company Capital Contribution.

133.   All or part of the Mortgage Company Capital Contribution was comprised of proceeds of certain of the loans from Corcoran that are evidenced by certain of the Notes.

134.   All or part of the Mortgage Company Capital Contribution was comprised of proceeds of certain of the collateral of Corcoran under the Security Agreements.[9]

**P.      The Title Company Transfer.**

135.   Gradus Capital, Inc. ("Gradus Capital") is the sole owner of Innovative Title Company (the "Title Company").

136.   Pursuant to that Stock Purchase Agreement dated December 31, 2021, Aim High Capital obtained a 67% ownership interest in Gradus Capital in exchange for (i) a down payment of undetermined amount (the "Title Company Down Payment"), and (ii) a Promissory Note in the amount of **$1,355,000** (the "Title Company Note").

137.   The members of Aim High Capital are identical to the members of ELI Realty.

138.   Upon information and belief, all or some portion of the Title Company Down Payment and sums paid pursuant to the Title Company Note (the "Title Company Transfers") were transferred by ELI Realty to Aim High Capital.

139.   There was no consideration paid by Aim High Capital to ELI Realty for the Title Company Transfers.

140.   All or part of the Title Company Transfers was comprised of proceeds of certain of the loans from Corcoran that are evidenced by certain of the Notes.

141.   All or part of the Title Company Transfers was comprised of proceeds of certain of the collateral of Corcoran under the Security Agreements.

**Q.      Distributions, Bonuses and Transfers to Insiders.**

142.   Upon information and belief, ELI Realty paid the following non-exclusive distributions to members, bonuses, and/or other transfers to insiders (or entities owned or controlled by insiders):

---

[9] Collectively, the "Security Agreements" are the ELI Realty Security Agreement, Exclusive San Francisco Security Agreement, Exclusive SoCal Security Agreement, Exclusive Las Vegas Security Agreement, and Exclusive Ohio Security Agreement.

| *2020 Payments* | | | *2021 Payments* | | *Total* |
|---|---|---|---|---|---|
| **Matek LLC** | | | | | |
| Jan-22 | $85,000.00 | | Oct-21 | $70,000.00 | |
| Feb-22 | $46,000.00 | | Nov-21 | $74,682.16 | |
| Mar-22 | $34,000.00 | | Dec-21 | $89,500.00 | |
| Apr-22 | $61,875.00 | | | | |
| **Total** | $226,875.00 | | **Total** | $234,182.16 | **$461,057.16** |
| | | | | | |
| **Pamela Mahon** | | | | | |
| Jan-22 | $35,000.00 | | Jan-21 | $18,320.00 | |
| | | | Feb-21 | $5,372.00 | |
| | | | Mar-21 | $4,634.30 | |
| | | | Apr-21 | $3,738.94 | |
| | | | May-21 | $1,543.75 | |
| | | | Jun-22 | $340.00 | |
| | | | Aug-21 | $6,062.94 | |
| **Total** | $35,000.00 | | **Total** | $40,011.83 | **$75,011.83** |
| | | | | | |
| **Michael Mahon** | | | | | |
| Jan-22 | $26,750.00 | | Jan-21 | $26,750.00 | |
| Feb-22 | $26,750.00 | | Feb-21 | $26,750.00 | |
| Apr-22 | $15,000.00 | | Feb-21 | $9,648.21 | |
| | | | Feb-21 | $100,000.00 | |
| | | | Mar-21 | $26,750.00 | |
| | | | May-21 | $26,750.00 | |
| | | | Jun-21 | $26,750.00 | |
| | | | Jun-21 | $10,000.00 | |
| | | | Jul-21 | $26,750.00 | |
| | | | Aug-21 | $26,750.00 | |
| | | | Oct-21 | $26,750.00 | |
| | | | Nov-21 | $26,750.00 | |
| | | | Dec-21 | $9,325.72 | |
| | | | Dec-21 | $26,750.00 | |
| | | | Dec-21 | $100,000.00 | |
| **Total** | $68,500.00 | | **Total** | $496,473.93 | **$564,973.93** |

**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT
OF CORCORAN GROUP LLC**
8:22-CV-01195-JWH-ADS

The aforementioned payments are each individually, an "<u>Insider Transfer</u>" and collectively, the "<u>Insider Transfers</u>".

143.   Upon information and belief, certain proceeds received from the Libertas Agreements were used to fund certain of the Insider Transfers.

144.   In other words, upon information and belief, ELI Realty, Exclusive San Francisco, and Exclusive SoCal sold Corcoran collateral to Libertas in order to, in part, fund the Insider Transfers.

### FIRST COUNT

### (Accounting)

145.   Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

146.   The ELI Realty Franchise Agreement requires ELI Realty to report transactions to Corcoran on the date of settlement (closing) and pay certain fees to Corcoran based upon those reported transactions.

147.   ELI Realty has failed to report transactions to Corcoran as and when required under the ELI Realty Franchise Agreement.

148.   Corcoran has demanded an accurate accounting and reporting of all transactions from ELI Realty, as required under the ELI Realty Franchise Agreement, however, ELI Realty has refused to provide this information, has provided inaccurate information, and/or has not provided information as required in the ELI Realty Franchise Agreement.

149.   A complete calculation of the money damages of Corcoran cannot be ascertained without an accounting by ELI Realty of all transactions of ELI Realty, as required under the ELI Realty Franchise Agreement.

**WHEREFORE**, Corcoran demands judgment directing ELI Realty Investments, LLC to accurately account and report to Corcoran: (i) all unreported and inaccurately reported transactions as required under the ELI Realty Franchise Agreement; (ii) all

unreported and inaccurately reported transactions as required under the JV Franchise Agreements, to the extent that such information is in the custody and control of ELI Realty; and (iii) such other and further relief that this Court deems just and proper.

## SECOND COUNT

### (Breach of Contract: ELI Realty Franchise Agreement)

150.   Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

151.   Pursuant to the terms of the ELI Realty Franchise Agreement, Corcoran agreed to provide ELI Realty with a non-exclusive license to use the Corcoran Marks and Corcoran System and ELI Realty agreed to certain monetary and non-monetary obligations as more fully set forth in the ELI Realty Franchise Agreement.

152.   Corcoran has performed all conditions, covenants, and promises required on its part in accordance with the terms and conditions of the ELI Realty Franchise Agreement.

153.   ELI Realty has breached the ELI Realty Franchise Agreement by, among other things, failing to pay Royalty Fees, Brand Marketing Fund contributions, and other fees as and when required under the ELI Realty Franchise Agreement.

