1  Jonathan P. Hersey (SBN 189240)
   Damon M. Pitt (SBN 291473)
2  **K&L GATES LLP**
   1 Park Plaza
3  Twelfth Floor
   Irvine, CA 92614
4  Telephone:  (949) 253-0900
   Facsimile:   (949) 253 0902
5  Email: damon.pitt@klgates.com

6  Daniel M Eliades (Admitted *Pro Hac Vice*)
   William L. Waldman (Admitted *Pro Hac Vice*)
7  **K&L Gates LLP**
   One Newark Center, 10th Floor
8  Newark, NJ  07102
   Telephone: +1 973.848.4018
9  Facsimile: +1 973.848.4001
   Email: Daniel.Eliades@klgates.com
10 Email: William.Waldman@klgates.com

11

12 *Attorneys for Defendant, Counterclaimant, and
   Third-Party Plaintiff, Corcoran Group LLC*

13

14              UNITED STATES DISTRICT COURT

15             CENTRAL DISTRICT OF CALIFORNIA

16

| | |
|---|---|
| 17  ELI Realty Investments, LLC, a Nevada limited liability company; Exclusive | Case No. Civil Action No. 8:22-CV-01195 |
| 18  Lifestyles SoCal, LLC, a California limited liability company; Exclusive | |
| 19  Lifestyles San Francisco, Inc., a California corporation; Exclusive | |
| 20  Lifestyles Ohio, LLC, an Ohio limited liability company; and Exclusive | |
| 21  Lifestyles Las Vegas, LLC, a Nevada limited Liability company, | |
| 22 | |
| 23              Plaintiff, | |
| 24       v. | |
| 25  Corcoran Group LLC, a Delaware limited liability company; DOES 1 through 10, | |
| 26 | |
| 27              Defendant. | |
| 28  Corcoran Group LLC | |
|     Counter claimant and | |

314488363.2

|    |    |    |
|----|----|----|
| 1  | | Third Party Plaintiff, |
| 2  | v. | |
| 3  | ELI Realty Investments, LLC; Michael | |
| 4  | Mahon; Pamela Mahon; MRM Investments, LLC; AIM High Capital | |
|    | Partners, LLC; Libertas Funding LLC; | |
| 5  | Matek LLC; Exclusive Lifestyles SoCal, LLC; Exclusive Lifestyles San Francisco, | |
| 6  | Inc.; Exclusive Lifestyles Ohio, LLC; Exclusive Lifestyles Las Vegas, LLC; | |
| 7  | Exclusive Lifestyles Tahoe, LLC; and DOES 1 - 10 | |
| 8  | | |
| 9  | | Counterclaim and Third Party Defendants. |
| 10 | | |
| 11 | Libertas Funding LLC; Michael Mahon Pamela Mahon, and MRM Investments, | |
|    | LLC, | |
| 12 | | |
| 13 | | Third Party Counterclaimants, |
| 14 | v. | |
| 15 | Corcoran Group, LLC, | |
| 16 | | Third Party Counterclaim Defendant. |

---

## DECLARATION OF SHAIL SAPRA

Shail Sapra, of full age, hereby declares pursuant to Title 28 of the United States Code, Section 1746, as follows:

1.    I am the Vice President of Finance, Anywhere Brands LLC.  Anywhere Brands LLC is an affiliate company to Corcoran Group LLC ("Corcoran").  My job responsibilities include providing finance services to Corcoran. I make this declaration based on my personal knowledge, a review of the records of Corcoran, a review of pleadings publicly filed, and information available through employees and representatives of Corcoran. I am authorized to submit this declaration in support of Corcoran's motion for the appointment of a receiver for ELI Realty Investments, LLC ("ELI Realty").

1

2

**A.      The Corcoran Marks and Franchise System.**

3

2.      Corcoran has the exclusive right to use and sublicense certain trade

4

names, trademarks and service marks that have been registered on the Principal

5

Register of the United States Patent and Trademark Office, with other appropriate

6

state agencies in the United States, and with governmental agencies of foreign

7

countries (which marks, together with certain other trademarks and service marks

8

that are not registered or that are pending registration, are hereinafter collectively

9

referred to as the "Corcoran Marks").

10

3.      Corcoran has developed a franchise system for the promotion and

11

assistance of independently owned and/or operated real estate brokerage offices,

12

including policies, procedures and techniques designed to enable such offices to

13

compete more effectively in the real estate market (which system is hereinafter

14

referred to as the "Corcoran System"). The Corcoran System includes, but is not

15

limited to, common use and promotion of certain Corcoran Marks, copyrights, trade

16

secrets, centralized advertising programs, recruiting programs, referral programs and

17

sales and management training programs.  Corcoran, from time to time, revises and

18

updates the Corcoran System.

19

4.      Corcoran or its predecessors have continuously used each of the

20

Corcoran Marks since the date of their registration and those service marks are in full

21

force and effect pursuant to 15 U.S.C. § 1065.  Corcoran has given notice to the

22

public of the registration of the Corcoran Marks as provided in 15 U.S.C. § 1111, and

23

Corcoran uses or has used the Corcoran Marks as abbreviations of its brand name.

24

5.      Through its franchise system, Corcoran markets, promotes and provides

25

services to its real estate brokerage franchisees throughout the United States.  To

26

identify the origin of their real estate broker services, Corcoran allows its franchisees

27

28

to utilize the Corcoran Marks and to otherwise associate their brokerage services with Corcoran.

**B.     ELI Realty Ownership.**

6.     ELI Realty is a limited liability company organized and existing under the laws of the State of Nevada.

7.     The members of ELI Realty are: (i) MRM Investments LLC, a Nevada limited liability company which is owned by Michael Mahon; (ii) Carbon Brokers LLC, a Kentucky limited liability which is owned by Amon L. Mahon; (iii) Clermont Capital Consultants, LLC, a Michigan limited liability company which is owned by Denise M. Lachman and Larissa Lachman; (iv) Indian Mound Capital Partners, LLC, a Michigan limited liability company which is owned by Erik S. Stamell; and (v) MJZ Investments, LLC, a Pennsylvania limited liability company which is owned by Obie Walli.

8.     Upon information and belief, at all relevant times Michael Mahon has been the Chief Executive Officer of ELI Realty. In the Notes (defined below) and elsewhere Michael Mahon also represented that he was the Manager of ELI Realty.

9.     Upon information and belief, at all relevant times Pamela Mahon has been an officer and/or employee of ELI Realty.

10.     Upon information and belief, at all relevant times Obie Walli has been the Chief Financial Officer of ELI Realty. In e-mails, Mr. Walli described himself as CFO of Corcoran Global Living.

**C.     The ELI Realty Franchise Agreement.**

11.     Corcoran and ELI Realty are parties to that certain Real Estate Franchise Agreement dated January 19, 2020 and certain amendments/addendums thereto (collectively, the "ELI Realty Franchise Agreement").  A true copy of the ELI Realty Franchise Agreement is attached hereto at **Exhibit 1**[1].

---

[1] This exhibit is redacted per Fed. R. Civ. P. 5.2 and Local Rule 5.2. The un-redacted documents are available for production as may be directed by the Court.

12.     Pursuant to the ELI Realty Franchise Agreement, ELI Realty obtained the non-exclusive right to utilize the Corcoran System and Corcoran Marks in the operation of approved real estate brokerage offices, identified in the ELI Realty Franchise Agreement.

13.     The ELI Realty Franchise Agreement has a term of fifteen (15) years from the "Opening Date" as defined in the agreement.

14.     The ELI Realty Franchise Agreement obligates ELI Realty to pay to Corcoran a "Royalty Fee" and other amounts as and when set forth in Section 7 of the ELI Realty Franchise Agreement.  Nonpayment of the "Royalty Fee", or other amounts set forth in Section 7, is an event of default by ELI Realty under the ELI Realty Franchise Agreement.

15.     The ELI Realty Franchise Agreement also requires ELI Realty to report transactions to Corcoran.  Failure by ELI Realty to report transactions as required is an event of default under the ELI Realty Franchise Agreement.

16.     In addition to the Royalty Fee, the ELI Realty Franchise Agreement obligates ELI Realty to pay to Corcoran "Brand Marketing Fund" contributions as and when set forth in Section 8 of the ELI Realty Franchise Agreement.  Nonpayment of Brand Marketing Fund contributions is an event of default under the ELI Realty Franchise Agreement.

17.     The ELI Realty Franchise Agreement obligates ELI Realty to pay Corcoran interest and other amounts as and when set forth in Section 11 of the ELI Realty Franchise Agreement.

18.     The ELI Realty Franchise Agreement obligates ELI Realty to pay Corcoran attorneys' fees, costs and other amounts as and when set forth in Section 22.10 of the ELI Realty Franchise Agreement.

19.     The ELI Realty Franchise Agreement obligates ELI Realty to pay Corcoran certain liquidated damages in the event of that the ELI Realty Franchise

Agreement is terminated before the "Expiration Date" (as defined in the ELI Realty Franchise Agreement), other than by mutual consent.

## D.   The ELI Realty Guaranty.

20.   Michael Mahon, Pamela Mahon, and MRM Investments LLC are collectively referred to as the "Guarantors".

21.   On or around January 17, 2020, Guarantors executed and conveyed to Corcoran a Guaranty of Payment and Performance (collectively the "ELI Realty Guaranty"). A true copy of the ELI Realty Guaranty is attached at p. 37 to **Exhibit 1**.

22.   Pursuant to the ELI Realty Guaranty, Guarantors guaranteed prompt payment and performance of all of the obligations of ELI Realty to Corcoran under the ELI Realty Franchise Agreement as well as all other agreements or instruments between ELI Realty and Corcoran, including the Notes (defined below) and ELI Realty Security Agreement (defined below).

23.   The ELI Realty Guaranty was conveyed to Corcoran to, among other things, induce Corcoran to accept ELI Realty as a franchisee and to convey certain loans to ELI Realty that are evidenced by the Notes (defined below).

## E.   The Corcoran Loans and the ELI Realty Notes.

24.   From January 2020 through February 2022, Corcoran advanced various loans to ELI Realty in excess of $17 million (the "Corcoran Loans").

