Marc C. Forsythe - State Bar No. 153854
**GOE FORSYTHE & HODGES LLP**
17701 Cowan, Suite 210, Building D
Irvine, CA 92614
mforsythe@goeforlaw.com
Telephone: (949) 798-2460
Facsimile: (949) 955-9437

Steven M. Hanle, SBN 168876
shanle@stradlinglaw.com
**STRADLING YOCCA CARLSON & RAUTH**
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660-6422
Telephone: (949) 725-4000
Facsimile: (949) 725-4100

Attorneys for ELI Realty Investments, LLC, Michael Mahon and Pamela Mahon

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELI Realty Investments, LLC, a Nevada limited liability company; Exclusive Lifestyles SoCal, LLC, a California limited liability company; Exclusive Lifestyles San Francisco, Inc., a California corporation; Exclusive Lifestyles Ohio, LLC, an Ohio limited liability company; and Exclusive Lifestyles Las Vegas, LLC, a Nevada limited Liability company,<br><br>Plaintiff,<br><br>vs.<br><br>Corcoran Group LLC, a Delaware limited liability company; DOES 1 through 10, | Case No. 8:22-cv-01195-JWH (ADSx)<br><br>Assigned to: Honorable John W. Holcomb<br><br>**LIMITED OPPOSITION OF DEFENDANT ELI REATLY INVESTMENTS, LLC TO ORDER GRANTING TEMPORARY RECEIVER, MOTION FOR PERMANENT RECEIVER, AND AUTHORITY OF RECEIVER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SAME** |

| | | |
|---|---|---|
| 1 | Defendants. | Date: February 24, 2023 |
| 2 | | Time: 1:30 p.m. |
| 3 | Corcoran Group LLC | Courtroom: 9D, 9th Floor |
| 4 | Counter claimant and | |
| 5 | Third-Party Plaintiff, | |
| | vs. | |
| 6 | | |
| 7 | ELI Realty Investments, LLC; Michael Mahon; Pamela Mahon; MRM Investments, LLC; AIM High Capital Partners, LLC; Libertas Funding LLC; Matek LLC; Exclusive Lifestyles SoCal, LLC; Exclusive Lifestyles San Francisco, Inc.; Exclusive Lifestyles Ohio, LLC; Exclusive Lifestyles Las Vegas, LLC; Exclusive Lifestyles Tahoe, LLC; and DOES 1 – 10 | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | Counterclaim and Third-Party Defendants. | |
| 15 | | |
| 16 | | |
| 17 | Libertas Funding LLC; Michael Mahon Pamela Mahon, and MRM Investments, LLC, | |
| 18 | | |
| 19 | Third Party Counterclaimants, | |
| 20 | | |
| 21 | vs. | |
| 22 | | |
| 23 | Corcoran Group, LLC, | |
| 24 | Third Party Counterclaim Defendant. | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | -2- | |

LIMITED OPPOSITION OF DEFENDANT ELI REATLY INVESTMENTS, LLC TO ORDER GRANTING TEMPORARY RECEIVER, MOTION FOR PERMANENT RECEIVER, AND AUTHORITY OF RECEIVER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SAME

ELI Realty Investments, LLC ("ELI") hereby submits the following limited opposition ("Limited Opposition") to the Corcoran Group, LLC's ("Corcoran") Motion for Appointment of a Receivership for ELI. The Limited Opposition addresses the following:

1. ELI disputing Corcoran's demand to grant to the Receiver (Jeremy Faith) the right to file a bankruptcy petition for ELI;

2. Addressing an approach to preserve ELI'S pre-receivership attorney-client privilege when the Receiver is provided to access to ELI's electronically stored information ("ESI") that includes privileged communications; and

3. Modifying all current and future requirements of ELI to incur any expenses relating to the Receivership as ELI has no funds and Defendant Michael Mahon, personally, had to contribute approximately $3,600 to pay for service of the notices required by the Order Appointing the Temporary Receivership Order.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   Introductory Statement re Stipulating to a Temporary Receiver.**

Although ELI is fully cooperating with Corcoran to allow Corcoran to exercise its rights to its collateral and stipulate to the Temporary Receiver, ELI and the other defendants are reserving all rights in relation to the non-contract claims in Corcoran's Amended Answer, Affirmative Defenses and Counterclaims (Docket No. 12)(the "Counterclaims") and to the claims asserted by ELI in its Complaint (Docket No. 1) (the "Complaint").