154.   As a result of ELI Realty's breach of the ELI Realty Franchise Agreements, Corcoran has been damaged in amount of at least the ELI Realty Arrears plus additional outstanding and past due amounts due to under the ELI Realty Franchise Agreement.

155.   As a result of ELI Realty's breach of the ELI Realty Franchise Agreement, Corcoran has suffered additional damages in amounts to be proven at trial based upon the facts alleged herein, including fees on account of unreported transactions, reasonable attorneys' fees, interest, and costs.

156.   As of the filing of this Complaint, Corcoran has not terminated the ELI Realty Franchise Agreement but reserves its right to do so. Should Corcoran elect to

terminate the ELI Realty Franchise Agreement as a result of a breach thereof by ELI Realty, Corcoran will be damaged in the additional amount of the liquidated damages set forth in the ELI Realty Franchise Agreement.

**WHEREFORE**, Corcoran demands judgment against ELI Realty Investments, LLC (i) for all sums due under the ELI Realty Franchise Agreement proven at trial, including interest, attorney's fees, and costs set forth in the ELI Realty Franchise Agreement; and (ii) for such other and further relief that this Court deems just and proper.

## <u>THIRD COUNT</u>

### (Breach of Contract: Notes)

157.   Corcoran repeats and makes a part hereto each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

158.   Corcoran is the holder of the Notes, which were executed and conveyed by ELI Realty.

159.   Corcoran performed all conditions, covenants, and promises required on its part in accordance with the terms and conditions of the Notes.

160.   Borrowers breached the terms of the Notes as set forth herein.

161.   Corcoran has accelerated and demanded payment from ELI Realty of all amounts due under the Notes, and ELI Realty has failed to pay the same.

162.   As a result of ELI Realty's breach of the Notes, Corcoran has been damaged in the amount of the collective unamortized principal balance due and owing under the Notes, plus interest, fees and costs as provided for in the Notes.

**WHEREFORE**, Corcoran demands judgment against ELI Realty Investments, LLC (i) in the amount of the collective unamortized principal balance due and owing under the Notes, plus interest, attorneys' fees, and costs as provided for in the Notes; and (ii) for such other and further relief that this Court deems just and proper.

## FOURTH COUNT

### (Breach of Contract: ELI Realty Guaranty)

163.   Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

164.   Pursuant to the terms of the ELI Realty Guaranty, the Guarantors agreed to, among other things, guaranty to Corcoran the prompt payment and performance under the ELI Realty Franchise Agreement, Notes, and all other agreements between the parties, including the ELI Realty Security Agreement.

165.   Guarantors breached their obligations under the ELI Realty Guaranty by failing to make payments or perform the obligations due Corcoran under the ELI Realty Franchise Agreement, Notes, and/or ELI Realty Security Agreement.

166.   Corcoran has demanded payment and performance from Guarantors under the ELI Realty Guaranty, and Guarantors have failed to pay or perform as they are obligated to do.

167.   As a result of Guarantors breach of the ELI Realty Guaranty, Corcoran has been damaged in the amount of: (i) all sums due under the ELI Realty Franchise Agreement proven at trial, including interest, attorney's fees, and costs set forth in the ELI Realty Franchise Agreement; (ii) the collective unamortized principal balance due and owing under the Notes, plus interest, fees and costs as provided for in the Notes; and (iii) any damages suffered by Corcoran as a result of the failure of ELI Realty to comply with the obligations imposed under the ELI Realty Security Agreement.

**WHEREFORE**, Corcoran demands joint and several judgment against Michael Mahon, individually, Pamela Mahon, individually, and MRM Investments LLC in the amount of: (i) all sums due under the ELI Realty Franchise Agreement proven at trial, including interest, attorney's fees, and costs set forth in the ELI Realty Franchise Agreement; (ii) the collective unamortized principal balance due and owing under the Notes, plus interest, attorneys' fees and costs as provided for in the Notes; (iii) any

damages suffered by Corcoran as a result of the failure of the Debtors to comply with the obligations imposed under the ELI Realty Security Agreement; and (iv) such other and further relief that this Court deems just and proper.

## FIFTH COUNT

### (Breach of Contract: ELI Realty Security Agreement)

168.   Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

169.   Corcoran performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the ELI Realty Security Agreement, if any.

170.   ELI Realty breached the ELI Realty Security Agreement by, among other things, selling or otherwise disposing of Corcoran Collateral outside of the ordinary course of its business by entering into the Libertas Agreements and consummating the transactions described therein, including the payment of Future Receipts to Libertas.

171.   As a result of ELI Realty's breaches of the ELI Realty Security Agreement, Corcoran has been damaged in an amount to be determined at trial.

**WHEREFORE**, Corcoran demands judgment against ELI Realty Investments, LLC (i) in an amount to be determined at trial, plus interest, attorneys' fees, and costs; (ii) directing ELI Realty to assemble Corcoran Collateral as designated by Corcoran and make same available to Corcoran; (iii) prohibiting ELI Realty from using Corcoran Collateral, or any proceeds of the Corcoran Collateral, for payment to Libertas or for other payments outside of the ordinary course of business of ELI Realty; and (iv) such other and further relief that this Court deems just and proper.

## SIXTH COUNT

### (Unjust Enrichment)

172.   Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

173.   During the course of the ELI Realty Franchise Agreement, Corcoran provided services to ELI Realty, which services included but were not limited to non-exclusive licenses to use Corcoran's trademarks, marketing system and other proprietary information and property. ELI Realty knew that these services were being provided by Corcoran and accepted them and used them.

174.   Despite its obligation to do so, ELI Realty failed to pay certain Royalty Fees, Brand Marketing Fund contributions, and other fees to Corcoran due and owing under the ELI Realty Franchise Agreement but has continuously continued to use the Corcoran Marks.

175.   ELI Realty's failure to compensate Corcoran constitutes unjust enrichment and has damaged Corcoran in an undetermined amount.

**WHEREFORE**, Corcoran demands judgment against ELI Realty Investments, LLC (i) in an amount to be determined at trial, together with interest, attorneys' fees, and costs; and (ii) such other and further relief that this Court deems just and proper.

## <u>SEVENTH COUNT</u>
### (Tortious Interference: Michael Mahon)

176.   Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

177.   The ELI Realty Security Agreement, Exclusive San Francisco Security Agreement and Exclusive SoCal Security Agreement (collectively, the "<u>Count 7 Security Agreements</u>"), are valid contracts between Corcoran and ELI Realty, Exclusive San Francisco, and Exclusive SoCal, respectively.