25.   The proceeds of the Corcoran Loans were to be used by ELI Realty to purchase ownership interests in existing brokerages, then form entities with the sellers, which entities would enter into separate Real Estate Franchise Agreements with Corcoran. The new joint venture entities were to operate approved real estate brokerage offices as franchisees of Corcoran.

26.   In connection with the Corcoran Loans, ELI Realty executed and conveyed to Corcoran the following Conversion Promissory Notes (collectively, the

"Notes"): (i) Conversion Promissory Note dated January 23, 2020; (ii) Conversion Promissory Note dated January 28, 2020; (iii) Conversion Promissory Note dated June 30, 2020; (iv) Conversion Promissory Note dated July 27, 2020; (v) Conversion Promissory Note dated September 8, 2020; (vi) Conversion Promissory Note dated September 9, 2020; (vii) Conversion Promissory Note dated September 29, 2020; (viii) Conversion Promissory Note dated November 13, 2020; (ix) Conversion Promissory Note dated November 30, 2020; (x) Conversion Promissory Note dated December 9, 2020; (xi) Conversion Promissory Note dated December 10, 2020; (xii) Conversion Promissory Note dated March 11, 2021; (xiii) Conversion Promissory Note dated March 11, 2021; (xiv) Conversion Promissory Note dated March 15, 2021; (xv) Conversion Promissory Note dated June 2, 2021; (xvi) Conversion Promissory Note dated July 8, 2021; (xvii) Conversion Promissory Note dated August 12, 2021; (xviii) Conversion Promissory Note dated August 18, 2021; (xix) Conversion Promissory Note dated September 1, 2021; (xx) Conversion Promissory Note dated September 1, 2021; (xxi) Conversion Promissory Note dated October 20, 2021; (xxii) Conversion Promissory Note dated November 3, 2021; (xxiii) Conversion Promissory Note dated December 2, 2021; (xxiv) Conversion Promissory Note dated January 10, 2022; (xxv) Conversion Promissory Note dated January 12, 2022; (xxvi) Conversion Promissory Note dated January 27, 2022; and (xxviii) Conversion Promissory Note dated February 28, 2022. True copies of the Notes are attached hereto at **Exhibit 2**.

27.   Michael Mahon executed each of the Notes on behalf of ELI Realty as its "Manager".

28.   A default by ELI Realty of any agreement between Corcoran and ELI Realty, including the ELI Realty Franchise Agreement and the ELI Realty Security Agreement (defined below), is an event of default under each of the Notes.

29.   Termination or expiration of the ELI Realty Franchise Agreement is also an event of default under each of the Notes.

DocuSign Envelope ID: 59C6C7D5-C225-4E9D-A9EA-26780B756D0A

30.     Upon an event of default under the Notes, which has not been cured within the applicable time, if any, Corcoran is entitled to accelerate the unpaid principal of the Notes and all accrued interest, and the same shall become immediately due and payable by ELI Realty.  The Notes provide that the obligation of ELI Realty to pay the principal and interest is unconditional and is not subject to any rights of offset or recoupment.

**F.      The ELI Realty Security Agreement.**

31.     To secure payment and performance of ELI Realty under the ELI Realty Franchise Agreement, Notes, and all other agreements of ELI Realty to Corcoran, ELI Realty granted security interests to Corcoran in certain property pursuant to that certain Security Agreement dated January 17, 2020 (the "ELI Realty Security Agreement"). A true copy of the ELI Realty Security Agreement is attached at p. 44 of **Exhibit 1**.

32.     The ELI Realty Security Agreement is signed by Michael Mahon on behalf of ELI Realty.

33.     Pursuant to the Security Agreement, ELI Realty granted Corcoran a security interest in the following property then owned or thereafter acquired by ELI Realty (the "Corcoran-ELI Realty Collateral"):

> *For good and valuable consideration, the receipt and sufficiency of which are acknowledged, Debtor grants to Secured Party a security interest in all accounts receivable and payment intangibles; cash proceeds; contract rights; leases; furniture; furnishings; equipment; fixtures; inventory; commissions; real estate listings, listing agreements and related rights which are located at, utilized by or related to the real estate brokerage business conducted by Debtor and including the proceeds therefrom and any and all amendments or replacements thereto and any rebate/award program (or similar incentive programs) to which Debtor and/or any Co-Debtors may be entitled pursuant to any franchise agreement entered into with Secured Party, together with all such rights and property hereafter acquired by Debtor and Co- Debtors; and all general intangibles (collectively, the "Collateral") as well as all parts, replacements, substitutions, profits, products and cash and non-*

*cash proceeds of the foregoing Collateral (including insurance and condemnation proceeds payable by reason of condemnation of or loss or damage thereto). [Add following only for Security Agreements filed in New Jersey - The Collateral described herein falls within the scope of the Uniform Commercial Code enacted in New Jersey, including N.J.S.A. 12A:9-102 and N.J.S.A. 12A:9-109.] The foregoing Collateral is granted to Secured Party as security for (i) the prompt payment of any promissory notes executed by Debtor in favor of Secured Party, and any renewals, compromises, extensions, modifications, accelerations or other changes in the time for performance or other terms (the "Notes"), and (ii) performance under any franchise agreements between Debtor and Secured Party, as the same may be amended (the "Franchise Agreements"), and (iii) all other agreements between Debtor and Secured Party.*

34.     The security interests granted per the ELI Realty Security Agreement were perfected by the filing of a UCC-1 Financing Statement with the Secretary of State of the State of Nevada on January 31, 2020 under number 2020069173-2. A true copy of the filed financing statement is attached hereto at **Exhibit 3**.

35.     At Section 1 of the ELI Realty Security Agreement, ELI Realty[2] agreed as follows:

*(a)     Debtor will properly maintain and care for the Collateral and will not remove the Collateral from the Offices (as defined in the Franchise Agreements);*

*(b)     Debtor will notify Secured Party in writing prior to any change in Debtor's place of business;*

*(c)     Debtor has not executed and will not execute as Debtor any security agreement or financing statement covering any of the Collateral except with Secured Party, nor will Debtor pledge or encumber the Collateral, or allow any lien to be placed against the Collateral, whether voluntary or involuntary;*

---

[2] ELI Realty is the Debtor under the ELI Realty Security Agreement.

DocuSign Envelope ID: 50C5C7D5-C225-4E9D-A9EA-2C700B7E6D0A

(d)     *Debtor represents and warrants to Secured Party that the Collateral shall not become collateral for any other obligations previously incurred, nor collateral under any other security agreement(s) previously executed by Debtor; and*

(e)     *Debtor will not sell, contract for sale or otherwise dispose of any of the Collateral except in the ordinary course of business.*

36.     ELI Realty's breach of any term, provision, warranty or representation in the ELI Realty Security Agreement, the ELI Realty Franchise Agreement, or any other agreement between the parties is an "Event of Default" of the ELI Realty Security Agreement.

37.     Upon an Event of Default of the ELI Realty Security Agreement, among other things, Corcoran may (i) declare all obligations secured by the ELI Realty Security Agreement immediately due and payable, and (ii) require ELI Realty to assemble the Corcoran-ELI Realty Collateral and make it available to Corcoran.

**G.     The ELI Realty JV Equity Interests.**

38.     ELI Realty holds majority ownership interests in: (i) Exclusive Lifestyles San Francisco, Inc. ("Exclusive San Francisco"); (ii) Exclusive Lifestyles SoCal, LLC ("Exclusive SoCal"); (iii) Exclusive Lifestyles Las Vegas, LLC[3] ("Exclusive Las Vegas"); (iv) Exclusive Lifestyles Tahoe, LLC ("Exclusive Tahoe") and (v) Exclusive Lifestyles Ohio, LLC ("Exclusive Ohio") - (collectively, the "JV Franchisees").

39.     Upon information and belief, ELI Realty acquired all of its equity interests in the JV Franchisees with proceeds of the Corcoran Loans that are evidenced by the Notes.

40.     The JV Franchisees are each parties to separate Real Estate Franchise Agreements and other agreements with Corcoran.

**H.     The Exclusive San Francisco – Corcoran Agreements.**

---

[3] Exclusive Lifestyles Reno, LLC ("Exclusive Reno") owns 62.99% of the membership interests in Exclusive Las Vegas.  Exclusive Reno is wholly owned by ELI Realty.

41.    Corcoran and Exclusive San Francisco are parties to that certain Real Estate Franchise Agreement dated January 30, 2020 and certain amendments/addendums thereto (collectively, the "San Francisco Franchise Agreement"). A true copy of the San Francisco Franchise Agreement is attached hereto at **Exhibit 4**.

42.    Guarantors executed and conveyed to Corcoran a Guaranty of Payment and Performance (collectively the "San Francisco Guaranty"), guaranteeing payment and performance of all of the obligations of Exclusive San Francisco to Corcoran under the San Francisco Franchise Agreement as well as all other agreements or instruments between Exclusive San Francisco and Corcoran. A true copy of the San Francisco Guaranty is attached hereto at **Exhibit 5**.

43.    To secure payment and performance of Exclusive San Francisco under the San Francisco Franchise Agreement and all other agreements of Exclusive San Francisco to Corcoran, Exclusive San Francisco granted security interests to Corcoran in certain property pursuant to that certain Security Agreement dated January 23, 2020 (the "Exclusive San Francisco Security Agreement"). A true copy of the Exclusive San Francisco Security Agreement is attached hereto at **Exhibit 6**.

44.    Among other things, the Exclusive San Francisco Security Agreement grants Corcoran a security interest in all of Exclusive San Francisco's accounts receivable, cash proceeds, contract rights, commissions, real estate listings, listing agreements and related rights, including the proceeds therefrom.  The Exclusive San Francisco Security Agreement is signed by Michael Mahon on behalf of Exclusive San Francisco.

45.    The security interests granted per the Exclusive San Francisco Security Agreement were perfected by the filing of a UCC-1 Financing Statement with the Secretary of State of the State of California on December 10, 2020 under number U200035937533. A true copy of the filed financing statement is attached hereto at **Exhibit 7**.