Although the issues of the Receiver's alleged authority to file a bankruptcy petition for ELI was not addressed or argued in its Memorandum of Points and

-3-

Authorities in Support of the Motion to Appoint a Receiver (Docket No. 106-1), the bankruptcy issue arose when negotiating the Stipulation to a Temporary Receiver. The attorney-client communication issue arose when ELI was discussing with the Receiver a process for turning over ELI's ESI.

Lastly, ELI does not have any funds to further operate or otherwise and cannot provide any further funds in relation to the Receivership. To date, Defendant Michael Mahon has been voluntarily loaning money to ELI to assist Corcoran's efforts to obtain control of its collateral.

## II. As Corcoran's Rights to the "Corcoran Collateral" Are Based On The Contracts Between the Parties and Not Statutory Rights, Corcoran Did Not Contract For The Right to File a Bankruptcy Proceeding.

### A. Corcoran's Security Agreement and Rights to the "Corcoran Collateral".

Corcoran and ELI negotiated and contracted for Corcoran's rights under the franchise agreements and other agreements to be secured by certain of ELI's tangible and intangible assets. The right to file a bankruptcy petition and to acquire ELI's attorney-client privilege is not identified in any of these written documents. As noted in paragraphs 54 through 59 of the Counterclaims, Corcoran identifies its security agreement and its collateral as follows:

> "54. To secure payment and performance of ELI Realty under the ELI Realty Franchise Agreement, Notes, and all other agreements of ELI Realty to Corcoran, ELI Realty granted security interests to Corcoran in certain property pursuant to that certain Security Agreement dated January 17, 2020 (the "ELI Realty Security Agreement").

55. Pursuant to the Security Agreement, ELI Realty granted Corcoran a security interest in the following property then owned or thereafter acquired by ELI Realty (the "Corcoran Collateral"):

*For good and valuable consideration, the receipt and sufficiency of which are acknowledged, Debtor grants to Secured Party a security interest in all accounts receivable and payment intangibles; cash proceeds; contract rights; leases; furniture; furnishings; equipment; fixtures; inventory; commissions; real estate listings, listing agreements and related rights which are located at, utilized by or related to the real estate brokerage business conducted by Debtor and including the proceeds therefrom and any and all amendments or replacements thereto and any rebate/award program (or similar incentive programs) to which Debtor and/or any Co-Debtors may be entitled pursuant to any franchise agreement entered into with Secured Party, together with all such rights and property hereafter acquired by Debtor and Co- Debtors; and all general intangibles (collectively, the "Collateral") as well as all parts, replacements, substitutions, profits, products and cash and non-cash proceeds of the foregoing Collateral (including insurance and condemnation proceeds payable by reason of condemnation of or loss or damage thereto). [Add following only for Security Agreements filed in New Jersey - The Collateral described herein falls within the scope of the Uniform Commercial Code enacted in New Jersey, including N.J.S.A. 12A:9-102 and N.J.S.A. 12A:9-109.] The foregoing Collateral is granted to Secured Party as security for (i) the prompt payment of any promissory notes executed by Debtor in favor of Secured Party, and any renewals, compromises, extensions, modifications, accelerations or other changes in the time for performance or other terms*

(the "Notes"), and (ii) performance under any franchise agreements between Debtor and Secured Party, as the same may be amended (the "Franchise Agreements"), and (iii) all other agreements between Debtor and Secured Party.

56. The security interests granted per the ELI Realty Security Agreement were perfected by the filing of a UCC-1 Financing Statement with the Secretary of State of the State of Nevada on January 31, 2020, under number 2020069173-2.

57. At Section 1 of the ELI Realty Security Agreement, ELI Realty$_2$ agreed as follows:

(a) Debtor will properly maintain and care for the Collateral and will not remove the Collateral from the Offices (as defined in the Franchise Agreements);

(b) Debtor will notify Secured Party in writing prior to any change in Debtor's place of business;

(c) Debtor has not executed and will not execute as Debtor any security agreement or financing statement covering any of the Collateral except with Secured Party, nor will Debtor pledge or encumber the Collateral, or allow any lien to be placed against the Collateral, whether voluntary or involuntary;

(d) Debtor represents and warrants to Secured Party that the Collateral shall not become collateral for any other obligations previously incurred, nor collateral under any other security agreement(s) previously executed by Debtor; and

(e) Debtor will not sell, contract for sale or otherwise dispose of any of the Collateral except in the ordinary course of business.