178.   At all relevant times, Michael Mahon was aware of the Count 7 Security Agreements.

179.   Without justification, Michael Mahon intentionally and/or maliciously interfered with the Count 7 Security Agreements by executing and delivering the Libertas Agreements and causing consummation of the transactions described therein,

resulting in an incurable default by ELI Realty, Exclusive San Francisco, and Exclusive SoCal, respectively, under the Count 7 Security Agreements.

180.   Among other things, in executing the Libertas Agreements individually and on behalf of numerous entities, Michael Mahon falsely represented therein that entering into and performing under the Libertas Agreements would not result in breach or violation of, or default under, any agreement or instrument by which ELI Realty, Exclusive San Francisco, or Exclusive SoCal were bound.   In fact, entry and performance under the Libertas Agreements resulted in an incurable default by ELI Realty, Exclusive San Francisco, and Exclusive SoCal, respectively, under the Count 7 Security Agreements.

181.   Michael Mahon executed the Libertas Agreements individually and on behalf of ELI Realty, Exclusive San Francisco, Exclusive SoCal, and other entities.

182.   In executing the Libertas Agreements, Michael Mahon represented that he had the full power and authority to bind Exclusive San Francisco, Exclusive SoCal, and other entities to perform their obligations under the Libertas Agreements.

183.   Upon information and belief, Michael Mahon did not have the requisite authority under the Shareholders Agreement for Exclusive Lifestyles San Francisco, Inc. to enter into the Libertas Agreements on behalf of Exclusive San Francisco.

184.   Upon information and belief, other than ELI Realty, Michael Mahon did not inform any of the shareholders of Exclusive San Francisco that Exclusive San Francisco was entering into any of the Libertas Agreements.

185.  Upon information and belief, other than ELI Realty, none of the shareholders of Exclusive San Francisco are aware of the Libertas Agreements.

186.  Upon information and belief, other than ELI Realty, none of the shareholders of Exclusive San Francisco are aware that Future Receipts of Exclusive San Francisco have been sold to Libertas.

**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT OF CORCORAN GROUP LLC**
8:22-CV-01195-JWH-ADS

187.   Upon information and belief, Michael Mahon did not have the requisite authority under the Operating Agreement for Exclusive Lifestyles SoCal, LLC to enter into the Libertas Agreements on behalf of Exclusive SoCal.

188.   Upon information and belief, other than ELI Realty, Michael Mahon did not inform any of the members of Exclusive SoCal that Exclusive SoCal was entering into any of the Libertas Agreements.

189.   Upon information and belief, other than ELI Realty, none of the shareholders of Exclusive SoCal are aware of the Libertas Agreements.

190.   Upon information and belief, other than ELI Realty, none of the shareholders of Exclusive SoCal are aware that Future Receipts of Exclusive SoCal have been sold to Libertas.

191.   There was, at least, a reasonable likelihood that Michael Mahon's interference with the performance of ELI Realty, Exclusive San Francisco, and Exclusive SoCal under the applicable Count 7 Security Agreements would cause loss to Corcoran.

192.   Entry and performance under the Libertas Agreements resulted in breach of the Count 7 Security Agreements by ELI Realty, Exclusive San Francisco, and Exclusive SoCal, respectively, resulting in damage to Corcoran.

**WHEREFORE**, Corcoran demands judgment against Michael Mahon, individually, for: (i) actual compensatory, consequential, incidental, special and/or exemplary/punitive damages in amounts to be proven at trial; (ii) pre-judgment interest; (iii) attorneys' fees and costs; and (iv) such other and further relief that this Court deems just and proper.

## EIGHTH COUNT

### (Enforcement of Security Interests in Accounts Receivables – ELI Realty/Libertas)

193.   Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

194.   The security interests granted to Corcoran in the ELI Realty Security Agreement dated January 17, 2020, were perfected by the filing of a UCC-1 Financing Statement with the Secretary of State of the State of Nevada on January 31, 2020 under number 2020069173-2.

195.   Pursuant to the ELI Realty Security Agreement, Corcoran was granted a security interest in, among other things, all (i) accounts receivable and payment intangibles of ELI Realty, then owned or thereafter acquired, and (ii) all of ELI Realty's commissions, real estate listings, listing agreements and the proceeds therefrom, then owned or thereafter acquired.

196.   Corcoran has a properly perfected, pre-existing, and senior lien on the Future Receipts of ELI Realty that were purportedly sold to Libertas per the Libertas Agreements.

197.   Corcoran's pre-existing and senior lien on the Future Receipts of ELI Realty that were purportedly sold to Libertas, is a matter of public record.

198.   Libertas knew or should have known of Corcoran's pre-existing and senior lien on the Future Receipts of ELI Realty, prior to entering into the Libertas Agreements.

199.   Corcoran did not consent to the sale of any of its collateral by ELI Realty to Libertas.

200.   Corcoran did not agree to subordinate its security interest and lien of property of ELI Realty, including Future Receipts, to Libertas.

201.   Any interest claimed by Libertas in the Future Receipts of ELI Realty, or any other property of ELI Realty that is subject to the ELI Realty Security Agreement, is subordinate to the interests that Corcoran has in such property.

**WHEREFORE**, Corcoran demands judgment against Libertas Funding LLC: (i) declaring the any interest claimed by Libertas in the Future Receipts of ELI Realty, or any other property of ELI Realty that is subject to the ELI Realty Security Agreement,

**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT OF CORCORAN GROUP LLC**
8:22-CV-01195-JWH-ADS

is subordinate to the security interests that Corcoran has in such property under the ELI Realty Security Agreement; (ii) prohibiting Libertas from accepting or collecting any Future Receipts of ELI Realty, or any other property of ELI Realty that is subject to the ELI Realty Security Agreement, until all obligations that are secured by the ELI Realty Security Agreement are satisfied in full; (iii) directing Libertas to pay Corcoran the amount equal to any Future Receipts of ELI Realty, or any other property of ELI Realty that is subject to the ELI Realty Security Agreement, collected or otherwise received by Libertas; (iv) for damages in amounts to be proven at trial; (v) pre-judgment interest; (vi) attorneys' fees and costs; and (vii) such other and further relief that this Court deems just and proper.

## NINTH COUNT

### (Enforcement of Security Interests in Accounts Receivables – Exclusive SoCal/Libertas)

202.    Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

203.    The security interests granted to Corcoran in the Exclusive SoCal Security Agreement dated September 9, 2020, were perfected by the filing of a UCC-1 Financing Statement with the Secretary of State of the State of California on September 14, 2020 under number U200019083025.

204.    Pursuant to the Exclusive SoCal Security Agreement, Corcoran was granted a security interest in, among other things, all (i) accounts receivable and payment intangibles of Exclusive SoCal, then owned or thereafter acquired, and (ii) all of Exclusive SoCal's commissions, real estate listings, listing agreements and the proceeds therefrom, then owned or thereafter acquired.