DocuSign Envelope ID: 50C5C7D5-C225-4E9D-A9EA-2C700B7E6D0A

**I.      The Exclusive SoCal – Corcoran Agreements.**

46.     Corcoran and Exclusive SoCal are parties to that certain Real Estate Franchise Agreement dated September 11, 2020 and certain amendments/addendums thereto (collectively, the "SoCal Franchise Agreement"). A true copy of the SoCal Franchise Agreement is attached hereto at **Exhibit 8**.

47.     On or around September 10, 2020, Guarantors executed and conveyed to Corcoran a Guaranty of Payment and Performance (collectively the "SoCal Guaranty"), guaranteeing payment and performance of all of the obligations of Exclusive SoCal to Corcoran under the SoCal Franchise Agreement as well as all other agreements or instruments between Exclusive SoCal and Corcoran. A true copy of the SoCal Guaranty is attached at p. 35 of **Exhibit 8**.

48.     To secure payment and performance of Exclusive SoCal under the SoCal Franchise Agreement and all other agreements of Exclusive SoCal to Corcoran, Exclusive SoCal granted security interests to Corcoran in certain property pursuant to that certain Security Agreement dated September 9, 2020 (the "Exclusive SoCal Security Agreement"). A true copy of the Exclusive SoCal Security Agreement is attached at p. 42 of **Exhibit 8**.

49.     Among other things, the Exclusive SoCal Security Agreement grants Corcoran a security interest in all of Exclusive SoCal's accounts receivable, cash proceeds, contract rights, commissions, real estate listings, listing agreements and related rights, including the proceeds therefrom.  The Exclusive SoCal Security Agreement is signed by Michael Mahon on behalf of Exclusive SoCal.

50.     The security interests granted per the Exclusive SoCal Security Agreement were perfected by the filing of a UCC-1 Financing Statement with the Secretary of State of the State of California on September 14, 2020 under number U200019083025. A true copy of the filed financing statement is attached hereto at **Exhibit 9**.

**J.      The Exclusive Las Vegas – Corcoran Agreements.**

51.     Corcoran and Exclusive Las Vegas are parties to that certain Real Estate Franchise Agreement dated June 23, 2021 and certain amendments/addendums thereto (collectively, the "Las Vegas Franchise Agreement"). A true copy of the Las Vegas Franchise Agreement is attached hereto at **Exhibit 10**.

52.     On or around June 23, 2021, Guarantors executed and conveyed to Corcoran a Guaranty of Payment and Performance (collectively the "Las Vegas Guaranty"), guaranteeing payment and performance of all of the obligations of Exclusive Las Vegas to Corcoran under the Las Vegas Franchise Agreement as well as all other agreements or instruments between Exclusive Las Vegas and Corcoran. A true copy of the Las Vegas Guaranty is attached at p. 37 of **Exhibit 10**.

53.     To secure payment and performance of Exclusive Las Vegas under the Las Vegas Franchise Agreement and all other agreements of Exclusive Las Vegas to Corcoran, Exclusive Las Vegas granted security interests to Corcoran in certain property pursuant to that certain Security Agreement dated May 10, 2021 (the "Exclusive Las Vegas Security Agreement"). A true copy of the Exclusive Las Vegas Security Agreement is attached at p. 44 of **Exhibit 10**.

54.     Among other things, the Exclusive Las Vegas Security Agreement grants Corcoran a security interest in all of Exclusive Las Vegas' accounts receivable, cash proceeds, contract rights, commissions, real estate listings, listing agreements and related rights, including the proceeds therefrom. The Exclusive Las Vegas Security Agreement is signed by Michael Mahon on behalf of Exclusive Las Vegas.

55.     The security interests granted per the Exclusive Las Vegas Security Agreement were perfected by the filing of a UCC-1 Financing Statement with the Secretary of State of the State of Nevada on September 13, 2021 under number 2021196331-5. A true copy of the filed financing statement is attached hereto at **Exhibit 11**.

**K.     The Exclusive Tahoe – Corcoran Agreements.**

DocuSign Envelope ID 50S5C7D5-C225-4E9D-A9EA-2C700B7E6D0A

56.     Corcoran and Exclusive Tahoe are parties to that certain Real Estate Franchise Agreement dated September 29, 2020 and any written amendments/addendums thereto (collectively, the "Tahoe Franchise Agreement"). A true copy of the Tahoe Franchise Agreement is attached hereto at **Exhibit 12**.

57.     Guarantors executed and conveyed to Corcoran a Guaranty of Payment and Performance (the "Tahoe Guaranty"), guaranteeing payment and performance of all of the obligations of Exclusive Tahoe to Corcoran under the Tahoe Franchise Agreement as well as all other agreements or instruments between Exclusive Tahoe and Corcoran. A true copy of the Tahoe Guaranty is attached at p. 36 of **Exhibit 12**.

58.     To secure payment and performance of Exclusive Tahoe under the Tahoe Franchise Agreement and all other agreements of Exclusive Tahoe to Corcoran, Exclusive Tahoe granted security interests to Corcoran in certain property pursuant to that certain Security Agreement dated September 29, 2020 (the "Exclusive Tahoe Security Agreement"). A true copy of the Exclusive Tahoe Security Agreement is at p. 43 of **Exhibit 12**.

59.     Among other things, the Exclusive Tahoe Security Agreement grants Corcoran a security interest in all of Exclusive Tahoe's accounts receivable, cash proceeds, contract rights, commissions, real estate listings, listing agreements and related rights, including the proceeds therefrom. The Exclusive Tahoe Security Agreement is signed by Michael Mahon on behalf of Exclusive Tahoe.

60.     The security interests granted per the Exclusive Tahoe Security Agreement were perfected by the filing of a UCC-1 Financing Statement with the Secretary of State of the State of Nevada on September 29, 2020 under number 2020132169-7. A true copy of the filed financing statement is attached hereto at **Exhibit 13**.

**L.     The Exclusive Ohio – Corcoran Agreements.**

61.     Corcoran and Exclusive Ohio are parties to that certain Real Estate Franchise Agreement dated October 22, 2021 and certain amendments/addendums

thereto (collectively, the "Ohio Franchise Agreement"). A true copy of the Ohio Franchise Agreement is attached hereto at **Exhibit 14**.

62. On or around October 20, 2021, Guarantors executed and conveyed to Corcoran a Guaranty of Payment and Performance (collectively the "Ohio Guaranty"), guaranteeing payment and performance of all of the obligations of Exclusive Ohio to Corcoran under the Ohio Franchise Agreement as well as all other agreements or instruments between Exclusive Ohio and Corcoran. A true copy of the Ohio Guaranty is attached at p. 35 of **Exhibit 14**.

63. To secure payment and performance of Exclusive Ohio under the Ohio Franchise Agreement and all other agreements of Exclusive Ohio to Corcoran, Exclusive Ohio granted security interests to Corcoran in certain property pursuant to that certain Security Agreement dated August 3, 2021 (the "Exclusive Ohio Security Agreement"). A true copy of the Exclusive Ohio Security Agreement is attached at p. 42 of **Exhibit 14**.

64. Among other things, the Exclusive Ohio Security Agreement grants Corcoran a security interest in all of Exclusive Ohio's accounts receivable, cash proceeds, contract rights, commissions, real estate listings, listing agreements and related rights, including the proceeds therefrom. The Exclusive Ohio Security Agreement is signed by Michael Mahon on behalf of Exclusive Ohio.

65. The security interests granted per the Exclusive Ohio Security Agreement were perfected by the filing of a UCC-1 Financing Statement with the Secretary of State of the State of Ohio on May 23, 2022 under number OH00263498464. A true copy of the filed financing statement is attached hereto at **Exhibit 15**.

**M.    ELI Realty Franchise Agreement and Note Defaults – Monetary.**

66. ELI Realty is in default of its monetary obligations to Corcoran under the ELI Realty Franchise Agreement for failing to pay amounts to Corcoran as and when due under the ELI Realty Franchise Agreement.

DocuSign Envelope ID: 50S5C7D5-C225-4E9D-A9EA-2C700B7E6D0A

67.     As of May 18, 2022, the sum of at least $440,570.75 (the "<u>ELI Realty Arrears</u>") was outstanding and past due by ELI Realty to Corcoran under the ELI Realty Franchise Agreement. The ELI Realty Arrears exclude any amounts due for unreported transactions, attorney's fees and costs, or obligations under the ELI Realty Franchise Agreement which may accrue after May 18, 2022.

68.     ELI Realty is separately in default under the Notes due to, among other things, its foregoing default under the ELI Realty Franchise Agreement.

69.     By letter dated May 22, 2022, Corcoran noticed ELI Realty and Guarantors of defaults under the ELI Realty Franchise Agreement and Notes and demanded that ELI Realty pay the ELI Realty Arrears on or before June 21, 2022. A true copy of this letter is attached hereto at **Exhibit 16.**[4]

70.     ELI Realty failed to pay any of the ELI Realty Arrears on or before June 21, 2022.

**N.     <u>Security Agreement and Note Defaults – Sale of Corcoran Collateral to Libertas.</u>**

71.     ELI Realty is in default of the ELI Realty Security Agreement and the Notes on account of its transfer of Corcoran-ELI Realty Collateral to Libertas Funding LLC ("<u>Libertas</u>").

72.     Exclusive San Francisco and Exclusive SoCal are likewise in default of the Exclusive San Francisco Security Agreement and Exclusive SoCal Security Agreement on account of their transfer of Corcoran collateral to Libertas.

73.     Without Corcoran's knowledge or consent, pursuant to the (i) Agreement of Sale of Future Receipts dated December 8, 2021; (ii) Agreement of Sale of Future Receipts dated February 18, 2022; and (iii) Agreement of Sale of Future Receipts dated April 13, 2022 (collectively, the "<u>Libertas Agreements</u>"), ELI Realty, Exclusive San Francisco, and Exclusive SoCal agreed to sell specified

---

[4] This exhibit is redacted per Fed. R. Civ. P. 5.2 and Local Rule 5.2. The un-redacted documents are available for production as may be directed by the Court.

amounts of their "Future Receipts" (as defined in the Libertas Agreements) to Libertas in exchange for deeply discounted advance payments. True copies of the Libertas Agreements are attached hereto at **Exhibits 17-19**.[5]

74.     Pursuant to the Libertas Agreements, ELI Realty, Exclusive San Francisco, and Exclusive SoCal agreed to sell to Libertas the combined total of $5,864,666.95 of their combined Future Receipts in exchange for $4,237,144.06.