58. ELI Realty's breach of any term, provision, warranty or representation in the ELI Realty Security Agreement, the ELI Realty Franchise Agreement, or any other agreement between the parties is an "Event of Default" of the ELI Realty Security Agreement.

59. **Upon an Event of Default of the ELI Realty Security Agreement**, among other things, Corcoran may (i) declare all obligations secured by the ELI Realty Security Agreement immediately due and payable, and (ii) **require ELI Realty to assemble the Corcoran Collateral and make it available to Corcoran**." (Emphasis added).

See page 21, ¶54 to page 24, ¶ 59 of the Counterclaims (Docket No. 1).

Although ELI disputes that it is in default to Corcoran, for various reasons, including but limited to the economics of the current real estate market, ELI agrees and is fully cooperating with its contractual requirement to "assemble" the Corcoran Collateral, which Corcoran has chosen to do through the appointment of the Receiver. However, there is no provision in any of the contracts between ELI and Corcoran that secures the obligations between the parties by transferring to Corcoran upon an event of default the inherent rights of a Limited Liability Company to decide if a bankruptcy petition will be filed, which is within the scope of the fiduciary duties of certain of ELI's members.

**B.    Corcoran Does Not Have the Contractual Right to File a Bankruptcy Petition on Behalf of ELI.**

First, ELI is not arguing that Corcoran, as a creditor, cannot commence an involuntary bankruptcy proceeding pursuant to 11 U.S.C. Section 303, et al. Although not addressed or argued in its Memorandum of Points and Authorities in Support of the Motion to Appoint a Receiver (Docket No. 106-1), in negotiating the terms of the Stipulation to Appoint a Temporary Receiver, Corcoran argued the

-7-
LIMITED OPPOSITION OF DEFENDANT ELI REATLY INVESTMENTS, LLC TO ORDER GRANTING TEMPORARY RECEIVER, MOTION FOR PERMANENT RECEIVER, AND AUTHORITY OF RECEIVER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SAME

following cases in support of their claim that the Receiver should be empowered to file a bankruptcy petition: on *Commodity Futures Trading Comm'n v. FITC, Inc.*, 52 B.R. 935, 937 (N.D. Cal. 1985); *Chitex Commc'n, Inc. v. Kramer*, 168 B.R. 587 (S.D. Tex. 1994); *In re Monterey Equities-Hillside,* 73 B.R. 749 (Bankr. N.D. Cal. 1987); and *In re StatePark Bldg. Grp., Ltd.*, 316 B.R. 466, 469 (Bankr. N.D. Tex. 2004).

In *Commodity Futures Trading Comm'n v. FITC, Inc.*, 52 B.R. 935, 937 (N.D. Cal. 1985), the receiver was appointed based on the Commodity Futures Trading Commission's ("CFTC") motion to appoint a receiver for the benefit of all the Defendant's investors. Although not mentioned in this case, the basis for the appointment of a receiver by the CFTC is Commodity Exchange Act ("CEA"), specifically 7 U.S.C. § 13a-1(a). See *Klein v. Cornelius*, No. 2:11CV1159DAK, 2012 U.S. Dist. LEXIS 84121, at *6-7 (D. Utah 2012)[1]. In this case, Corcoran is obtaining a receiver pursuant to its individual contractual rights with ELI and not on behalf of a governmental entity with specific statutory authority. The Receiver here is acting on Corcoran's behalf and not the entire body of ELI's members and creditors. Therefore, *Commodity Futures Trading Comm'n v. FITC, Inc.* does not support granting to the Receiver the right to file a bankruptcy petition.

---

[1] *Klein v. Cornelius*, at 6-7 ("Moreover, Defendants' position that Judge Jenkins acted improperly in appointing the Receiver is a misreading of the Commodity Exchange Act ("CEA"). **The CEA allows for the appointment of a receiver, and this court has subject matter jurisdiction over this case because it is ancillary to the CFTC Action. 7 U.S.C. § 13a-1(a)** provides that no ex parte restraining order can be issued, "other than . . . an order appointing a temporary receiver to administer such restraining order and to perform such other duties as the court may consider appropriate." The appointment of a receiver by ex parte application is specifically allowed by the statute and, as such, is common occurrence in CFTC injunction actions." (Emphasis added).