205.    Corcoran has a properly perfected, pre-existing, and senior lien on the Future Receipts of Exclusive SoCal that were purportedly sold to Libertas per the Libertas Agreements.

**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT OF CORCORAN GROUP LLC**
8:22-CV-01195-JWH-ADS

206. Corcoran's pre-existing and senior lien on the Future Receipts of Exclusive SoCal that were purportedly sold to Libertas, is a matter of public record.

207. Libertas knew or should have known of Corcoran's pre-existing and senior lien on the Future Receipts of Exclusive SoCal, prior to entering into the Libertas Agreements.

208. Corcoran did not consent to the sale of any of its collateral by Exclusive SoCal to Libertas.

209. Corcoran did not agree to subordinate its security interest and lien of property of Exclusive SoCal, including Future Receipts, to Libertas.

210. Any interest claimed by Libertas in the Future Receipts of Exclusive SoCal, or any other property of Exclusive SoCal that is subject to the Exclusive SoCal Security Agreement, is subordinate to the interests that Corcoran has in such property.

**WHEREFORE**, Corcoran demands judgment against Libertas Funding LLC: (i) declaring the any interest claimed by Libertas in the Future Receipts of Exclusive SoCal, or any other property of Exclusive SoCal that is subject to the Exclusive SoCal Security Agreement, is subordinate to the security interests that Corcoran has in such property under the Exclusive SoCal Security Agreement; (ii) prohibiting Libertas from accepting or collecting any Future Receipts of Exclusive SoCal, or any other property of Exclusive SoCal that is subject to the Exclusive SoCal Security Agreement, until all obligations that are secured by the Exclusive SoCal Security Agreement are satisfied in full; (iii) directing Libertas to pay Corcoran the amount equal to any Future Receipts of Exclusive SoCal, or any other property of Exclusive SoCal that is subject to the Exclusive SoCal Security Agreement, collected or otherwise received by Libertas; (iv) for damages in amounts to be proven at trial; (v) pre-judgment interest; (vi) attorneys' fees and costs; and (vii) such other and further relief that this Court deems just and proper.

## TENTH COUNT

### (Enforcement of Security Interests in Accounts Receivables – Exclusive San Francisco/Libertas)

211.   Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

212.   The security interests granted to Corcoran in the Exclusive San Francisco Security Agreement dated January 23, 2020, were perfected by the filing of a UCC-1 Financing Statement with the Secretary of State of the State of California on December 10, 2020 under number U200035937533.

213.   Pursuant to the Exclusive San Francisco Security Agreement, Corcoran was granted a security interest in, among other things, all (i) accounts receivable and payment intangibles of Exclusive San Francisco, then owned or thereafter acquired, and (ii) all of Exclusive San Francisco's commissions, real estate listings, listing agreements and the proceeds therefrom, then owned or thereafter acquired.

214.   Corcoran has a properly perfected, pre-existing, and senior lien on the Future Receipts of Exclusive San Francisco that were purportedly sold to Libertas per the Libertas Agreements.

215.   Corcoran's pre-existing and senior lien on the Future Receipts of Exclusive San Francisco that were purportedly sold to Libertas, is a matter of public record.

216.   Libertas knew or should have known of Corcoran's pre-existing and senior lien on the Future Receipts of Exclusive San Francisco, prior to entering into the Libertas Agreements.

217.   Corcoran did not consent to the sale of any of its collateral by Exclusive San Francisco to Libertas.

218.   Corcoran did not agree to subordinate its security interest and lien of property of Exclusive San Francisco, including Future Receipts, to Libertas.

219.   Any interest claimed by Libertas in the Future Receipts of Exclusive San Francisco, or any other property of Exclusive San Francisco that is subject to the Exclusive San Francisco Security Agreement, is subordinate to the interests that Corcoran has in such property.

**WHEREFORE**, Corcoran demands judgment against Libertas Funding LLC: (i) declaring the any interest claimed by Libertas in the Future Receipts of Exclusive San Francisco, or any other property of Exclusive San Francisco that is subject to the Exclusive San Francisco Security Agreement, is subordinate to the security interests that Corcoran has in such property under the Exclusive San Francisco Security Agreement; (ii) prohibiting Libertas from accepting or collecting any Future Receipts of Exclusive San Francisco, or any other property of Exclusive San Francisco that is subject to the Exclusive San Francisco Security Agreement, until all obligations that are secured by the Exclusive San Francisco Security Agreement are satisfied in full; (iii) directing Libertas to pay Corcoran the amount equal to any Future Receipts of Exclusive San Francisco, or any other property of Exclusive San Francisco that is subject to the Exclusive San Francisco Security Agreement, collected or otherwise received by Libertas; (iv) for damages in amounts to be proven at trial; (v) pre-judgment interest; (vi) attorneys' fees and costs; and (vii) such other and further relief that this Court deems just and proper.

## ELEVENTH COUNT

### (Fraudulent Conveyance: Libertas Agreements - Cal. Civ. Code § 3439.04(a)(2))

220.   Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

221.   As to Exclusive San Francisco and Exclusive SoCal, the Libertas Agreements were made, and the obligations thereunder were incurred, for less than reasonably equivalent value.

222.   Upon information and belief, Exclusive San Francisco and Exclusive SoCal received little of the proceeds from the Libertas Agreements compared to the Future Receipts of Exclusive San Francisco and Exclusive SoCal sold to Libertas.

223.   Upon information and belief, Exclusive San Francisco and Exclusive SoCal received inadequate consideration for the Libertas Agreements.

224.   At the time Exclusive San Francisco and Exclusive SoCal purportedly entered into the Libertas Agreements, Exclusive San Francisco and Exclusive SoCal were engaged or were about to engage in a business or a transaction for which their remaining assets were unreasonably small in relation to the business or transaction.

225.   At the time Exclusive San Francisco and Exclusive SoCal purportedly entered into the Libertas Agreements, Exclusive San Francisco and Exclusive SoCal intended to incur, or believed or reasonably should have believed that Exclusive San Francisco and Exclusive SoCal would incur, debts beyond their ability to pay as they become due.

226.   The Libertas Agreements, and the obligations thereunder, are voidable as to Exclusive San Francisco and Exclusive SoCal pursuant to Cal. Civ. Code § 3439.04(a)(2).