75.     The Libertas Agreements require ELI Realty, Exclusive San Francisco, and Exclusive SoCal to pay Libertas over $100,000 each week until the entire "Completion Amount" (as defined in the Libertas Agreements) is paid to Libertas.

76.     Michael Mahon is guarantor of the obligations of ELI Realty, Exclusive San Francisco, and Exclusive SoCal under the Libertas Agreements.

77.     Michael Mahon executed the Libertas Agreements individually and on behalf of ELI Realty, Exclusive San Francisco, Exclusive SoCal, and other entities.

78.     Previously, Michael Mahon executed the ELI Realty Security Agreement, Exclusive San Francisco Security Agreement, and Exclusive SoCal Security Agreement on behalf of each of those entities.

79.     In executing the Libertas Agreements, Michael Mahon represented that entering into and performing under the Libertas Agreements would not result in breach or violation of, or default under, any agreement or instrument by which ELI Realty, Exclusive San Francisco, or Exclusive SoCal were bound.

80.     The Future Receipts sold to Libertas by ELI Realty, Exclusive San Francisco, and Exclusive SoCal constitute collateral of Corcoran under the ELI Realty Security Agreement, Exclusive San Francisco Security Agreement and/or Exclusive SoCal Security Agreement. Corcoran did not, and does not, consent to the transfer of its collateral or the proceeds thereof to Libertas.

---

[5] This exhibit is redacted per Fed. R. Civ. P. 5.2 and Local Rule 5.2. The un-redacted documents are available for production as may be directed by the Court.

DocuSign Envelope ID: 50S5C7D5-C225-4E9D-A9EA-2CZ00B7E6D0A

81.   Each sale of Future Receipts to Libertas by ELI Realty, Exclusive San Francisco, and Exclusive SoCal constitutes an event of default under the Security Agreements.

82.   In executing the Libertas Agreements, Michael Mahon represented that he had the full power and authority to bind Exclusive San Francisco,[6] Exclusive SoCal, and other entities to perform their obligations under the Libertas Agreements.

83.   Upon information and belief, other than ELI Realty, Michael Mahon did not inform any of the shareholders or members of Exclusive San Francisco or Exclusive SoCal that those entities were entering into any of the Libertas Agreements.

84.   Upon information and belief, other than ELI Realty, prior to filing of pleadings in this action by Corcoran, none of the shareholders or members of Exclusive San Francisco or Exclusive SoCal were aware that Future Receipts of those entities were sold to Libertas.

85.   Members of Exclusive SoCal claim that the proceeds of the sale of the Future Receipts of Exclusive SoCal were not utilized to pay obligations of Exclusive SoCal but were used to cover personal obligations of management of ELI Realty, pay debt obligations of ELI Realty, and to hide ELI Realty's poor financial  condition. See Complaint filed by members of Exclusive SoCal at **Exhibit 33**, p.5, lines 2-4.

86.   The Security Agreements, and the filing of corresponding UCC-1 Financing Statements by Corcoran, all pre-date the Libertas Agreements.  Corcoran's pre-existing and senior liens on the Future Receipts of ELI Realty, Exclusive San Francisco and Exclusive SoCal are matters of public record.

87.   By letter dated May 26, 2022, Corcoran noticed ELI Realty and Guarantors of defaults under the terms of the ELI Realty Security Agreement and the Notes as a result of the sale of Corcoran-ELI Realty Collateral to Libertas pursuant

---

[6] In the Declaration of Randall Kostick, detailed below, Mr. Kostick submits that Michael Mahon did not have the authority to bind Exclusive San Francisco to the Libertas Agreements.

to the Libertas Agreements. A true copy of this letter is attached hereto at **Exhibit 20**.[7]

88.     In its letter of May 26, 2022, Corcoran also accelerated the unpaid principal and all interest accrued under each of the Notes and demanded immediate payment thereof. ELI Realty and Guarantors have failed to pay Corcoran any of the amounts demanded in the letter of May 26, 2022.

89.     By letter dated May 31, 2022, Corcoran noticed Exclusive San Francisco and Guarantors of defaults under the terms of the Exclusive San Francisco Security Agreement and San Francisco Franchise Agreement as a result of the sale of collateral of Corcoran to Libertas pursuant to the Libertas Agreements.  A true copy of this letter is attached hereto at **Exhibit 21**.[8]  Neither Exclusive San Francisco nor the Guarantors responded to the notice of default contained in Corcoran's letter of May 31, 2022.

90.     By letter dated May 31, 2022, Corcoran noticed Exclusive SoCal and Guarantors of defaults under the terms of the Exclusive SoCal Security Agreement and SoCal Franchise Agreement as a result of the sale of collateral of Corcoran to Libertas pursuant to the Libertas Agreements.  A true copy of this letter is attached hereto at **Exhibit 22**.[9]  Neither Exclusive SoCal nor the Guarantors have responded to the notice of default contained in Corcoran's letter of May 31, 2022.

91.     By letter dated June 28, 2022, Corcoran noticed ELI Realty, Exclusive San Francisco and Exclusive SoCal (as well as the Guarantors) that:

> *Until all obligations to Corcoran that are secured by the Security Agreements are fully satisfied, Corcoran: (i) objects to transfer of its collateral, or any proceeds of its collateral, by ELI Realty, Exclusive San Francisco or Exclusive SoCal to Libertas; and (ii) demands that ELI*

---

[7] This exhibit is redacted per Fed. R. Civ. P. 5.2 and Local Rule 5.2. The un-redacted documents are available for production as may be directed by the Court.
[8] This exhibit is redacted per Fed. R. Civ. P. 5.2 and Local Rule 5.2. The un-redacted documents are available for production as may be directed by the Court.
[9] This exhibit is redacted per Fed. R. Civ. P. 5.2 and Local Rule 5.2. The un-redacted documents are available for production as may be directed by the Court.

*Realty, Exclusive San Francisco and Exclusive SoCal refrain from further encumbrance, disposition, conveyance, sale or transfer of its collateral, or any proceeds of its collateral, to Libertas.*

A true copy of the letter of June 28, 2022 is attached hereto at **Exhibit 23.**[10]

92.     Despite this demand, upon information and belief, ELI Realty, Exclusive San Francisco and Exclusive SoCal continued to transfer over $100,000 of Corcoran's collateral each week to Libertas.

**O.    Franchise Agreement Monetary Defaults by JV Franchisees.**

93.     With the possible exception of Exclusive Tahoe, by May of 2022, the JV Franchisees were each in default of their obligations to Corcoran for failing to pay amounts to Corcoran as and when due under the JV Franchise Agreements.[11]

94.     Exclusive San Francisco is in default of its monetary obligations to Corcoran under the San Francisco Franchise Agreement for failing to pay amounts to Corcoran as and when due under the San Francisco Franchise Agreement. As of May 18, 2022, the sum of at least $429,719.55 (the "San Francisco Arrears") was outstanding and past due by Exclusive San Francisco to Corcoran under the San Francisco Franchise Agreement. The San Francisco Arrears exclude any amounts due for unreported transactions, attorney's fees and costs, or obligations under the San Francisco Franchise Agreement which may accrue after May 18, 2022. By letter dated May 22, 2022, Corcoran noticed Exclusive San Francisco and Guarantors of the defaults under the San Francisco Franchise Agreement.  A true copy of this letter is attached hereto at **Exhibit 24.**[12] Exclusive San Francisco failed to cure the noticed defaults.

---

[10] This exhibit is redacted per Fed. R. Civ. P. 5.2 and Local Rule 5.2. The un-redacted documents are available for production as may be directed by the Court.
[11] Collectively, the "JV Franchise Agreements" are the San Francisco Franchise Agreement, SoCal Franchise Agreement, Las Vegas Franchise Agreement, Tahoe Franchise Agreement, and Ohio Franchise Agreement.
[12] This exhibit is redacted per Fed. R. Civ. P. 5.2 and Local Rule 5.2. The un-redacted documents are available for production as may be directed by the Court.

95.     Exclusive SoCal is in default of its monetary obligations to Corcoran under the SoCal Franchise Agreement for failing to pay amounts to Corcoran as and when due under the SoCal Franchise Agreement. As of May 18, 2022, the sum of at least $429,903.24 (the "SoCal Arrears") was outstanding and past due by Exclusive SoCal to Corcoran under the SoCal Franchise Agreement. The SoCal Arrears exclude any amounts due for unreported transactions, attorney's fees and costs, or obligations under the SoCal Franchise Agreement which may accrue after May18, 2022. By letter dated May 22, 2022, Corcoran noticed Exclusive SoCal and Guarantors of the defaults under the SoCal Franchise Agreement. A true copy of this letter is attached hereto at **Exhibit 25**.[13] Exclusive SoCal failed to cure the noticed defaults.

96.     Exclusive Las Vegas is in default of its monetary obligations to Corcoran under the Las Vegas Franchise Agreement for failing to pay amounts to Corcoran as and when due under the Las Vegas Franchise Agreement. As of May 18, 2022, the sum of at least $83,028.42 (the "Las Vegas Arrears") was outstanding and past due by Exclusive Las Vegas to Corcoran under the Las Vegas Franchise Agreement. The Las Vegas Arrears exclude any amounts due for unreported transactions, attorney's fees and costs, or obligations under the Franchise Agreement which may accrue after May 18, 2022.  By letter dated May 22, 2022, Corcoran noticed Exclusive Las Vegas and Guarantors of defaults under the Las Vegas Franchise Agreement. A true copy of this letter is attached hereto at **Exhibit 26**.[14] Exclusive Las Vegas failed to cure the noticed defaults.