In *Chitex Commc'n, Inc. v. Kramer*, 168 B.R. 587 (S.D. Tex. 1994), a Fifth Circuit case, the Court specifically states that "authority to file a bankruptcy petition is found in state law". *Id*. at 589. Corcoran has not cited to any California law, nor is ELI aware of any such authority, that grants to a receiver the right to file a bankruptcy petition where the receiver is appointed pursuant to the contractual rights between two parties. Furthermore, in *Chitex*, the right to file bankruptcy had already been granted to the receiver as part of prior divorce decree. *Id*. at 590 ("Thus, under the divorce decree, the receiver has full rights to control the company"). Corcoran has no Court order or decree that allows the Receiver to be granted the right to file a bankruptcy petition.

In *In re Monterey Equities-Hillside*, 73 B.R. 749 (Bankr. N.D. Cal. 1987), the Court addressed a receiver appointed in relation to an action by the limited partners of the entity to preserve the entity's only asset, not an action by a secured party exercising its individual rights to its collateral. *Id*. at 750-1. More importantly, the Court noted that a receiver may commence a bankruptcy petition, but if not consented to by the general partner, it must be commenced as an involuntary bankruptcy petition pursuant to 11 U.S.C. Section 303. *Id*. at 752 (Since the state court authorized the receiver to manage the partnership, he also has the authority to commence a bankruptcy case. Because the general partner does not consent, however, he must commence the case as an involuntary case). Putting aside the fact that in *Monterey* the receiver was appointed to manage the partnership, versus the Receiver's appointment in this case is to preserve the Corcoran Collateral and enforce Corcoran security interests, ELI is not seeking to have this Court restrict whatever rights Corcoran or the Receiver have to commence an involuntary bankruptcy petition.

Lastly, Corcoran cites to *In re Statepark Bldg. Grp., Ltd.*, 316 B.R. 466, 470 (Bankr. N.D. Tex. 2004). In *Statepark*, the Court addressed a situation where the entire partnership was placed into receivership for judicial dissolution pursuant to Texas law. *Id*. 470-471. The Court noted that "under Texas law", the appointment of a "general" receiver displaces and supersedes the entire management of the entity. *Id*. ("Because the Debtors are entities created under state law, the Court must look to state law to determine the authority issue"). In this case, the Receiver is appointed in relation to Corcoran's individual rights to its collateral and not the dissolution of ELI. Corcoran has not cited any California case law or statutes that mirror the Texas state law cases cited.

In summary, Corcoran and the Receiver have every right to commence an involuntary bankruptcy petition. There is no provision in any of the contracts between the parties that granted to Corcoran the right to file a bankruptcy petition or to seek to judicially dissolve ELI upon an event of default. Furthermore, the Receivership is based on the "Receivership Assets", which are the "Corcoran Collateral". Therefore, the Receiver should not be authorized to commence a voluntary bankruptcy petition without the proper consent of the ELI members pursuant to its operating agreement.

**C.   The Appointment of the Receiver Does Not Waive ELI's Attorney-Client Privilege.**

The issue of the waiver of the attorney-client privilege did not arise prior to execution of the Stipulation to Appoint the Receiver. Rather, it became apparent during cooperation with the Receiver that the wholesale production of ELI's ESI to the Receiver would implicate the attorney-client privilege as the ESI includes privileged emails. The Receiver and his counsel cited the following cases and took position that the Receiver now holds and controls the privilege; *SEC v. Ryan*, 747

F. Supp. 2d 355, 368 (N.D.N.Y. 2010); *CFTC v. Standard Forex, Inc.*, 882 F. Supp. 40, 44 (E.D.N.Y. 1995).

As argued above in relation to the bankruptcy issues, both of these cases address the Court appointing a receiver pursuant to a request by a governmental entity, on behalf of the entire entity and based statutory authority. In *SEC v. Ryan*, the Court noted that the receive succeeded all current management of the entity and acts with the full force of the law as its sole representative. *SEC v. Ryan*, 747 F. Supp. 2d at 362. The Receivership Estate and Receivership Assets are defined in paragraphs 2 and 3 (pages 3-4) of the Stipulated Order to Appointment of Temporary Receivership (Docket No. 113). The Receivership Estate and Receivership Assets mirror the Corcoran Collateral identified in the Corcoran Counterclaims (as set forth hereinabove). Corcoran did not bargain for complete control over the management of ELI upon an event of default pursuant to its contracts with ELI and thus cannot obtain these rights through the appointment of a Receiver to "assemble its collateral". Therefore, as the Receiver has not taken over complete control over the management of ELI, it is not like a statutorily appointed receiver under the rules of the SEC or the CFTC and is not like a bankruptcy trustee.