**WHEREFORE**, Corcoran demands judgment against Libertas Funding LLC (i) declaring the Libertas Agreements to be void as to Exclusive San Francisco and Exclusive SoCal; (ii) avoiding all obligations of Exclusive San Francisco and Exclusive SoCal under the Libertas Agreements; (iii) prohibiting Libertas from accepting or collecting any Future Receipts from Exclusive San Francisco or Exclusive SoCal; (iv) in the amount of the Future Receipts collected by Libertas from Exclusive San Francisco and/or Exclusive SoCal, or such other amount as may be determined at trial, plus pre-judgment interest, attorneys' fees, and costs; and (v) for such other and further relief that this Court deems just and proper.

## TWELFTH COUNT

**(Fraudulent Conveyance: Libertas Agreements - Cal. Civ. Code § 3439.04(a)(1))**

226. Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

227. As to Exclusive San Francisco and Exclusive SoCal, the Libertas Agreements were made with the actual intent to hinder, delay, or defraud Corcoran.

228. The Libertas Agreements, and the obligations thereunder, are voidable as to Exclusive San Francisco and Exclusive SoCal pursuant to Cal. Civ. Code § 3439.04(a)(1).

**WHEREFORE**, Corcoran demands judgment against Libertas Funding LLC (i) declaring the Libertas Agreements to be void as to Exclusive San Francisco and Exclusive SoCal; (ii) avoiding all obligations of Exclusive San Francisco and Exclusive SoCal under the Libertas Agreements; (iii) prohibiting Libertas from accepting or collecting any Future Receipts from Exclusive San Francisco or Exclusive SoCal; (iv) in the amount of the Future Receipts collected by Libertas from Exclusive San Francisco and/or Exclusive SoCal, or such other amount as may be determined at trial, plus pre-judgment interest, attorneys' fees, and costs; and (v) for such other and further relief that this Court deems just and proper.

## **THIRTEENTH COUNT**

**(Fraudulent Conveyance: Libertas Agreements - Cal. Civ. Code § 3439.05(a))**

229. Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

230. As to Exclusive San Francisco and Exclusive SoCal, the Libertas Agreements were made, and obligations thereunder were incurred, for less than reasonably equivalent value.

231. At the time they purportedly entered into the Libertas Agreements, Exclusive San Francisco and Exclusive SoCal were insolvent or became insolvent as a result of the agreements.

**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT OF CORCORAN GROUP LLC**
8:22-CV-01195-JWH-ADS

232.   The Libertas Agreements, and the obligations thereunder, are voidable as to Exclusive San Francisco and Exclusive SoCal pursuant to Cal. Civ. Code § 3439.05(a).

**WHEREFORE**, Corcoran demands judgment against Libertas Funding LLC (i) declaring the Libertas Agreements to be void as to Exclusive San Francisco and Exclusive SoCal; (ii) avoiding all obligations of Exclusive San Francisco and Exclusive SoCal under the Libertas Agreements; (iii) prohibiting Libertas from accepting or collecting any Future Receipts from Exclusive San Francisco or Exclusive SoCal; (iv) in the amount of the Future Receipts collected by Libertas from Exclusive San Francisco and/or Exclusive SoCal, or such other amount as may be determined at trial, plus pre-judgment interest, attorneys' fees, and costs; and (v) for such other and further relief that this Court deems just and proper.

## FOURTEENTH COUNT

### (Fraudulent Conveyance: Mortgage Company Transfer - Cal. Civ. Code § 3439.04(a)(2))

233.   Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

234.   The Mortgage Company Capital Contribution of $800,000 was transferred by ELI Realty to Aim High Capital for less than reasonably equivalent value.

235.   In fact, ELI Realty received no consideration for its funding of the Mortgage Company Capital Contribution.

236.   At the time it advanced the Mortgage Company Capital Contribution, ELI Realty was engaged or was about to engage in a business or a transaction for which the remaining assets of ELI Realty were unreasonably small in relation to the business or transaction.

**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT OF CORCORAN GROUP LLC**
8:22-CV-01195-JWH-ADS

237.   At the time it advanced the Mortgage Company Capital Contribution, ELI Realty intended to incur, or believed or reasonably should have believed that ELI Realty would incur, debts beyond its ability to pay as they become due.

238.   ELI Realty's transfer of $800,000 to Aim High Capital is voidable pursuant to Cal. Civ. Code § 3439.04(a)(2).

**WHEREFORE**, Corcoran demands judgment against Aim High Capital Partners, LLC (i) in the amount of **$800,000** or such other amount as may be determined at trial, plus pre-judgment interest, attorneys' fees, and costs; (ii) directing attachment of the membership interest of Aim High Capital in Aim High Mortgage LLC; (iii) directing attachment of all proceeds payable to Aim High Capital from or on account of its ownership interest in Aim High Mortgage LLC; (iv) prohibiting Aim High Capital from transferring or encumbering its membership interest in Aim High Mortgage LLC; and/or (v) such other and further relief that this Court deems just and proper.

## FIFTEENTH COUNT

### (Fraudulent Conveyance: Mortgage Company Transfer - Cal. Civ. Code § 3439.04(a)(1))

239.   Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

240.   The Mortgage Company Capital Contribution of $800,000 was transferred by ELI Realty to Aim High Capital with the actual intent to hinder, delay, or defraud Corcoran.

241.   ELI Realty's transfer of $800,000 to Aim High Capital is voidable pursuant to Cal. Civ. Code § 3439.04(a)(1).

**WHEREFORE**, Corcoran demands judgment against Aim High Capital Partners, LLC (i) in the amount of **$800,000** or such other amount as may be determined at trial, plus pre-judgment interest, attorneys' fees, and costs; (ii) directing attachment of the membership interest of Aim High Capital in Aim High Mortgage LLC; (iii) directing

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT
OF CORCORAN GROUP LLC
8:22-CV-01195-JWH-ADS

attachment of all proceeds payable to Aim High Capital from or on account of its ownership interest in Aim High Mortgage LLC; (iv) prohibiting Aim High Capital from transferring or encumbering its membership interest in Aim High Mortgage LLC; and/or (v) such other and further relief that this Court deems just and proper.

## SIXTEENTH COUNT

### (Fraudulent Conveyance: Mortgage Company Transfer - Cal. Civ. Code § 3439.05(a))

242.   Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

243.   The Mortgage Company Capital Contribution of $800,000 was transferred by ELI Realty to Aim High Capital for less than reasonably equivalent value.

244.   At the time it advanced the Mortgage Company Capital Contribution, ELI Realty was insolvent or became insolvent as a result of the transfer.