97.     Exclusive Ohio is in default of its monetary obligations to Corcoran under the Franchise Agreement for failing to pay amounts to Corcoran as and when due under the Franchise Agreement. As of May 18, 2022, the sum of at least $88,407.84 (the "Exclusive Ohio Arrears") was outstanding and past due by

---

[13] This exhibit is redacted per Fed. R. Civ. P. 5.2 and Local Rule 5.2. The un-redacted documents are available for production as may be directed by the Court.
[14] This exhibit is redacted per Fed. R. Civ. P. 5.2 and Local Rule 5.2. The un-redacted documents are available for production as may be directed by the Court.

Exclusive Ohio to Corcoran under the Ohio Franchise Agreement. The Exclusive Ohio Arrears exclude any amounts due for unreported transactions, attorney's fees and costs, or obligations under the Ohio Franchise Agreement which may accrue after May 18, 2022. By letter dated May 22, 2022, Corcoran noticed Exclusive Ohio and Guarantors of defaults under the Ohio Franchise Agreement. A true copy of this letter is attached hereto at **Exhibit 27**.[15] Exclusive Ohio has failed to cure the noticed defaults.

**P.**     **The Mortgage Company Transfer.**

98.     Aim High Capital Partners, LLC ("Aim High Capital") is a limited liability company organized and existing under the laws of the State of Nevada. The members of Aim High Capital are identical to the members of ELI Realty.

99.     According to the Limited Liability Company Agreement of Aim High Mortgage LLC, on or around August 3, 2021, Aim High Capital made an initial capital contribution of $800,000 (the "Mortgage Company Capital Contribution") into Aim High Mortgage LLC (the "Mortgage Company") in exchange for a 50% ownership interest in the Mortgage Company.

100.     Upon information and belief, Aim High Capital received the Mortgage Company Capital Contribution from ELI Realty.[16]

101.     Upon information and belief, there was no consideration paid by Aim High Capital to ELI Realty for the Mortgage Company Capital Contribution.

102.     Upon information and belief, all or part of the Mortgage Company Capital Contribution was comprised of proceeds of certain of the loans from Corcoran that are evidenced by certain of the Notes.

---

[15] This exhibit is redacted per Fed. R. Civ. P. 5.2 and Local Rule 5.2. The un-redacted documents are available for production as may be directed by the Court.
[16] ELI Realty's Written Financial Presentation (defined below) reflects that ELI Realty and/or JV Franchisees paid $600,000 in 2021 for "Purchase of Mortgage". See **Exhibit 32** at p. 4.

103.   Upon information and belief, all or part of the Mortgage Company Capital Contribution was comprised of proceeds of certain of the collateral of Corcoran under the Security Agreements.[17]

**Q.     The Title Company Transfer.**

104.   Gradus Capital, Inc. ("Gradus Capital") is the sole owner of Innovative Title Company (the "Title Company").

105.   Pursuant to that Stock Purchase Agreement dated December 31, 2021, Aim High Capital obtained a 67% ownership interest in Gradus Capital in exchange for (i) a down payment of undetermined amount (the "Title Company Down Payment"), and (ii) a Promissory Note in the amount of $1,355,000 (the "Title Company Note ").

106.   Upon information and belief, all or some portion of the Title Company Down Payment and sums paid pursuant to the Title Company Note (the "Title Company Transfers") were transferred by ELI Realty to Aim High Capital.

107.   Upon information and belief, there was no consideration paid by Aim High Capital to ELI Realty for the Title Company Transfers.

108.   Upon information and belief, all or part of the Title Company Transfers was comprised of proceeds of certain of the loans from Corcoran that are evidenced by certain of the Notes.

109.   Upon information and belief, all or part of the Title Company Transfers was comprised of proceeds of certain of the collateral of Corcoran under the Security Agreements.

**R.     Distributions, Bonuses and Transfers to Insiders.**

---

[17] Collectively, the "Security Agreements" are the ELI Realty Security Agreement, Exclusive San Francisco Security Agreement, Exclusive SoCal Security Agreement, Exclusive Las Vegas Security Agreement, Exclusive Tahoe Security Agreement, and Exclusive Ohio Security Agreement.

110. Upon information and belief, ELI Realty paid the following non-exclusive distributions to members, bonuses, and/or other transfers to insiders (or entities owned or controlled by insiders):

| 2020 Payments | | 2021 Payments | | Total |
|---|---|---|---|---|
| **Matek LLC** | | | | |
| Jan-22 | $85,000.00 | Oct-21 | $70,000.00 | |
| Feb-22 | $46,000.00 | Nov-21 | $74,682.16 | |
| Mar-22 | $34,000.00 | Dec-21 | $89,500.00 | |
| Apr-22 | $61,875.00 | | | |
| **Total** | $226,875.00 | **Total** | $234,182.16 | **$461,057.16** |
| | | | | |
| **Pamela Mahon** | | | | |
| Jan-22 | $35,000.00 | Jan-21 | $18,320.00 | |
| | | Feb-21 | $5,372.00 | |
| | | Mar-21 | $4,634.30 | |
| | | Apr-21 | $3,738.94 | |
| | | May-21 | $1,543.75 | |
| | | Jun-22 | $340.00 | |
| | | Aug-21 | $6,062.94 | |
| **Total** | $35,000.00 | **Total** | $40,011.83 | **$75,011.83** |
| | | | | |
| **Michael Mahon** | | | | |
| Jan-22 | $26,750.00 | Jan-21 | $26,750.00 | |
| Feb-22 | $26,750.00 | Feb-21 | $26,750.00 | |
| Apr-22 | $15,000.00 | Feb-21 | $9,648.21 | |
| | | Feb-21 | $100,000.00 | |
| | | Mar-21 | $26,750.00 | |
| | | May-21 | $26,750.00 | |
| | | Jun-21 | $26,750.00 | |
| | | Jun-21 | $10,000.00 | |
| | | Jul-21 | $26,750.00 | |
| | | Aug-21 | $26,750.00 | |
| | | Oct-21 | $26,750.00 | |
| | | Nov-21 | $26,750.00 | |
| | | Dec-21 | $9,325.72 | |
| | | Dec-21 | $26,750.00 | |
| | | Dec-21 | $100,000.00 | |
| **Total** | $68,500.00 | **Total** | $496,473.93 | **$564,973.93** |

DocuSign Envelope ID: 5DC5C7D5-C225-4E9D-A9EA-2C700B7E6D0A

The aforementioned payments are each individually, an "Insider Transfer" and collectively, the "Insider Transfers ".

111.   Upon information and belief, certain proceeds received from the Libertas Agreements were used to fund certain of the Insider Transfers.

112.   Upon information and belief, ELI Realty, Exclusive San Francisco, and Exclusive SoCal sold property to Libertas, which had already been pledged to Corcoran, in order to fund all or some of the Insider Transfers.

**S.      Pre-litigation Financial Distress of ELI Realty and JV Franchisees.**

113.   Upon information and belief, by no later than May of 2022, ELI Realty and all or some of the JV Franchisees were unable to pay (and did not pay) their obligations as they became due. In May of 2022, ELI Realty advised Corcoran that ELI Realty and the JV Franchisees had a cash flow short fall of millions of dollars. ELI Realty requested that Corcoran make an "emergent" multi-million dollar loan to ELI Realty and its affiliates in order to avoid a cessation of operations.

114.   For example, via text message of May 17, 2022, a representative of ELI Realty advised that the enterprise is "in a very tenuous cash position including $7m of operational shortfalls." See **Exhibit 28**[18] hereto. ELI Realty asked "[w]ould Realogy/Corcoran provide a $7 million short term loan which CGL would pay back from a TBD franchise fee rate, whether it be through a new facility or your existing recruitment funding program that is provided to all franchisees." Id.

115.   By e-mail of May 20, 2022, a representative of ELI Realty advised Corcoran that "[ou]r immediate cash need is 50% of the $8,313,100 or $4,156,550." See **Exhibit 29**[19] hereto.

116.   On May 21, 2022, ELI Realty provided Corcoran with a schedule of certain outstanding payables of ELI Realty and the JV Franchisees totaling

---

[18] This exhibit is redacted per Fed. R. Civ. P. 5.2 and Local Rule 5.2. The un-redacted documents are available for production as may be directed by the Court.

[19] This exhibit is redacted to exclude personal information of a non-party to this action.  The un-redacted document is available for production as may be directed by the Court.

$4,030,739.93. A true copy of the schedule is attached hereto at **Exhibit 30**. This amount was exclusive of any amounts then due to Corcoran under the Notes or Franchise Agreements with Corcoran.  The schedule also appears to exclude any amounts due to Libertas or Bank of San Francisco.

117.   In an e-mail of May 28, 2022, Michael Mahon represented that ELI Realty and related entities "will have to wind down our operations" absent additional funding from Corcoran. See **Exhibit 31**[20] hereto.

118.   Upon information and belief, management of ELI Realty did not inform the minority shareholders/members of the JV Franchisees about the true financial condition of the JV Franchisees in May of 2022.

119.   Upon information and belief, under current management of ELI Realty, the financial condition of ELI Realty and the JV Franchisees deteriorated further after May of 2022.

120.   As noted above, in May of 2022, Corcoran noticed ELI Realty and the JV Franchisees (other than Exclusive Tahoe) of various defaults under Franchise Agreements, Notes, and Security Agreements with Corcoran. Upon information and belief, management of ELI Realty did not inform the minority shareholders/members of the JV Franchisees of any of the default notices.

121.   On June 3, 2022, a representative of ELI Realty advised Corcoran that ELI Realty had completed a financial presentation that had "been reviewed and confirmed by the outside CPA audit firm" and requested a meeting with Corcoran to make the financial presentation.  ELI Realty provided Corcoran the *Corcoran Global Living Realogy Presentation* dated June 3, 2022 (the "Written Financial Presentation").  A true copy of the Written Financial Presentation is attached hereto at **Exhibit 32**. The Written Financial Presentation reflects consolidated financial performance of ELI Realty and the JV Franchisees, as well as certain information

---

[20] This exhibit is redacted per Fed. R. Civ. P. 5.2 and Local Rule 5.2. The un-redacted documents are available for production as may be directed by the Court.

about the Title Company, the Mortgage Company and other related businesses. See id.