ELI and the Receiver are attempting to negotiate an agreement to preserve the privilege and resolve any disputes, and will keep the Court apprised of any resolution.

/ / /
/ / /
/ / /
/ / /

## III. CONCLUSION

Based on the arguments presented hereinabove, ELI respectfully requests that the Receiver not be granted the authority to file a voluntary bankruptcy petition on behalf of ELI and that all future obligations to be incurred in relation to administrative costs of the Receivership be paid/incurred by the Receivership Estate.

Dated: February 10, 2023

Respectively Submitted,

**GOE FORSYTHE & HODGES LLP**

By: */s/ Marc C. Forsythe*
Marc C. Forsythe, Attorneys for ELI Realty Investments, LLC, Michael Mahon and Pamela Mahon

Dated: February 10, 2023

**STRADLING YOCCA CARLSON & RAUTH**

By: */s/ Steve M. Hanle*
Steve M. Hanle, Attorneys for ELI Realty Investments, LLC, Michael Mahon and Pamela Mahon

-12-
LIMITED OPPOSITION OF DEFENDANT ELI REATLY INVESTMENTS, LLC TO ORDER GRANTING TEMPORARY RECEIVER, MOTION FOR PERMANENT RECEIVER, AND AUTHORITY OF RECEIVER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SAME

## LOCAL RULE 5-4.3.4 ATTESTATION

I attest that the above listed counsel concurs in this filing's content and has authorized the filing, including the use of digital signatures for counsel.

*/s/ Marc C. Forsythe*
Marc C. Forsythe

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 17701 Cowan, Suite 210, Bldg. D, Irvine, CA 92614

A true and correct copy of the foregoing document entitled (*specify*): **LIMITED OPPOSITION OF DEFENDANT ELI REATLY INVESTMENTS, LLC TO ORDER GRANTING TEMPORARY RECEIVER, MOTION FOR PERMANENT RECEIVER, AND AUTHORITY OF RECEIVER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SAME** will be served or was served **(a)** on the judge in chambers in the form and manner required by Local Rules in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 10, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) February 10, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) February 10, 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

- The Honorable John W. Holcomb, USDC, 411 West Fourth Street, Ctrm 9D, Santa Ana, CA 92701

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 10, 2023 | Susan C. Stein | /s/Susan C. Stein |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

-14-

LIMITED OPPOSITION OF DEFENDANT ELI REATLY INVESTMENTS, LLC TO ORDER GRANTING TEMPORARY RECEIVER, MOTION FOR PERMANENT RECEIVER, AND AUTHORITY OF RECEIVER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SAME

**Mailing Information for a Case 8:22-cv-01195-JWH-ADS ELI Realty Investments, LLC et al v. Corcoran Group, LLC et al**

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jason H Anderson**
  janderson@stradlinglaw.com,kkirkpatrick@stradlinglaw.com,smjohnson@stradlinglaw.com,kmilanowski@stradlinglaw.com

- **Geoffrey M. Davis**
  gdavis@gdavislegal.com

- **Daniel M. Eliades**
  Daniel.Eliades@klgates.com

- **Marc C Forsythe**
  mforsythe@goeforlaw.com,kmurphy@goeforlaw.com

- **Kevin Barnett Frankel**
  kfrankel@mcguirewoods.com,dmlamb@mcguirewoods.com,JTabisaura@mcguirewoods.com

- **Tanya Greene**
  tgreene@mcguirewoods.com,kghalambor@mcguirewoods.com,USDocket@mcguirewoods.com

- **Steven M. Hanle**
  shanle@stradlinglaw.com,jcrummett@stradlinglaw.com

- **Jonathan Peter Hersey**
  jonathan.hersey@klgates.com,connie-marie.pruitt@klgates.com

- **Damon M. Pitt**
  damon.pitt@klgates.com,Shelley.Cossitt@klgates.com,Ashley.Russell@klgates.com

- **Ahmad Said Takouche**
  atakouche@stradlinglaw.com,kmilanowski@sycr.com

LIMITED OPPOSITION OF DEFENDANT ELI REATLY INVESTMENTS, LLC TO ORDER GRANTING TEMPORARY RECEIVER, MOTION FOR PERMANENT RECEIVER, AND AUTHORITY OF RECEIVER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SAME

- **William L. Waldman**
  William.waldman@klgates.com

- **Jenny Yi**
  jyi@mcguirewoods.com,izabala@mcguirewoods.com,DMLamb@mcguirewoods.com,USDocket@mcguirewoods.com