245.   ELI Realty's transfer of $800,000 to Aim High Capital is voidable pursuant to Cal. Civ. Code § 3439.05(a).

**WHEREFORE**, Corcoran demands judgment against Aim High Capital Partners, LLC (i) in the amount of **$800,000** or such other amount as may be determined at trial, plus pre-judgment interest, attorneys' fees, and costs; (ii) directing attachment of the membership interest of Aim High Capital in Aim High Mortgage LLC; (iii) directing attachment of all proceeds payable to Aim High Capital from or on account of its ownership interest in Aim High Mortgage LLC; (iv) prohibiting Aim High Capital from transferring or encumbering its membership interest in Aim High Mortgage LLC; and/or (v) such other and further relief that this Court deems just and proper.

## SEVENTEENTH COUNT

### (Fraudulent Conveyance: Title Company Transfers - Cal. Civ. Code § 3439.04(a)(2))

246.   Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

247.   The Title Company Transfers were transferred by ELI Realty to Aim High Capital for less than reasonably equivalent value.

248.   Upon information and belief, ELI Realty received no consideration for its funding of the Title Company Transfers.

249.   At the time it advanced the Title Company Transfers, ELI Realty was engaged or was about to engage in a business or a transaction for which the remaining assets of ELI Realty were unreasonably small in relation to the business or transaction.

250.   At the time it advanced the Title Company Transfers, ELI Realty intended to incur, or believed or reasonably should have believed that ELI Realty would incur, debts beyond its ability to pay as they become due.

251.   The Title Company Transfers of ELI Realty to Aim High Capital are voidable pursuant to Cal. Civ. Code § 3439.04(a)(2).

**WHEREFORE**, Corcoran demands judgment against Aim High Capital Partners, LLC (i) in the amount of Title Company Transfers of ELI Realty to Aim High Capital, or such other amount as may be determined at trial, plus pre-judgment interest, attorneys' fees, and costs; (ii) directing attachment of the shares of Aim High Capital in Gradus Capital, Inc.; (iii) directing attachment of all proceeds payable to Aim High Capital from or on account of its ownership interests in Gradus Capital, Inc.; (iv) prohibiting Aim High Capital from transferring or encumbering its ownership interests in Gradus Capital, Inc.; and/or (v) such other and further relief that this Court deems just and proper.

## EIGHTEENTH COUNT

### (Fraudulent Conveyance: Title Company Transfers - Cal. Civ. Code § 3439.04(a)(1))

252. Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

253. The Title Company Transfers of ELI Realty to Aim High Capital were made by ELI Realty with the actual intent to hinder, delay, or defraud Corcoran.

254. The Title Company Transfers of ELI Realty to Aim High Capital are voidable pursuant to Cal. Civ. Code § 3439.04(a)(1).

**WHEREFORE**, Corcoran demands judgment against Aim High Capital Partners, LLC (i) in the amount of Title Company Transfers of ELI Realty to Aim High Capital, or such other amount as may be determined at trial, plus pre-judgment interest, attorneys' fees, and costs; (ii) directing attachment of the shares of Aim High Capital in Gradus Capital, Inc.; (iii) directing attachment of all proceeds payable to Aim High Capital from or on account of its ownership interests in Gradus Capital, Inc.; (iv) prohibiting Aim High Capital from transferring or encumbering its ownership interests in Gradus Capital, Inc.; and/or (v) such other and further relief that this Court deems just and proper.

## NINETEENTH COUNT

### (Fraudulent Conveyance: Title Company Transfers - Cal. Civ. Code § 3439.05(a))

255. Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

256. The Title Company Transfers were transferred by ELI Realty to Aim High Capital for less than reasonably equivalent value.

257. At the time it made the Title Company Transfers, ELI Realty was insolvent or became insolvent as a result of the transfer.

258.   The Title Company Transfers of ELI Realty to Aim High Capital are voidable pursuant to Cal. Civ. Code § 3439.05(a).

**WHEREFORE**, Corcoran demands judgment against Aim High Capital Partners, LLC (i) in the amount of Title Company Transfers of ELI Realty to Aim High Capital, or such other amount as may be determined at trial, plus pre-judgment interest, attorneys' fees, and costs; (ii) directing attachment of the shares of Aim High Capital in Gradus Capital, Inc.; (iii) directing attachment of all proceeds payable to Aim High Capital from or on account of its ownership interests in Gradus Capital, Inc.; (iv) prohibiting Aim High Capital from transferring or encumbering its ownership interests in Gradus Capital, Inc.; and/or (v) such other and further relief that this Court deems just and proper.

## **TWENTIETH COUNT**

### **(Fraudulent Conveyance: Insider Transfers - Cal. Civ. Code § 3439.04(a)(2))**

259.   Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

260.   The Insider Transfers were transferred by ELI Realty to Matek LLC, Pamela Mahon, and Michael Mahon (each individually, an "Insider Recipient" and collectively, the "Insider Recipients") for less than reasonably equivalent value.

261.   At the time it advanced the Insider Transfers, ELI Realty was engaged or was about to engage in a business or a transaction for which the remaining assets of ELI Realty were unreasonably small in relation to the business or transaction.

262.   At the time it advanced the Insider Transfers, ELI Realty intended to incur, or believed or reasonably should have believed that ELI Realty would incur, debts beyond its ability to pay as they become due.

263.   The Insider Transfers of ELI Realty are voidable pursuant to Cal. Civ. Code § 3439.04(a)(2).

**WHEREFORE**, Corcoran demands judgment against (i) Matek LLC in the amount of **$461,057.16** or such other amount as may be determined at trial, plus pre-judgment interest, attorneys' fees, and costs, and such other and further relief that this Court deems just and proper; (ii) Pamela Mahon in the amount of **$75,011.83** or such other amount as may be determined at trial, plus pre-judgment interest, attorneys' fees, and costs, and such other and further relief that this Court deems just and proper; and (ii) Michael Mahon in the amount of **$564,973.93** or such other amount as may be determined at trial, plus pre-judgment interest, attorneys' fees, and costs, and such other and further relief that this Court deems just and proper.

### <u>TWENTY-FIRST COUNT</u>

**(Fraudulent Conveyance: Insider Transfers - Cal. Civ. Code § 3439.04(a)(1))**

264.   Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

265.   The Insider Transfers were made by ELI Realty with the actual intent to hinder, delay, or defraud Corcoran.

266.   The Insider Transfers are voidable pursuant to Cal. Civ. Code § 3439.04(a)(1).

**WHEREFORE**, Corcoran demands judgment against (i) Matek LLC in the amount of **$461,057.16** or such other amount as may be determined at trial, plus pre-judgment interest, attorneys' fees, and costs, and such other and further relief that this Court deems just and proper; (ii) Pamela Mahon in the amount of **$75,011.83** or such other amount as may be determined at trial, plus pre-judgment interest, attorneys' fees, and costs, and such other and further relief that this Court deems just and proper; and (ii) Michael Mahon in the amount of **$564,973.93** or such other amount as may be determined at trial, plus pre-judgment interest, attorneys' fees, and costs, and such other and further relief that this Court deems just and proper.