122.  The Written Financial Presentation states that in the 12 months prior to April 30, 2022, $1,076,577.58 was paid in "Management Bonus". Id. at p. 3. The entire amount of Management Bonus was paid in 2022, prior to March 31, 2022. Id. at p. 4. Upon information and belief, the Management Bonus payments could not have been made without funding from the Libertas Agreements.

123.  Management of ELI Realty, including Michael Mahon and Obie Walli, provided Corcoran a financial presentation, based on the Written Financial Presentation, during a conference call on June 5, 2022. Legal and accounting professionals of ELI Realty also participated in the conference call.

124.  Corcoran thereafter attempted in good faith to negotiate a forbearance agreement with ELI Realty and the JV Franchisees, but an agreement was not reached.  Corcoran believes that a forbearance agreement did not come about because ELI Realty would not consent to discussions between Corcoran and the minority shareholders/members of the JV Franchisees. Upon information and belief, management of ELI Realty did not inform the minority shareholders/members of the JV Franchisees about the forbearance agreement discussions.

125.  Representatives of Corcoran, ELI Realty and the JV Franchisees continued discussions concerning a forbearance agreement throughout the day on June 21, 2022 – with Corcoran waiting to hear back from representatives of ELI Realty and the JV Franchisees. No response came from ELI Realty or the JV Franchisees. Instead, the Complaint in this action was filed on behalf of ELI Realty and the JV Franchisees (other than Exclusive Tahoe) on June 21, 2022. Upon information and belief, management of ELI Realty did not inform the minority shareholders/members of the JV Franchisees about the filing of the Complaint in this action.

**T.**     **The Court Approved Stipulation and ELI Realty's Breach Thereof.**

126.    At the outset of this litigation, Corcoran sought a preliminary injunction enjoining further encumbrance, disposition, conveyance, sale, or transfer of collateral of Corcoran to Libertas. <u>See</u> ECF No. 31.

127.    Corcoran's motion was resolved pursuant to that certain *Stipulation Concerning Corcoran Group LLC's Motion for Preliminary Injunction* dated July 14, 2022 (the "<u>Stipulation</u>"). <u>See</u> ECF No. 46. This Court entered an Order on July 15, 2022 resolving Corcoran's Motion for Preliminary Injunction, without prejudice, pursuant to the Stipulation. <u>See</u> ECF No. 52. The Stipulation states:

> *From July 13, 2022, through the earlier of entry of further stipulation between Corcoran and Franchisees or order of the Court in the above captioned litigation, Franchisees shall each report all transactions and pay all fees to Corcoran as and when required under the Real Estate Franchise Agreements between Corcoran and each Franchisee (collectively, the "<u>Franchise Agreements</u>"). For each real estate transaction that occurs after July 12, 2022, through the earlier of entry of further stipulation between Corcoran and Franchisees or order of the Court, Franchisees shall report the transaction to Corcoran and pay Corcoran a Royalty Fee (as defined in the Franchise Agreements) on the date of settlement.*

ECF 46, p.2 lines 1-9.[21]

128.    The Franchisees defaulted under the Stipulation by failing to pay Corcoran fees as and when due under the Franchise Agreements after July 12, 2022.

**U.**     **Additional Allegations of Fraud and Malfeasance Against ELI Realty Management.**

129.    <u>The Declaration of Randall Kostick</u>. Randall Kostick is a shareholder of Exclusive San Francisco. On July 12, 2022, Mr. Kostick submitted a Declaration (the "<u>Kostick Declaration</u>") in support of Corcoran's motion for injunctive relief in this matter seeking to enjoin ELI Realty, Exclusive San Francisco, and Exclusive SoCal

---

[21] The Stipulation defines the "Franchisees" as ELI Realty and all of the JV Franchisees other than Exclusive Tahoe.

DocuSign Envelope ID: 50S5C7D5-C225-4E9D-A9EA-2CZ00B7E6D0A

from further encumbrance, disposition, conveyance, sale or transfer of collateral of Corcoran to Libertas. ECF No. 44.

130.   Regarding the finances of ELI Realty and Exclusive San Francisco (referenced as ELSF in the Kostick Declaration) in late 2021 and early 2022, the Kostick Declaration states at ¶12:

> *I know that most, if not all, of ELSF's Bay Area offices had their highest grossing year ever in 2021 in terms of income from real estate sales. Despite ELSF's strong performance for its shareholders including ELI Realty, I was told by Mahon and Walli that ELI Realty could not afford to make earn-out payments that were coming due. As a result, earn-out payments due under the APA for the final two quarters of 2021 and the first quarter of 2022 were not paid on time and still have not been paid. Similarly, I was told that ELI Realty could not afford to honor employment agreements including my own employment agreement, and ELI Realty would require that employees agree to salary cuts. Accordingly, Mahon and Walli caused ELI Realty and ELSF to reduce my salary by 50%, and the salaries of other ELISF and ELI Realty employees similarly were cut, all despite employment agreements that would give employees the right to demand full payment as severance in face of such unilateral reductions. I also learned that both ELI Realty and ELSF were falling behind on payments to creditors, including late payments to landlords and vendors whose bills are several months in arrears. This makes no economic sense given the state of the real estate market in 2021 and the strong performance of ELSF throughout 2021.*

131.   Regarding the Libertas Agreements, the Kostick Declaration states at ¶¶ 13-14:

> *On or about the third week of June 2022 I was astonished to learn the Mahon had entered into certain agreements (the "Libertas Agreements"), with Libertas Funding, LLC ("Libertas") on or about December 8, 2021, under which ELI Realty agreed to sell $2,660,000.00 of the future receipts of ELSF for the sum of $2,000,000.00, and April 13, 2022, under which ELI Realty agreed to sell $2,793,000.00 of the future receipts of ELSF for the sum of $2,100,000.00. The Libertas Agreements required that ELI Realty and ELSF pay tens of thousands of dollars in ELSF's receipts each week to Libertas until the obligations in those agreements are fully repaid.*

DocuSign Envelope ID: 50C5C7D6-C225-4E9D-A9EA-2C700B7E6D0A

> *As a shareholder I was never previously made aware of these damaging agreements and never would have voted to approve them. The proposal to enter into these agreements was never presented to the ELSF board of directors, and the ELSF board of directors never voted to approve the execution of the Libertas Agreements. Moreover, since ELI Realty controlled only 2 seats on the 5-member ELSF board of directors, it was not possible for the two ELI Realty directors, Mahon and Walli, to cause the ELSF board of directors to authorize the execution of those agreements. Furthermore, the authorization of the Libertas Agreements was never presented to the ELSF shareholders for approval, which was required by the Amended Shareholders Agreement.*

132.   Regarding the diversion of funds, the Kostick Declaration states at ¶¶ 15-16:

> *Since the execution of the Libertas Agreements, Mahon and Walli, the senior executive officers of ELSF, and ELI Realty, the controlling shareholder of ELSF, have caused the diversion of hundreds of thousands of dollars in ELSF's receipts for the payment of amounts to Libertas under the Libertas Agreements. Meanwhile, the use of ELSF's revenues for the payments due on the Libertas Agreements and other mismanagement has led to the closure of ELSF branch offices and the layoffs of ELSF employees. I was told by Mahon and Walli that these cutbacks were necessary due to insufficient revenues, while in reality ELSF revenues were being diverted to payments to Libertas that were not disclosed to me.*

> *I have read the complaint filed by Corcoran and have been shocked to read that Mahon and Walli have been paying themselves lavish salaries while not paying ELSF's bills or honoring ELSF's contractual obligations.*

133.   <u>The SoCal Member Litigation</u>. On September 26, 2022, minority members of Exclusive SoCal filed a lawsuit against ELI Realty, Michael Mahon, Obie Walli and Exclusive SoCal captioned *Jessie Rodriguez et. al. vs. Michael Mahon et. al.*, Superior Court of the State of California for the County of Orange, Case No. 30-2022-01282981 (the "<u>SoCal Member Litigation</u>"). A true copy of the Complaint is attached hereto at **<u>Exhibit 33</u>**.

134.   The Complaint in the SoCal Member Litigation includes the following summary allegations:

> "Defendants used lies, false financial statements and every other conceivable fraudulent financial artifice to convince Plaintiffs to sell their thriving, profitable real estate businesses. After the purchases, Defendants continued their scheme of all-out subterfuge to keep their true financial condition secret from Plaintiffs.  Unaware, Plaintiffs continued, for years, to provide ample profits to Defendants, believing that they would see massive returns and earnings bonuses. In reality, all of Plaintiffs' money was used to keep Defendants' companies afloat and line the individual Defendants' pockets. Defendants' scheme has been publicly revealed, and Plaintiffs are entitled to be returned to the financial condition that they would have enjoyed had Defendants not lied. They are also entitled to punitive damages, attorney's fees and equitable relief. Defendants' grift has now been exposed and come to an end."

**Exhibit 33**, p. 2, lines 8-16.

135.   Minority members of Exclusive SoCal further charged that:

> 19.   At all times relevant hereto, Defendants ELI and SoCal were the alter egos of Defendants Mahon and Walli and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between Defendants such that separateness between them is non-existent. Defendants Mahon and Walli completely controlled, dominated, managed and operated Defendants ELI and SoCal to suit their personal financial needs.

> 20.   Specifically, at all times relevant hereto, Defendants Mahon and Walli (1) controlled the business affairs of ELI and SoCal; (2) commingled the funds and assets of the corporate entities and diverted corporate funds and assets for their own personal use; (3) continuously disregarded legal formalities and failed to keep arm's length relationships among the corporate entities; (4) inadequately capitalized ELI; (5) made unauthorized withdrawals of capital from SoCal and sold its future earnings at a discount in order to cover personal obligations, pay ELI's debt obligations and hide ELI's poor financial condition from Plaintiffs; (6) used the corporate entities as mere shells, instrumentalities or conduits for their personal financial purposes; and

DocuSign Envelope ID: 50E5C7D5-C225-4E90-A9EA-2C700B7E6D0A

*(7) used the corporate entities to shield against personal obligations, and in particular, the obligations as alleged in this Complaint.*

*21.    At all times relevant hereto, Defendants ELI and SoCal were not only influenced and governed by Defendants Mahon and Walli, but there was such a unity of interest and ownership that the individuality or separateness of Mahon and Walli and ELI and SoCal is non-existent. The facts are such that an adherence to the fiction of the separate existence of these entities would, under these circumstances sanction a fraud and result in injustice.*

**Exhibit 33**, p. 4, line 19 – p. 5 line 11.

136.   I understand that Stradling, Yocca, Carlson & Rauth, P.C. (the "Stradling Firm") represents ELI Realty, Michael Mahon, Obie Walli, and Exclusive SoCal in the SoCal Member Litigation.