**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT OF CORCORAN GROUP LLC**

8:22-CV-01195-JWH-ADS

## TWENTY-SECOND COUNT

### (Fraudulent Conveyance: Insider Transfers - Cal. Civ. Code § 3439.05(a))

267.   Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

268.   ELI Realty made the Insider Transfers for less than reasonably equivalent value.

269.   At the time they made the Insider Transfers, ELI Realty was insolvent or became insolvent as a result of the transfers.

270.   The Insider Transfers are voidable pursuant to Cal. Civ. Code § 3439.05(a).

**WHEREFORE**, Corcoran demands judgment against (i) Matek LLC in the amount of **$461,057.16** or such other amount as may be determined at trial, plus pre-judgment interest, attorneys' fees, and costs, and such other and further relief that this Court deems just and proper; (ii) Pamela Mahon in the amount of **$75,011.83** or such other amount as may be determined at trial, plus pre-judgment interest, attorneys' fees, and costs, and such other and further relief that this Court deems just and proper; and (ii) Michael Mahon in the amount of **$564,973.93** or such other amount as may be determined at trial, plus pre-judgment interest, attorneys' fees, and costs, and such other and further relief that this Court deems just and proper.

## TWENTY-THIRD COUNT

### (Constructive Trust)

271.   Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

272.   Upon information and belief, the Franchise Fee Trustees are in possession of Franchise Fee Trust Funds.

273.   The Franchise Fee Trustees have an equitable duty to remit the Franchise Fee Trust Funds on account of amounts due to Corcoran under the JV Franchise Agreements as well as under the ELI Realty Franchise Agreement.

274.   The Franchise Fee Trustees would be unjustly enriched if they were allowed to retain the Franchise Fee Trust Funds.

275.   There was no basis for the collection, withholding or retention of the Franchise Fee Trust Funds by the Franchise Fee Trustees.

**WHEREFORE**, Corcoran demands joint and several judgment against ELI Realty, Michael Mahon, individually, and certain of Does 1-10 (i) directing the Franchise Fee Trustees to provide an accounting of the Franchise Fee Trust Funds; (ii) imposing a constructive trust in favor of Corcoran for all Franchise Fee Trust Funds received by the Franchise Fee Trustees; (iii) directing the Franchise Fee Trustees to turnover to Corcoran all Franchise Fee Trust Funds received by the Franchise Fee Trustees; (iv) for actual compensatory, consequential, incidental, special and/or exemplary/punitive damages in amounts to be proven at trial; (v) for pre-judgment interest; (vi) for attorneys' fees and costs; and (vii) for such other and further relief that this Court deems just and proper.

## TWENTY-FOURTH COUNT

### (Aiding and Abetting)

276.   Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

277.   Upon information and belief, Michael Mahon and certain of Does 1-10 were aware of the obligations of ELI Realty to Corcoran under the ELI Realty Franchise Agreement, Notes, and ELI Realty Security Agreement (collectively, the "ELI Realty Agreements").

278.   Upon information and belief, Michael Mahon and certain of Does 1-10 were aware of the obligations of Exclusive San Francisco and Exclusive SoCal to Corcoran under the San Francisco Franchise Agreement, Exclusive San Francisco Security Agreement, SoCal Franchise Agreement, and Exclusive SoCal Security Agreement (collectively, the "San Francisco/SoCal Agreements").

**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT**
**OF CORCORAN GROUP LLC**
8:22-CV-01195-JWH-ADS

279.   ELI Realty breached the ELI Realty Agreements as set forth herein.

280.   Exclusive San Francisco and Exclusive SoCal breached the San Francisco/SoCal Agreements as set forth herein.

281.   Upon information and belief, Michael Mahon and certain of Does 1-10 knowingly and substantially assisted ELI Realty in: (i) its breach and violation of the ELI Realty Agreements; (ii) the fraudulent conveyances of ELI Realty complained of herein; (iii) the withholding or "escrowing" the Franchise Fee Trust Funds as complained of herein; and/or (iv) other unlawful acts of ELI Realty complained of herein.

282.   Upon information and belief, Michael Mahon and certain of Does 1-10 knowingly and substantially assisted Exclusive San Francisco and Exclusive SoCal in: (i) their breach and violation of the San Francisco/SoCal Agreements; (ii) the fraudulent conveyances of Exclusive San Francisco and Exclusive SoCal; and/or (iii) other unlawful acts of Exclusive San Francisco and Exclusive SoCal complained of herein.

283.   Upon information and belief, Michael Mahon and certain of Does 1-10 were aware of their roles as part of an overall tortious activity at the time they provided assistance.

284.   As a result of the aforementioned activity of Michael Mahon and certain of Does 1-10, Corcoran has been damaged in an undetermined amount.

**WHEREFORE**, Corcoran demands judgment against Michael Mahon, individually, and certain of Does 1-10, jointly and severally, for: (i) actual compensatory, consequential, incidental, special and/or exemplary/punitive damages in amounts to be proven at trial; (ii) pre-judgment interest; (iii) attorneys' fees and costs; and/or (iv) such other and further relief that this Court deems just and proper.

## TWENTY-FIFTH COUNT

### (Breach of Fiduciary Duty – Michael Mahon)

285.   Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

286.   Michael Mahon has fiduciary duties to Corcoran, including a duty to avoid impairment of Corcoran Collateral.

287.   Michael Mahon breached his fiduciary duties to Corcoran by, among other things: (i) failing to property maintain and care for the Corcoran Collateral; (ii) selling or otherwise disposing of Corcoran Collateral outside of the ordinary course of business by entering into the Libertas Agreements and/or causing consummation of the transactions described therein, including the payment of Future Receipts to Libertas; (iii) causing the fraudulent conveyance of Corcoran Collateral or the proceeds thereof as described herein; and/or (iv) withholding or "escrowing" the Franchise Fee Trust Funds as described herein.

288.   The aforementioned actions of Michael Mahon were intentional and/or malicious as to Corcoran and/or the Corcoran Collateral.

289.   As a result of Michael Mahon's breach of his fiduciary duties to Corcoran, Corcoran has been damaged in an undetermined amount.

**WHEREFORE**, Corcoran demands judgment against Michael Mahon, individually, for: (i) actual compensatory, consequential, incidental, special and/or exemplary/punitive damages in amounts to be proven at trial; (ii) pre-judgment interest; (iii) attorneys' fees and costs; and/or (iv) such other and further relief that this Court deems just and proper.