137.   Plaintiffs in the SoCal Member Litigation seek judgment against the defendants for more than $1,000,000. Upon information and belief, the SoCal Member Litigation is pending.

138.   The November 2022 Inman Article. Additional allegations of "fraud", "bad management" and "outright stealing" by ELI Realty and its current management were made public in the Inman article of Lillian Dickerson dated November 18, 2022 entitled *Corcoran Global Living CEO awash in lawsuits amid agent pay delay* (the "Inman Article").[22]   A true copy of the Inman Article is attached hereto at **Exhibit 34**. Upon information and belief, the revelations in the Inman Article had a material negative impact on the reputation and business of ELI Realty and the JV Franchisees.

139.   The Inman Article opens with:

*Agents at Corcoran Global Living have waited on hundreds of thousands of dollars in late commissions thanks to the alleged fraudulent behavior of CEO Michael Mahon, whose leadership has reportedly brought the company so close to the brink of financial*

---

[22] ELI Realty and the JV Franchisees did business as *Corcoran Global Living*.

> *disaster that it has failed to keep the lights on and put leases in default at some offices, according to lawsuits and agents who spoke to Inman. The worsening crisis at the company may also be driving agents away at a critical moment for the broader industry when agent ranks are shrinking and competition for talent is more fierce than ever.*

**Exhibit 34** at p. 1.

140.   Among other things, the Inman Article reports alleged failure of ELI Realty and certain JV Franchisees to pay their real estate agents commissions earned on closed real estate transactions, as well as non-payment of other obligations. See id. One real estate agent, who is not involved in litigation with ELI Realty or any of the JV Franchisees, reportedly commented that the delay in paying commission checks was "either bad management on their part or outright stealing." Id. at p. 4.

## V.   Additional Litigation and Claims Against ELI Realty and/or JV Franchisees.

141.   The Brighton-SoCal Landlord Litigation. On September 30, 2022, a landlord filed a breach of contract suit against Exclusive SoCal and Michael Mahon captioned *Brighton Way vs. Exclusive Lifestyles SoCal, LLC et. al.*, Superior Court of the State of California for the County of Los Angeles, Case No. 228TCV32044 (the "Brighton-SoCal Landlord Litigation"). A true copy of the Complaint in this action is attached hereto at **Exhibit 35**. Plaintiff alleges that Exclusive SoCal is tenant and Michael Mahon is guarantor under a commercial lease and seeks judgment of more than $107,000. Upon information and belief, the Brighton-SoCal Landlord Litigation is pending.

142.   The Libertas Collection Action. On December 5, 2022, Carnegie Management Inc. (Libertas) filed a lawsuit against ELI Realty, Exclusive SoCal, Exclusive San Francisco, Michael Mahon and others alleging breach of the Libertas Agreements (the "Libertas Collection Action"). A true copy of the Complaint in the Libertas Collection Action is attached hereto at **Exhibit 36**. In the Libertas Collection

1    Action, Libertas seeks judgment against the defendants for more than $3,000,000.

2    Upon information and belief, the Libertas Collection Action is pending.

3        143.   The DWI-SoCal Landlord Litigation. On December 5, 2022, a landlord

4    filed a breach of contract suit against Exclusive SoCal and others captioned *D'Escoto*

5    *West, Inc. vs. Exclusive Lifestyles SoCal, LLC et. al.*, Superior Court of the State of

6    California for the County of Los Angeles, Case No. 228MCV02544 (the "DWI-

7    SoCal Landlord Litigation"). A true copy of the Complaint in this action is attached

8    hereto at **Exhibit 37**. Plaintiff seeks judgment of more than $100,000 on account of

9    alleged breach of the lease by tenant. (The landlord asserts that Corcoran is liable

10   under the subject lease because it is supposedly executed by Corcoran.  Corcoran

11   contends that it did not sign the subject lease but that the lease was signed on behalf

12   of Corcoran by a representative of Exclusive SoCal – without the knowledge or

13   authority of Corcoran.) Upon information and belief, the DWI-SoCal Landlord

14   Litigation is pending.

15   **W.    Corcoran's Termination of the Franchise Agreements.**

16       144.   By letters dated November 21, 2022 (the "Termination Notices"),

17   Corcoran notified ELI Realty, each of the JV Franchisees, and the Guarantors of

18   termination of the Franchise Agreements effective November 21, 2022 (the

19   "Termination Date").   Termination of the Franchise Agreements resulted from

20   franchisees' failure to cure the defaults previously noticed by Corcoran, breach of the

21   Stipulation by ELI Realty and the JV Franchisees, and for those other reasons detailed

22   in the termination notices. True copies of the Termination Notices are attached hereto

23   at **Exhibits 38-43**.[23]

24       145.   In the Termination Notices, Corcoran demanded that ELI Realty and

25   each of the JV Franchisees immediately cease and desist use of the Corcoran Marks

26   and Corcoran System as required under the Franchise Agreements. See id.

27
     _____
28   [23] This exhibit is redacted per Fed. Civ. P. 5.2 and Local Rule 5.2. The un-redacted documents
     are available for production as may be directed by the Court.

146.   However, after their receipt of the Termination Notices, and after the Termination Date, ELI Realty and all or some of the JV Franchisees continued to utilize the Corcoran Marks and Corcoran System.  True copies of time-stamped pages of the youhomenevada.com and corcorangl.com websites are attached hereto at **Exhibits 44**.

147.   In the Termination Notices, Corcoran demanded that ELI Realty and each of the JV Franchisees satisfy their post-termination obligations provided for in the Franchise Agreements, including but not limited to those set forth in Section 16.4 of the Franchise Agreements, (the "Post Termination Obligations").

148.   After their receipt of the Termination Notices, and after the Termination Date, ELI Realty and each of the JV Franchisees refused to comply with their Post Termination Obligations.  In fact, after the Termination Date, ELI Realty and each of the JV Franchisees refused to de-identify their business from apparent affiliation with Corcoran and continued to represent to the public that they were affiliated with Corcoran.

149.   In the Termination Notices, Corcoran demanded immediate payment of outstanding and past due Royalty Fees and BMF contributions (each as defined in the Franchise Agreements) due as of October 31, 2022.  In the Termination Notices, Corcoran demanded the following amounts due under as of October 31, 2022: (i) **$174,397** from ELI Realty and Guarantors; (ii) **$1,703,699** from Exclusive San Francisco and Guarantors; (iii) **$1,298,066** from Exclusive SoCal and Guarantors; (iv) **$383,993** from Exclusive Ohio and Guarantors; and (v) **$447,270** from Exclusive Las Vegas, Exclusive Tahoe, and Guarantors.

150.   The foregoing amounts exclude (i) any amounts due for unreported transactions or unpaid obligations under the Franchise Agreements which accrued after October 31, 2022; (ii) interest, attorney's fees and costs due under the Franchise Agreements; (iii) liquidated damages due under the Franchise Agreements; and (iv)

amounts due under the Notes, Security Agreements, or other agreements with Corcoran.

151.   ELI Realty and the JV Franchisees have not paid Corcoran any portion of the amounts due and demanded in the Termination Notices.

## X.   Corcoran's Demand for Compliance with the Security Agreements.

152.   By separate letters dated November 21, 2022 (the "Collateral Notices"), Corcoran notified ELI Realty, each of the JV Franchisees except Exclusive Tahoe, and the Guarantors that Corcoran declared all obligations secured by the Security Agreements immediately due and payable. True copies of the Collateral Notices are attached hereto at **Exhibits 45-49**.[24]

153.   In the Collateral Notices, Corcoran demanded that ELI Realty and each of the JV Franchisees except Exclusive Tahoe, assemble Corcoran's collateral and the records pertaining to the collateral and make same available for Corcoran's inspection.   ELI Realty and the applicable JV Franchisees failed to comply with Corcoran's demand.

154.   In the Collateral Notices, Corcoran also noticed ELI Realty, the applicable JV Franchisees, and the Guarantors that:

> *Other than for payment to Corcoran of amounts due under the ELI Realty Franchise Agreement, Corcoran objects to any further use of its Collateral, or any proceeds of its Collateral, by ELI Realty without prior written authorization of Corcoran. Corcoran therefore directs ELI Realty to refrain from any use, disposition, conveyance or transfer of the Collateral, or any proceeds of the Collateral, other than for payment to Corcoran for amounts due under the ELI Realty Franchise Agreement, without first obtaining written consent of Corcoran.[25]*

---

[24] These exhibits are redacted per Fed. R. Civ. P. 5.2 and Local Rule 5.2. The un-redacted documents are available for production as may be directed by the Court.
[25] The other Collateral Notices reference a specific JV Franchisee instead of ELI Realty. The notices to the JV Franchisees contain identical instruction. See **Exhibits 45-49**.

155.   Since the date of the Collateral Notices, ELI Realty and the JV Franchisees have failed to remit to Corcoran any of Corcoran's collateral or the proceeds thereof.

156.   Despite repeated admonitions from Corcoran, after the date of the Collateral Notices, ELI Realty and the applicable JV Franchisees have utilized, disposed of, conveyed, and/or transferred collateral of Corcoran and the proceeds of collateral of Corcoran without consent of Corcoran.

157.   For instance, upon information and belief, after the date of the Collateral Notices Michael Mahon and current management of ELI Realty have and continue to utilize the proceeds of Corcoran's collateral to fund a wind down of operations of ELI Realty and the JV Franchisees without consent of Corcoran. After the date of the Collateral Notices, Michael Mahon also proposed to transfer property of the JV Franchisees, upon which Corcoran has a senior security interest, to Bank of San Francisco. Upon information and belief, the proposed transfers to Bank of San Francisco were on account of loans from Bank of San Francisco to ELI Realty and guaranteed by Michael Mahon. Upon information and belief, none of the JV Franchisees are parties to any loan or other agreement with Bank of San Francisco.