## TWENTY-SIXTH COUNT

### (Aiding and Abetting)

290.   Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

291.   Upon information and belief, certain of Does 1-10 were aware of the fiduciary duties owed by Michael Mahon to Corcoran.

292.   Michael Mahon breached fiduciary duties to Corcoran as set forth herein.

293.   Upon information and belief, certain of Does 1-10 knowingly and substantially assisted Michael Mahon in his breach of fiduciary duties to Corcoran.

294.   Upon information and belief, certain of Does 1-10 were aware of their roles as part of an overall tortious activity at the time they provided assistance.

295.   As a result of the aforementioned activity of Michael Mahon and certain of Does 1-10, Corcoran has been damaged in an undetermined amount.

**WHEREFORE**, Corcoran demands judgment against certain of Does 1-10, jointly and severally, for: (i) actual compensatory, consequential, incidental, special and/or exemplary/punitive damages in amounts to be proven at trial; (ii) pre-judgment interest; (iii) attorneys' fees and costs; and/or (iv) such other and further relief that this Court deems just and proper.

## TWENTY-SEVENTH COUNT

### (Enforcement of Security Agreement – Exclusive Ohio)

296.   Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

297.   The security interests granted Corcoran per the ELI Realty Security Agreement were perfected by the filing of a UCC-1 Financing Statement with the Secretary of State of the State of Nevada on January 31, 2020 under number 2020069173-2.

298.   Pursuant to the ELI Realty Security Agreement, Corcoran was granted a security interest in, among other things, all general intangibles then owned or thereafter acquired by ELI Realty.

299.   ELI Realty owns, beneficially and of record, 93.96% of the issued and outstanding membership interests of Exclusive Ohio.

300.   Upon information and belief, the membership interests of Exclusive Ohio are uncertificated.

301.   Exclusive Ohio is a duly formed and validly existing limited liability company under the laws of the State of Ohio.

302.   Under the Commercial Code of the State of Ohio, the membership interests of Exclusive Ohio are general intangibles.

303.   Corcoran has a security interest in the membership interests of Exclusive Ohio that are owned by ELI Realty and is entitled to all of the rights and remedies of a secured party under the Commercial Code.

304.   ELI Realty has breached the ELI Realty Security Agreement as set forth herein, causing damage to Corcoran in an undetermined amount.

**WHEREFORE**, Corcoran demands judgment (i) directing surrender of ELI Realty's membership interests in Exclusive Ohio to Corcoran or its designee; (ii) declaring that Corcoran or its designee is a member of Exclusive Ohio, with all the rights and privileges afforded ELI Realty; (iii) for damages in amounts to be proven at trial; (iv) attorneys' fees and costs; and (v) such other and further relief that this Court deems just and proper.

## TWENTY-EIGHTH COUNT

### (Enforcement of Security Agreement – Exclusive SoCal)

305.   Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

306.   ELI Realty owns, beneficially and of record, 51% of the issued and outstanding membership interests of Exclusive SoCal.

307.   Upon information and belief, the membership interests of Exclusive SoCal are uncertificated.

308.   Exclusive SoCal is a duly formed and validly existing limited liability company under the laws of the State of California.

309. Under the Commercial Code of the State of California, the membership interests in Exclusive SoCal are general intangibles.

310. Corcoran has a security interest in the membership interests of Exclusive SoCal that are owned by ELI Realty and is entitled to all of the rights and remedies of a secured party under the Commercial Code.

311. ELI Realty has breached the ELI Realty Security Agreement as set forth herein, causing damage to Corcoran in an undetermined amount.

**WHEREFORE**, Corcoran demands judgment (i) directing surrender of ELI Realty's membership interests in Exclusive SoCal to Corcoran or its designee; (ii) declaring that Corcoran or its designee is a member of Exclusive SoCal, with all the rights and privileges afforded ELI Realty; (iii) for damages in amounts to be proven at trial; (iv) attorneys' fees and costs; and (v) such other and further relief that this Court deems just and proper.

## TWENTY-NINTH COUNT

### (Enforcement of Security Agreement – Exclusive Reno)

312. Corcoran repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Counterclaims and Third Party Complaint.

313. ELI Realty owns, beneficially and of record, 100% of the issued and outstanding membership interests of Exclusive Reno.

314. Upon information and belief, the membership interests of Exclusive Reno are uncertificated.

315. Exclusive Reno is a duly formed and validly existing limited liability company under the laws of the State of Nevada.

316. Under the Commercial Code of the State of Nevada, the membership interests in Exclusive Reno are general intangibles.

317. Corcoran has a security interest in the membership interests of Exclusive Reno that are owned by ELI Realty and is entitled to all of the rights and remedies of a secured party under the Commercial Code.

318. ELI Realty has breached the ELI Realty Security Agreement as set forth herein, causing damage to Corcoran in an undetermined amount.

**WHEREFORE**, Corcoran demands judgment (i) directing surrender of ELI Realty's membership interests in Exclusive Reno to Corcoran or its designee; (ii) declaring that Corcoran or its designee is a member of Exclusive Reno, with all the rights and privileges afforded ELI Realty; (iii) for damages in amounts to be proven at trial; (iv) attorneys' fees and costs; and (v) such other and further relief that this Court deems just and proper.

Respectfully submitted,

Dated:    June 27, 2022          Geoffrey M. Davis (SBN 214692)
                                 K&L Gates LLP
                                 10100 Santa Monica Boulevard, 8th Floor
                                 Los Angeles, CA 90067
                                 Telephone: 310.552.5000
                                 Facsimile: 310.552.5001
                                 Email: Geoffrey.Davis@klgates.com

                                 Daniel M. Eliades, Esq. (*Pro Hac Vice*
                                 Pending)
                                 K&L Gates LLP
                                 One Newark Center, 10th Floor
                                 Newark, NJ 07102
                                 Telephone: 973.848.4018
                                 Facsimile: 973.848.4001
                                 Email: Daniel.Eliades@klgates.com

                                 By:   /s/ *Geoffrey M. Davis*
                                 _____
                                       Geoffrey M. Davis
                                       *Attorneys for Corcoran Group LLC*

**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT OF CORCORAN GROUP LLC**
8:22-CV-01195-JWH-ADS

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 27th day of June, 2022, the foregoing document was served on all counsel of record who have consented to electronic service via the Court's CM/ECF system. Any other counsel of record who have not registered as an ECF user will be served by facsimile transmission or first class mail.

K&L GATES LLP

/s/ *Geoffrey M. Davis*
Geoffrey M. Davis
*Attorneys for Corcoran Group LLC*

**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT OF CORCORAN GROUP LLC**
8:22-CV-01195-JWH-ADS