158.   In an e-mail of November 29, 2022, Michael Mahon advised the minority members of Exclusive Las Vegas that "[g]iven obligations to secured creditors, we do not believe Exclusive Lifestyles Las Vegas LLC assets or prospects are sufficient to provide any returns to its members." A true copy of this e-mail is attach hereto at **Exhibit 50**.

159.   Michael Mahon also stated in his e-mail of November 29, 2022 that ". . . based on advice from outside counsel, it appears that the most efficient process to achieve the above objectives is to enter into an agreement with Bank of San Francisco to wind down the Exclusive Lifestyles Las Vegas LLC business, and the business of the other ELI-controlled franchises, while we finalize separation agreements with the members/shareholders." Id. at p.2.

160.   The identity of the "outside counsel" referenced in Michael Mahon's e-mail of November 29, 2022 is presently unknown to Corcoran.

161.   Upon information and belief, Exclusive Las Vegas is not a party to a loan or other agreement with Bank of San Francisco.

162.   Upon information and belief, Bank of San Francisco does not have a security interest in any property owned by Exclusive Las Vegas (or any of the other JV Franchisees).

163.   Upon information and belief, Bank of San Francisco has not filed a UCC-1 financing statement as to Exclusive Las Vegas (or any of the other JV Franchisees).

164.   Michael Mahon goes on in his e-mail of November 29, 2022 to state that after a wind down process that may be approved by Bank of San Francisco, Exclusive Las Vegas and the other JV Franchisees would pay "what's left" to Bank of San Francisco. See id. at p.2.  Corcoran is unaware of any legal justification for payment of property of the JV Franchisees, upon which Corcoran has a senior security interest, to Bank of San Francisco.

165.   Upon information and belief, Michael Mahon and/or current management of ELI Realty delivered to the other JV Franchisees communications similar to the November 29, 2022 e-mail of Michael Mahon to minority members of Exclusive Las Vegas.

166.   By letter dated December 1, 2022, Corcoran advised counsel for Bank of San Francisco as well as common counsel for ELI Realty, the JV Franchisees, and Michael Mahon that, among other things, Corcoran objected to the transfer of any of its collateral from the JV Franchisees without written consent of Corcoran. A true copy of this letter is attached hereto at **Exhibit 51**.

167.   Corcoran, Bank of San Francisco, ELI Realty, and the JV Franchisees thereafter had discussions about a potential agreement concerning the wind down of

1    ELI Realty and the JV Franchisees as well as the disposition of proceeds of the

2    liquidation of property/collateral. No agreement was reached between the parties.

3        168.   During these discussions, ELI Realty and the JV Franchisees provided

4    Corcoran with a "Wind Down Bank Budget" (the "Wind Down Budget") projecting

5    combined revenue and expenses for ELI Realty and the JV Franchisees from

6    December 1, 2022 to February 28, 2023.  A true copy of the Wind Down Budget is

7    attached hereto at **Exhibit 52.**[26]

8        169.   While the Wind Down Budget does not include a list of liabilities, it

9    does reflect unpaid commissions due to real estate agents as of November 25, 2022

10   of: (i) $228,476 by Exclusive SoCal; (ii) $398,154 by Exclusive Ohio; and (iii)

11   $512,388 by Exclusive Las Vegas. See id. Corcoran understands this to mean that as

12   of November 25, 2022, Exclusive SoCal, Exclusive Ohio and Exclusive Las Vegas

13   separately owed a combined sum of over $1,139,000 in commissions to their real

14   estate agents on account of closed transactions.[27] What Exclusive SoCal, Exclusive

15   Ohio, and Exclusive Las Vegas did with the portion of the commission income they

16   received but did not remit to their real estate agents is unknown to Corcoran.

17       170.   The Wind Down Budget also reflects that, subject to a fall through rate,

18   from December 1, 2022 to February 28, 2023 ELI Realty and the JV Franchisees

19   expected to generate $1,396,570 in combined commission income from real estate

20   transactions that were pending as of December 1, 2022. See id. All of this

21   commission income is subject to Corcoran's security interests.

22       171.   Despite demands, ELI Realty and the JV Franchisees have provided

23   Corcoran with no information or accountings as to the commission income they have

---

[26] This exhibit is redacted to exclude personal information of a non-party to this action.  The un-redacted document is available for production as may be directed by the Court.

[27] When a brokered real estate transaction is closed, real estate agents are generally paid one of two ways.  First, the real estate agent may be paid listing and/or selling commission "at the closing table" directly from the proceeds of the transaction.  Second, the entire commission due to the broker and agent may be paid to the broker directly from the proceeds of the transaction, and broker subsequently pays the agent the agent portion of the commission. It appears that Exclusive SoCal, Exclusive Ohio and Exclusive Las Vegas utilized the second method regarding the $1,139,000 in combined commissions due their real estate agents.

generated since the date of the Collateral Notices (November 21, 2022). Moreover, ELI Realty and the JV Franchisees have not informed Corcoran what they have done with the proceeds of Corcoran's collateral.

172. The Wind Down Budget also states that as of January 15, 2023, ELI Realty and the JV Franchisees expected to have $1,238,217 in combined "Cash in Bank". See id. Corcoran has received no information about any bank accounts or balances holding its cash collateral.

173. Apart from proposed distributions to Bank of San Francisco, the Wind Down Budget projects operating expenses of more than $840,000 to be paid from Corcoran's cash collateral. See id. Corcoran never consented to the Wind Down Budget or approved any use of its collateral, or the proceeds thereof, for the expenses in the Wind Down Budget.

174. On January 5, 2023, Corcoran and common counsel for ELI Realty and Exclusive Ohio received a letter from counsel for Matthew Watercutter. A true copy of this letter is attached hereto at **Exhibit 53**. Mr. Watercutter is a minority member of Exclusive Ohio and, according to the letter from his lawyer, was its broker of record until December 31, 2022.

175. Mr. Wattercutter is in possession of commission revenue of Exclusive Ohio and expects to receive additional funds. See id. Mr. Wattercutter advises that Michael Mahon has demanded turnover of these funds to Exclusive Ohio and seeks direction due to the competing claims of Corcoran to the funds. See id.

176. On January 6, 2023, Corcoran responded that it claims a perfected security interest in the commission income of Exclusive Ohio and demanded payment of amounts due to it from the proceeds of its collateral. A true copy of this response is attached hereto at **Exhibit 54**.[28] Corcoran further advised that if Exclusive Ohio or other parties are unwilling to remit the proceeds of Corcoran's collateral to

---

[28] This exhibit is redacted per Fed. R. Civ. P. 5.2 and Local Rule 5.2. The un-redacted documents are available for production as may be directed by the Court.

DocuSign Envelope ID: 50C5C7D5-C225-4E9D-A9EA-2CZ00B7E6D0A

Corcoran, Corcoran will stipulate to impleading the subject funds into court with a reservation of all rights. <u>See</u> <u>id</u>. Corcoran has not received a response from Exclusive Ohio.

**Y.   <u>Current Condition of ELI Realty and the JV Franchisees.</u>**

177.   Upon information and belief, ELI Realty and the JV Franchisees are no longer conducting brokerage operations. <u>See</u>, <u>e.g.</u> January 5, 2023 letter from counsel for Matthew Watercutter attached hereto at **<u>Exhibit 53</u>**.

178.   Upon information and belief, all or nearly all of the real estate agents formerly associated with ELI Realty and the JV Franchisees have disassociated from ELI Realty and the JV Franchisees.

179.   Upon information and belief, management of ELI Realty (including Michael Mahon and Obie Walli) is liquidating the property of ELI Realty and the JV Franchisees.

180.   Upon information and belief, all or nearly all of the remaining property of ELI Realty and the JV Franchisees is subject to perfected security interests of Corcoran.

181.   Corcoran has not consented to the liquidation of its collateral by current management of ELI Realty, including Michael Mahon and Obie Walli. In fact, Corcoran has objected, and continues to object, to the liquidation of its collateral by current management of ELI Realty, including Michael Mahon and Obie Walli.

182.   Corcoran contends that its collateral is in danger of being lost, concealed, comingled, transferred (again), diminished in value, or squandered by current management of ELI Realty.

183.   Upon information and belief, all or some of the JV Franchisees have claims against ELI Realty, Michael Mahon, Obie Walli and/or other persons/entities including those of the type expressed in the SoCal Member Litigation. As ELI Realty has exercised decision making for the JV Franchisees, Corcoran contends that current management of ELI Realty should not oversee investigation and potential

prosecution of claims of JV Franchisees against ELI Realty and parties related to ELI Realty.

184.   Upon information and belief, ELI Realty has claims against Michael Mahon, Pamela Mahon, MRM Investments, Matek LLC, Obie Walli, Aim High Capital, and other persons/entities considered to be "insiders" of ELI Realty. Corcoran contends that current management should not be charged with investigation and/or prosecution of claims against themselves or related parties.

185.   Upon information and belief, ELI Realty is insolvent as it is not paying its obligations as they come due and the value of its assets is far less than the amount of its liabilities.  Moreover, in the Joint Rule 26(f) Report, ELI Realty and the JV Franchisees concede that they are in "distressed financial condition" and that "[t]here is a substantial possibility that certain of the ELI Parties lack the economic resources to pursue their claims or to defend Corcoran Group's counterclaims." ECF No. 88 at p. 18, lines 11-14.

186.   For this and other reasons, Corcoran requests appointment of an independent fiduciary in the form of a receiver for ELI Realty.

DocuSign Envelope ID: 50S5C7D5-C225-4E9D-A9EA-2C700B7E6D0A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I hereby declare that the foregoing statements made by me are true and that this Declaration is executed under penalty of perjury. I am aware that if any of the foregoing statements made by me are willfully false, that I am subject to punishment.

Dated:          January 19, 2023                    By: _Shail Sapra_____

Shail Sapra
Vice President of Finance,
Anywhere Brands LLC

314488363.2

CIVIL ACTION NO. 8:22-CV-01195