Jonathan P. Hersey (SBN 189240)
Damon M. Pitt (SBN 291473)
K&L GATES LLP
1 Park Plaza
Twelfth Floor
Irvine, CA 92614
Telephone: 949.253.0900
Facsimile: 949.253.0902
Email: Damon.Pitt@klgates.com

Daniel M. Eliades (Admitted *Pro Hac Vice*)
K&L GATES LLP
One Newark Center, 10th Floor
Newark, NJ 07102
Telephone: 973.848.4018
Facsimile: 973.848.4001
Email: Daniel.Eliades@klgates.com

*Attorneys for Defendant, Counterclaimant, and Third-Party Plaintiff, Corcoran Group LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELI Realty Investments, LLC, a Nevada limited liability company; Exclusive Lifestyles SoCal, LLC, a California limited liability company; Exclusive Lifestyles San Francisco, Inc., a California corporation; Exclusive Lifestyles Ohio, LLC, an Ohio limited liability company; and Exclusive Lifestyles Las Vegas, LLC, a Nevada limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> Corcoran Group, LLC, a Delaware limited liability company; DOES 1 through 10, <br><br> Defendants. <br><br> Corcoran Group LLC, <br><br> Counterclaimant and Third-Party Plaintiff, | Case No. 8:22-CV-01195 <br><br> **CORCORAN GROUP LLC'S NOTICE OF MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |

1    vs.

2    ELI Realty Investments, LLC; Michael Mahon
     and Pamela Mahon; MRM Investments, LLC;
3    AIM High Capital Partners, LLC; Libertas
     Funding LLC; Matek LLC; Exclusive Lifestyles
4    SoCal, LLC; Exclusive Lifestyles San Francisco,
     Inc.; Exclusive Lifestyles Ohio, LLC; Exclusive
5    Lifestyles Las Vegas, LLC; Exclusive Lifestyles
     Tahoe, LLC; and DOES 1 through 10,
6
7                            Counterclaim Defendants
                             and Third-Party
8                            Defendants.

9

10       **TO THE HONORABLE JUDGE W. HOLCOMB, ALL PARTIES, ATTORNEYS OF**

11   **RECORD, AND ALL OTHER INTERESTED PARTIES:**

12       **PLEASE TAKE NOTICE** that on April 19, 2024 at 9:00 a.m., in Courtroom 9D located at

13   411 W. 4th Street, Santa Ana, California, 92401, Corcoran Group LLC will move before this Court for

14   (i) dismissal of the claims of Exclusive Lifestyles SoCal, LLC, Exclusive Lifestyles San Francisco, Inc.,

15   Exclusive Lifestyles Ohio, LLC, and Exclusive Lifestyles Las Vegas, LLC, against Corcoran pursuant to

16   Fed. R. Civ. P. 41(b) and Cal. Local Civ. Rule 41-1; and (ii) partial summary judgment against

17   Exclusive Lifestyles SoCal, LLC, Exclusive Lifestyles San Francisco, Inc., Exclusive Lifestyles Ohio,

18   LLC, Exclusive Lifestyles Las Vegas, LLC and Exclusive Lifestyles Tahoe, LLC pursuant to Rule 56

19   of the Federal Rules of Civil Procedure and Local Rule 56-1.

20       The motion is supported by the attached Motion and Memorandum of Points and Authorities,

21   the Separate Statement of Uncontroverted Facts and Conclusions of Law, the Declaration of Shail

22   Sapra (ECF No. 106-3), the Declaration of Jacqueline Bertet, and the Declaration of Daniel M. Eliades.

23       Any written opposition to the motion shall conform to the requirements of Rule 56 of the

24   Federal Rules of Civil Procedure and Local Rule 56. Failure to file a timely written opposition may

25   be deemed by the Court to be a waiver of the right to oppose the motion.

26

27

28

1

Respectfully submitted,

2

Dated:  March 13, 2024

Jonathan P. Hersey (SBN 189240)

3

Damon M. Pitt (SBN 291473)
K&L GATES LLP

4

1 Park Plaza - Twelfth Floor
Irvine, CA 92614

5

Telephone: 949.253.0900
Facsimile: 949.253.0902

6

Email: damon.pitt@klgates.com

7

Daniel M. Eliades, Esq. (Admitted *Pro Hac Vice*)

8

K&L Gates LLP
One Newark Center, 10th Floor

9

Newark, NJ 07102
Telephone: 973.848.4018

10

Facsimile: 973.848.4001
Email: Daniel.Eliades@klgates.com

11

12

By:    /s/ Daniel M. Eliades

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

MOTION...........................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ................................1

I.      PRELIMINARY STATEMENT ................................................1

II.     STATEMENT OF FACTS ..........................................................4

III.    ARGUMENT ..............................................................................4

POINT ONE THE JOINT VENTURE FRANCHISEES' CLAIMS SHOULD BE
        DISMISSED FOR WANT OF PROSECUTION ...........................4

      A.      The JV Franchisee Plaintiffs Have Failed to Prosecute Their Claims...............5

           1.      Interest in Expeditious Resolution of Litigation....................................6

           2.      Docket Management .................................................................6

           3.      Risk of Prejudice to Defendant ...............................................6

           4.      Availability of Less Drastic Alternatives..................................7

           5.      Public Policy Favoring Disposition on the Merits....................7

POINT TWO CORCORAN SHOULD BE GRANTED SUMMARY JUDGMENT ON
        THE BREACH OF CONTRACT COUNTS OF ITS  COMPLAINT AGAINST
        THE JV FRANCHISEES .................................................................7

      A.      The Standards for Summary Judgment.........................................7

      B.      Per the JV Franchise Agreements, New Jersey Law Should Be Applied..........9

      C.      Corcoran is Entitled to Summary Judgment for Breach of the JV Franchise
                Agreements ..................................................................................9

           1.      Recurring Fees .........................................................................11

           2.      Liquidated Damages ................................................................11

           3.      Attorney Fees...........................................................................13

           4.      Pre-judgment Interest..............................................................14

      D.      Corcoran is Entitled to Summary Judgment for Breach of the Security
                Agreements. ................................................................................14

IV.     CONCLUSION............................................................................16

i

**CORCORAN GROUP LLC'S NOTICE OF MOTION TO DISMISS AND FOR PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**
8:22-CV-01195

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

3

**Cases**

4

*Alcoa Edgewater No. 1 Federal Credit Union v. Carroll,*
5
    44 N.J. 442 (1965) ..............................................................................................13

6

*Alexander v. Pacific Maritime Ass'n,*
    434 F.2d 281 (9th Cir. 1970) ..............................................................................6
7

8

*Am. Cyanamid v. Fermenta Animal Health Co.,*
    54 F.3d 177 (3d Cir. 1995)................................................................................11

9

*Anderson v. Air West, Inc.,*
10
    542 F.2d 522 (9th Cir. 1976) ..............................................................................5

11

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 106 S.Ct. 2505 (1986) ................................................................8
12

13

*Applera Corp. v. MP Biomedicals, LLC,*
    173 Cal. App. 4th 769, 93 Cal. Rptr. 3d 178 (2009)..........................................9

14

*Aydin Corp. v. Loral Corp.,*
15
    718 F.2d 897 (9th Cir. 1983) ..............................................................................8

16

*Busik v. Levine,*
    63 N.J. 351 (1973) ............................................................................................14
17

*Celotex Corp. v. Catrett,*
18
    477 U.S. 317, 106 S. Ct. 2048 (1986)............................................................7, 8

19

*Cent. Steel Drum Co. v. Gold Cooperage, Inc.,*
20
    200 N.J. Super. 251,265 (App. Div.), *overruled on other grounds, Kutzin v. Pirnie,* 124 N.J. 500 (1991) ..............................................................................12

21

*Cohen v. Fair Lawn Diaries, Inc.,*
22
    86 N.J. Super. 206 (App. Div. 1965), *aff'd* 44 N.J. 450 ..........................................13

23

*Coldwell Banker Real Estate LLC v. Bellmarc Group LLC*
    (September 9, 2021, D.N.J) ..............................................................................12
24

25

*Cooper Distrib. Co. v. Amana Refrigeration, Inc.,*
    63 F.3d 262 (3d Cir. 1995)................................................................................14

26

*D.HM Indus., Inc. v. Cent. Port Warehouses, Inc.,*
27
    127 N.J. Super. 499 (App. Div. 1973), *aff'd,* 64 N.J (1974)....................................12

28

*Friedman v. Tappan Dev. Corp.*,
   22 N.J. 523 (1956) ........................................................................................10

*Hatfield v. Halifax PLC*,
   564 F.3d 1177 (9th Cir. 2009) ........................................................................9

*Hernandez v. City of El Monte*,
   138 F.3d 393 (9th Cir. 1998) ..........................................................................6

*Hosiery Corp. of Am.* v. *Int'l Data Processing, Inc.*,
   No. 89-CV-115, 1991 WL 30015 (D.N.J. Feb. 28, 1991) .......................................12

*Kearny PBA Local No. 21 v. Town of Kearny*,
   81 N.J. 208 (1979) ........................................................................................10

*Kronisch v. Howard Sav. Inst.*,
   154 N.J. Super. 576 (Chancery 1977).................................................................10

*Lautek Corp. v. Image Business Sys.*,
   276 N.J. Super. 531 (App. Div. I 1994)...............................................................14

*Levinson v. Weintraub*,
   215 N.J. Super. 273 (App. Div. 1987) .................................................................9

*Ligron, Inc. v. Medlanter, Inc.*,
   86 N.J. 583, 32 U.C.C. Rep. Serv. 166 (1981) .....................................................9

*Link v. Wabash R.R. Co.*,
   370 U.S. 626 (1962).......................................................................................5

*Marini v. Ireland*,
   56 N.J. 130 (1970) ........................................................................................10

*Mayfair Fabrics v. Henley*,
   48 N.J. 483 (1967) ........................................................................................10

*Mid-Jersey Bank* v. *Fidelity-Mortgage Investors*,
   518 F.2d 640 (3d Cir. 1975).............................................................................14

*Moore v. Telfon Communications Corp.*,
   589 F.2d 959 (9th Cir. 1978) ..........................................................................6

*Morris v. Morgan Stanley & Co.*,
   942 F.2d 648 (9th Cir. 1991) ..........................................................................5

*Naporano Assocs., L.P. v. B & P Builders*,
   309 N.J. Super. 166 (App. Div. 1998) ...............................................................12

*Nedlloyd Lines B.V. v. Super. Ct. of San Mateo*,
   3 Cal. 4th 459 (1992).....................................................................................9

**CORCORAN GROUP LLC'S NOTICE OF MOTION TO DISMISS AND FOR PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**
8:22-CV-01195

*Nevets C.M Inc.* v. *Nissho Iwai Am. Corp.*,
   726 F. Supp. 525 (D.N.J. 1989), *aff'd,* 899 F.2d 1218 (3d Cir. 1990) ...................................10

*Newark Publishers' Ass'n v. Newark Typographical Union No. 103*,
   22 N.J. 419 (1956) ........................................................................................................10

*Onderdonk v. Presbyterian Homes of N.J., Inc.*,
   171 N.J. Super. 529 (App. Div. 1979) .........................................................................10

*Pagtalunan v. Galaza*,
   291 F.3d 639 (9th Cir. 2002) ...........................................................................................6

*Papalexiou v. Tower West Condo.*,
   167 N.J. Super. 516 (Ch. Div. 1979) .............................................................................13

*In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*,
   460 F.3d 1217 (9th Cir. 2006) .........................................................................................7

*Ram Const. Co.* v. *Am. States Ins. Co.*,
   749 F.2d 1049 (3d Cir. 1984)........................................................................................10

*Schultz v. Topakyan*,
   193 N.J. Super. 550 (App. Div. 1984) .........................................................................10

*Stevens v. Greyhound Lines, Inc.*,
   710 F.2d 1224 (7th Cir. 1983) .........................................................................................5

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
   809 F.2d 626 (9th Cir. 1987) ...........................................................................................8

*The Malaker Corp. v. First Jersey Bank*,
   163 N.J. Super. 463 (App. Div. 1978), *cert. denied* 79 N.J. 488 (1979) ..................9

*Utica Mut. Ins. Co.* v. *DiDonato*,
   187 N.J. Super. 30 (App. Div. 1982) .........................................................................14

*Von Poppenheim v. Portland Boxing & Wrestling Com.*,
   442 F.2d 1047 (9th Cir. 1971) .........................................................................................5

*W.B.* v. *Matula*,
   67 F.3d 484 (3d Cir. 1995)............................................................................................10

*Wasserman's, Inc. v. Middletown*,
   137 N.J. 238 (1994) .......................................................................................................12

*Yourish v. California Amplifier*,
   191 F.3d 983 (9th Cir. 1999) ...........................................................................................6

**Statutes**

Cal. Bus. and Prof. Code § 17200 ..........................................................................7

Cal. Com. Code § 9203 (A) ...................................................................................15

Lanham Act ............................................................................................................2

Nev. Rev. Stat. Ann. § 104.9203 ..........................................................................15

Ohio Rev. Code Ann. § 1309.203 .........................................................................15

**Other Authorities**

C.D. Cal. Local Civ. Rule 41-1 .....................................................................1, 3, 5

12 Cal. Jur. 3d Conflict of laws § 67 .....................................................................9

Fed. R. Civ. P. § 41 ...................................................................................1, 3, 4, 5

Fed. R. Civ. P. § 56 ....................................................................................1, 7, 8

Local Rule 56-1 (i) .................................................................................................1

v

**CORCORAN GROUP LLC'S NOTICE OF MOTION TO DISMISS AND FOR PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**
8:22-CV-01195

## MOTION[1]

Defendant, Counterclaimant, and Third Party Plaintiff, Corcoran Group LLC ("Corcoran") hereby moves this Court for entry of an order, pursuant to Fed. R. Civ. P. 41(b), C.D. Cal. Local Civ. Rule 41-1, Fed. R. Civ. P. 56, and Local Rule 56-1 (i) dismissing, with prejudice, all of the claims of the Exclusive Lifestyles SoCal, LLC ("Exclusive SoCal"), Exclusive Lifestyles San Francisco, Inc. ("Exclusive San Francisco"), Exclusive Lifestyles Ohio, LLC ("Exclusive Ohio") Exclusive Lifestyles Las Vegas, LLC ("Exclusive Las Vegas"), and Exclusive Lifestyles Tahoe, LLC ("Exclusive Tahoe" and collectively, the "JV Franchisees") against Corcoran in this litigation, and (ii) granting Corcoran summary judgment on certain claims of Corcoran against the JV Franchisees in this litigation.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   PRELIMINARY STATEMENT

ELI Realty Investments, LLC ("ELI Realty") borrowed more than $17 million from Corcoran as reflected in various notes conveyed by ELI Realty. (*See* R.56 Statement ¶ 45). The proceeds of the loans were to be used by ELI Realty to purchase real estate brokerage businesses. (*Id*. at ¶ 46). ELI Realty and the sellers of the acquired brokerages formed joint venture entities that entered into franchise agreements with Corcoran. (*Id*. at ¶ 50). ELI Realty and each of the JV Franchisees are parties to separate franchise agreements and security agreements with Corcoran. (*Id*.).

In May of 2022, management of ELI Realty advised Corcoran that ELI Realty and the JV Franchisees had a cash flow deficit of at least $7 million. (*Id*. at ¶ 156). At that time, the outstanding franchise fees due to Corcoran from ELI Realty and the JV Franchisees exceeded $1 million and plaintiffs had failed to pay their real estate agents significant commissions they had earned. (*Id*. at ¶¶ 152-155).

On May 22 and 26, 2022, Corcoran noticed ELI Realty and the JV Franchisees (other than Exclusive Tahoe) of various defaults under the notes, franchise agreements, and security agreements with Corcoran. (*Id*.). The franchisees did not cure any of the noticed defaults. (*Id*.). Instead, ELI Realty and the JV Franchisees (other than Exclusive Tahoe) filed a Complaint against Corcoran on June 21,

---

[1] All terms not herein defined shall be given the meaning ascribed to them in the Rule 56 Statement.

2022 (ECF No. 1), asserting claims against Corcoran for breach of contract, fraud and violations of California statute. (*Id*.)

Corcoran subsequently terminated the franchise agreements with ELI Realty and the JV Franchisees. (*See* R.56 Statement ¶ 166). Among other things, Corcoran demanded that the JV Franchisees pay amounts due to Corcoran under their franchise agreements but they have failed to do so. (*Id*. at ¶ 174).

Corcoran also demanded that the JV Franchisees assemble Corcoran's collateral and make same available for Corcoran's inspection as required under the security agreements conveyed to Corcoran. (*Id*. at ¶¶ 174-175). JV Franchisees refused to do so and, despite repeated admonitions from Corcoran, its collateral and the proceeds thereof have been transferred without consent of Corcoran. (*Id*. at ¶ 177).

Corcoran filed an Amended Answer to the Complaint, an Amended Third Party Complaint, and Amended Counterclaims – asserting claims against the JV Franchisees (the "Amended Third-Party Complaint"). (ECF No. 85). In that pleading, Corcoran asserts claims against JV Franchisees for: (i) accountings; (ii) breach of the franchise agreements with Corcoran; (iii) unjust enrichment; (iv) breach of the security agreements conveyed to Corcoran; (v) violations of the Lanham Act; (vi) unfair competition; and (vii) cybersquatting. (*Id*.).

This Court approved Corcoran's motion and appointed a permanent receiver (the "Receiver") for ELI Realty effective March 8, 2023 (the "Receivership Order"). (ECF No. 131). The Receiver is not the receiver for the JV Franchisees, however, the Receivership Order granted the Receiver "full management authority afforded to ELI Realty or Michael Mahon pursuant to the operating, shareholder, and/or management agreements (and amendments thereto) regarding each of the [Joint Venture] Franchisees." (*Id*.).

At the request of the Receiver, this Court entered an order on April 3, 2023 staying litigation against ELI Realty and the JV Franchisees, including the claims of Corcoran. (ECF No. 136).  By order entered on August 2, 2023, the Court approved a stipulation between the Receiver and Corcoran to lift the stay as to the JV Franchisees (but not ELI Realty). (ECF Nos. 142 and 143).

Corcoran understands that ELI Realty and the JV Franchisees ceased brokerage operations by January of 2023. (*See* R.56 Statement ¶ 182-184). On November 30, 2023, the Receiver filed an interim status report stating "ELI and its joint venture franchisees are not operating businesses and there is no prospect for restarting operations." (ECF No. 144).

Since filing their Complaint nearly two years ago, neither ELI Realty nor any of the JV Franchisees have taken any action to pursue their claims against Corcoran. Pursuant to this Court's order of January 23, 2023, fact discovery ended on December 29, 2023.  (ECF No. 105). Neither ELI Realty nor any of JV Franchisees served any discovery requests on Corcoran. (*See* R.56 Statement ¶ 15).

By this Motion, Corcoran seeks dismissal, with prejudice, of all claims of the JV Franchisees against Corcoran in this litigation for want of prosecution pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and C.D. Cal. Local Civ. Rule 41-1. Given that the JV Franchisees are defunct, have taken no action to pursue their claims against Corcoran, and have effectively abandoned their claims – Corcoran contends that dismissal of the JV Franchisees' affirmative claims is appropriate.

In addition, the stipulation regarding dismissal of all affirmative claims of  Michael Mahon, Pamela Mahon and MRM Investments, LLC (the "Mahon Parties") against Corcoran (ECF No. 146) is relevant to the absence of meritorious claims of the JV Franchisees. Michael Mahon and Pamela Mahon stipulated and agreed to the following: "5. Debtors' hereby stipulate that all counterclaims and claims of any nature on behalf of Michael Mahon, Pamela Mahon, and MRM Investments LLC against Corcoran in the District Court Action (the "Mahon Claims") cannot be sustained, are burdensome to the Debtors' bankruptcy estate, and are of inconsequential value and benefit to the Debtors' bankruptcy estate." [2]  Pursuant to this Court's order of January 23, 2024, "All counterclaims and claims of any nature made by or on behalf of Michael Mahon, Pamela Mahon, and MRM Investments, LLC, including those alleged in Counts One and Two of Third Party Defendants' Michael Mahon, Pamela Mahon, and MRM Investments, LLC's Counterclaims Against Third Party Counterclaim Defendant Corcoran Group, LLC (ECF No. 102), are DISMISSED with prejudice pursuant to Rule 41(a)(2) of

[2] On July 10, 2023, Michael Mahon and Pamela Mahon filed for bankruptcy protection in the Central District of California (Santa Ana) under case number 23-11395 (the "Mahon Bankruptcy Case").

the Federal Rules of Civil Procedure." (ECF No. 147). The claims of the JV Franchisees should likewise be dismissed.

This Motion also seeks summary judgment on Corcoran's claims against each of the JV Franchisees for breach of their franchise and security agreements with Corcoran.

As demonstrated below, there is no genuine dispute as to any material fact and Corcoran is entitled to judgment as a matter of law on all its breach of contract claims against JV Franchisees.

If this Motion is granted as requested, Corcoran intends to seek dismissal, without prejudice, of its remaining claims in this litigation against the JV Franchisees.  Corcoran also intends to resolve all claims in this action by and against ELI Realty (either by agreement with the Receiver or dispositive motion) as well as Corcoran's claims against remaining parties.[3]

## II.   STATEMENT OF FACTS

A detailed recitation of the factual support for the relief requested in this Motion is presented in Corcoran's *Local Civil Rule 56 Statement of Material Facts as to Which There is No Genuine Issue* (the "Rule 56 Statement"), the Declaration of Shail Sapra previously filed under ECF No. 106-3, the Declaration of Jacqueline Bartet, and the Declaration of Daniel M. Eliades filed with this Motion.

## III.   ARGUMENT

### POINT ONE

### THE JOINT VENTURE FRANCHISEES' CLAIMS SHOULD
### BE DISMISSED FOR WANT OF PROSECUTION[4]

Corcoran seeks dismissal of the claims of Exclusive Lifestyles SoCal, LLC, Exclusive Lifestyles San Francisco, Inc., Exclusive Lifestyles Ohio, LLC, and Exclusive Lifestyles Las Vegas, LLC (collectively, the "JV Franchisee Plaintiffs") for want of prosecution pursuant to Rule 41(b) of

---

[3] The claims between Corcoran and Libertas Funding LLC were dismissed pursuant to a stipulation dated March 27, 2023. ECF No. 133. Corcoran's claims against Michael Mahon and Pamela Mahon were disposed of in the Mahon Bankruptcy Case.  If this Motion is granted as requested, Corcoran would have remaining claims in this action against ELI Realty; MRM Investments, LLC; AIM High Capital Partners, LLC; and Matek LLC.

[4] Corcoran reserves the right to seek summary judgment dismissing the JV Franchisee Claims in the event that the Court does not grant its request for dismissal.

**CORCORAN GROUP LLC'S NOTICE OF MOTION TO DISMISS AND FOR PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**
8:22-CV-01195

the Federal Rules of Civil Procedure and C.D. Cal. Local Civ. Rule 41-1. (Exclusive Lifestyles Tahoe, LLC is not a plaintiff in this action.)

Federal actions must be prosecuted with "reasonable diligence." *Anderson v. Air West, Inc.*, 542 F.2d 522, 524 (9th Cir. 1976). Courts recognize that somewhere along the line, the rights of a defendant to be free from costly and harassing litigation must be considered. So too must the time and energy of the court and the rights of would-be litigants awaiting their turn to have their matters resolved. *Von Poppenheim v. Portland Boxing & Wrestling Com.*, 442 F.2d 1047, 1054 (9th Cir. 1971). Therefore, If a plaintiff fails to prosecute its claims, a defendant may move to dismiss the action or any claim against it. Fed. R. Civ. P. Rule 41(b). A court also has inherent power to dismiss for delay in prosecution *sua sponte*, without notice or hearing, "to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-632 (1962).

"[T]he failure to prosecute diligently is sufficient by itself to justify a dismissal, even in the absence of a showing of actual prejudice to the defendant from the failure." *Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 651 (9th Cir. 1991). This is because Rule 41(b) serves not only to protect defendants, but also to aid courts in keeping administrative control over their own dockets and to deter other litigants from engaging in similar dilatory behavior. *Stevens v. Greyhound Lines, Inc.*, 710 F.2d 1224, 1230-1231 (7th Cir. 1983).

The Court may also dismiss the claims of the JV Franchisee Plaintiffs pursuant to C.D. Cal. Local Civ. Rule 41-1. That local rule states that civil suits which have been pending for an unreasonable period without any action having been taken may, after notice, be dismissed for want of prosecution.

**A.      The JV Franchisee Plaintiffs Have Failed to Prosecute Their Claims.**

Civil suits pending for an unreasonable period without any action having been taken therein may, after notice, be dismissed for want of protection. Fed. R. Civ. P. Rule 41(b), C.D. Cal. Local Civ. Rule 41-1. In determining whether a Rule 41(b) dismissal is appropriate, the court must weigh the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits and (5) the availability of less drastic sanctions." *Id.* (quoting

*Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir.1986)). Dismissal is appropriate "where at least three factors strongly support dismissal." *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998) (internal citation and quotation marks omitted).

Here, all five factors support dismissing the JV Franchisee Plaintiffs' Complaint.

### 1.   Interest in Expeditious Resolution of Litigation

"The public's interest in expeditious resolution of litigation always favors dismissal" of dormant claims. *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999). Here, the JV Franchisee Plaintiffs failed to serve any discovery requests on Corcoran. (Pursuant to this Court's order of January 23, 2023, fact discovery in this matter ended on December 29, 2023 - (ECF No. 105)).

JV Franchisee Plaintiffs unwillingness to engage in even the most basic aspects of this litigation – coupled with the fact that the Joint Venture Franchisees are no longer operating — demonstrates an abandonment of the JV Franchisee Claims. Thus, the JV Franchisee Plaintiffs' failure to pursue the case since the Complaint was filed weighs strongly in favor of dismissal. *See Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (concluding that "failure to pursue the case for almost four months" weighed in favor of dismissal).

### 2.   Docket Management

"It is incumbent on the Court to manage its docket without being subject to routine noncompliance of litigants." *Id.* JV Franchisee Plaintiffs are all defunct. (*See* R.56 Statement ¶¶ 182-184). JV Franchisee Plaintiffs have not propounded any discovery in support of the JV Franchisee Claims (or otherwise) and the discovery period has expired. (*See* R.56 Statement ¶ 15). There is every indication that JV Franchisee Plaintiffs have abandoned their claims against Corcoran in this litigation. The Court's docket should not be cluttered with aborted claims.

### 3.   Risk of Prejudice to Defendant

A plaintiff's unreasonable delay creates a presumption of injury to a defendant's defenses. *Alexander v. Pacific Maritime Ass'n*, 434 F.2d 281, 283 (9th Cir. 1970). Actual prejudice is not required. *Moore v. Telfon Communications Corp.*, 589 F.2d 959, 967 (9th Cir. 1978) ("Failure to prosecute diligently alone justifies dismissal, even where actual prejudice to the defendant is not shown.").

6

**CORCORAN GROUP LLC'S NOTICE OF MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**
8:22-CV-01195

The JV Franchisee Plaintiffs allege claims for breach of contract, fraud, and violations of Cal. Bus. and Prof. Code § 17200. (*See* ECF No. 1). The specter of these un-advanced (and disputed) claims hanging over the head of Corcoran, warrants dismissal. In addition, Corcoran should not have to incur any further expenses regarding the long dormant claims of the JV Franchisee Plaintiffs.  The JV Franchisee Plaintiffs failed in their "responsibility . . . to move [this] case toward disposition on the merits" and engaged in "conduct [that] impede[d] progress in that direction". *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1228 (9th Cir. 2006). The third factor weighs in favor of dismissal as well.

### 4.   Availability of Less Drastic Alternatives

According to the Receiver's interim status report, "ELI and its joint venture franchisees are not operating businesses and there is no prospect for restarting operations." (ECF No. 144). The JV Franchisees have no apparent interest or ability to prosecute claims against Corcoran. The appropriate and necessary action is dismissal of the abandoned claims.

### 5.   Public Policy Favoring Disposition on the Merits

Although public policy generally sides against dismissal, "a case that is stalled or unreasonably delayed by a party's failure to comply with deadlines and discovery obligations cannot move forward toward resolution on the merits." *In re Phenylpropanolamine Products Liability Litigation*, 460 F.3d 1217, 1228 (9th Cir. 2006). This factor also weighs in favor of dismissal of all claims of the JV Franchisee Plaintiffs.

### POINT TWO

### CORCORAN SHOULD BE GRANTED SUMMARY JUDGMENT ON THE BREACH OF CONTRACT COUNTS OF ITS COMPLAINT AGAINST THE JV FRANCHISEES

### A.   The Standards for Summary Judgment.

A motion for summary judgment shall be granted if "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The purpose of summary judgment is to isolate, and then terminate, claims and/or defenses that are factually unsupported. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2048 (1986). The

Supreme Court has emphasized that summary judgment is to be viewed not as a disfavored technical shortcut, but rather as an integral part of the Federal Rules. *Id.*

Under Fed. R. Civ. P. Rule 56, this Court is permitted to declare certain facts - those which it determines to be without substantial controversy - as established for purposes of the case. Fed. R. Civ. P. Rule 56(a), (b).  Under Fed. R. Civ. P. Rule 56(d), courts may grant summary judgment in a case "upon all or any part thereof."

Summary judgment is proper if the evidence before the court "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp., supra*, 477 U.S. at 322. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). The moving party bears the initial burden of demonstrating either that there are no genuine material issues or that the opposing party lacks sufficient evidence to carry its burden of persuasion at trial. *Celotex Corp., supra*, 477 U.S. at 325; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 31 (9th Cir. 1987).

Once this burden has been met, the party resisting the motion "must set forth specific facts showing that there is a genuine issue for trial." *Anderson, supra*, 477 U.S. at 256. Here, the JV Franchisees must be able to come forward with admissible evidence demonstrating the existence of a genuine issue of material fact. *See*, Fed. R. Civ. P. Rule 56(c), (e). JV Franchisees are obligated to come forward with evidence that could cause reasonable persons to disagree on whether the facts claimed by them are true ". . . enough to require a jury or judge to resolve the parties' differing versions of the truth." *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983). The opposing party cannot just assert "the mere existence of some alleged factual dispute between the parties. *Anderson*, 477 U.S. at 247-248.

As demonstrated below, there is no genuine dispute as to any material fact and Corcoran is entitled to judgment as a matter of law on all its breach of contract claims against JV Franchisees.

**CORCORAN GROUP LLC'S NOTICE OF MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**
8:22-CV-01195

**B.**    **Per the JV Franchise Agreements, New Jersey Law Should Be Applied.**

Section 22.5 of each of the JV Franchise Agreements provides that the parties' rights under those agreements and the relationship between the parties is governed by and will be interpreted in accordance with New Jersey laws (statutory and otherwise). (*See* R.56 Statement ¶ 41). Corcoran contends that this Court should honor the parties' contractual choice of law.

"California courts ... apply the principles set forth in Restatement [(Second) of Conflict of Laws] section 187, which reflects a strong policy favoring enforcement of such [choice of law] provisions." *Nedlloyd Lines B.V. v. Super. Ct. of San Mateo,* 3 Cal. 4th 459, 464-65 (1992); *see also*, *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009) (when "parties state their intention in an express choice-of-law clause, California courts ordinarily will enforce the parties' stated intention"). This protects the justified expectations of the parties, the overriding policy that underlies the entire field of contracts law. 12 Cal. Jur. 3d Conflict of laws § 67; *see also*, 1 Witkin, Summary 11th Contracts § 65 (2021); Restatement § 188(1), Comment b. This policy is even stronger in the context of contracts between commercial entities, which are presumed to understand and intend such clauses to be enforced as written. *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459, 468 (1992); *Applera Corp. v. MP Biomedicals, LLC*, 173 Cal. App. 4th 769, 790, 93 Cal. Rptr. 3d 178, 196 (2009).

**C.**    **Corcoran is Entitled to Summary Judgment for Breach of the JV Franchise Agreements**

Counts twenty-five, thirty, thirty-five, forty, and forty-five of Corcoran's Counterclaim – Third Party Complaint assert claims against the JV Franchisees for their breach of the applicable JV Franchise Agreements. (*See* ECF No. 85). There are no genuine disputes as to any material fact concerning these counts and Corcoran is entitled to summary judgment on these breach of contract claims.

At law, the rights, obligations and liabilities of the parties to a written contract are to be determined from the express language of the contract. *Ligron, Inc. v. Medlanter, Inc.*, 86 N.J. 583, 591, 32 U.C.C. Rep. Serv. 166 (1981); *Levinson v. Weintraub*, 215 N.J. Super. 273, 276 (App. Div. 1987). *See also, The Malaker Corp. v. First Jersey Bank*, 163 N.J. Super. 463 (App. Div. 1978), *cert. denied* 79 N.J. 488 (1979).

1   Under New Jersey law, if the terms of a contract are unambiguous, the court may construe

2   the contract as a matter of law for purposes of summary judgment. *Nevets C.M Inc.* v. *Nissho*

3   *Iwai Am. Corp.,* 726 F. Supp. 525, 531 (D.N.J. 1989), *aff'd,* 899 F.2d 1218 (3d Cir. 1990); *see*

4   *also W.B.* v. *Matula,* 67 F.3d 484, 497 (3d Cir. 1995).[5] Corcoran submits that the JV Franchise

5   Agreements are unambiguous in all respects concerning Corcoran's breach of contract claims –

6   and there is no factual dispute concerning same.

7   In construing contracts, courts must enforce the intention of the parties. *Mayfair Fabrics v.*

8   *Henley,* 48 N.J. 483 (1967); *Onderdonk v. Presbyterian Homes of N.J., Inc.,* 171 N.J. Super. 529 (App.

9   Div. 1979)*; Newark Publishers' Ass'n v. Newark Typographical Union No. 103*, 22 N.J. 419 (1956);

10   *Kearny PBA Local No. 21 v. Town of Kearny*, 81 N.J. 208 (1979). In finding the intention of the

11   parties, the court must give effect to the intention of the parties as expressed in the contract. *Friedman*

12   *v. Tappan Dev. Corp.*, 22 N.J. 523 (1956). The intent expressed or apparent from the writing of the

13   contract itself governs interpretation. *See, e.g. Newark Publishers' Ass'n v. Newark Typographical*

14   *Union, No. 103, supra* ("The actual intent of the parties is ineffective unless made known in some way

15   in the writing. It is not the real intent but the intent expressed or apparent in the writing that controls."

16   22 N.J. at 427); *Schultz v. Topakyan,* 193 N.J. Super. 550 (App. Div. 1984). In *Kronisch v. Howard*

17   *Sav. Inst.*, 154 N.J. Super. 576 (Chancery 1977), the court stated:

18   > The objective of this Court in construing the terms of this "contract" is, as it is in all
19   > such cases, to discern the intent of the parties and to enforce their rights as they arise
20   > from their agreement. Ordinarily, the written terms of an agreement are the sole
        > objective manifestation of the parties' intent, and it is only by resort to the writing itself
        > that their intent may be discovered. Extrinsic or parole evidence is, therefore,
        > inadmissible.

21   154 N.J. Super. at 585–86. "It is of course not the province of the court to make a new contract or to

22   supply any material stipulations or conditions which contravene the agreements of the parties." *Marini*

23   *v. Ireland*, 56 N.J. 130, 143 (1970). *See also, Onderdonk v. Presbyterian Homes of N.J., Inc., supra.*

---

[5] Where the terms of a contract are ambiguous, the interpretation of the parties' intent is a question
of fact. *Ram Const. Co.* v. *Am. States Ins. Co.,* 749 F.2d 1049, 1051 (3d Cir. 1984). The initial
determination of whether a contract is clear or ambiguous is a preliminary question of law for the
court. *Aerospace & Agric. Implement Workers v. Mack Trucks, Inc.,* 917 F.2d 107, l II (3d Cir. 1990).

**CORCORAN GROUP LLC'S NOTICE OF MOTION TO DISMISS AND FOR PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**
8:22-CV-01195

The obligations of the JV Franchisees under their franchise agreements are unequivocal and precise. Moreover, none of the JV Franchisees has presented any genuine dispute as to any material fact concerning their contractual obligations.

        1.    <u>Recurring Fees</u>. The JV Franchisees each breached Sections 7 and 8 of their franchise agreements by failing to pay Corcoran Royalty Fees, Brand Marketing Fund contributions, and other amounts as and when set forth in the JV Franchise Agreements. (Sapra Decl. at ¶¶ 12 and 14). Such nonpayment is an event of default under each JV Franchise Agreement. *Id*. Given that these contractual provisions are not reasonably susceptible to differing interpretations, there is no ambiguity that would preclude summary judgment. *See Am. Cyanamid* v. *Fermenta Animal Health Co.,* 54 F.3d 177, 181 (3d Cir. 1995).

As of October 31, 2022, the JV Franchisees owed Corcoran the following outstanding and past due Royalty Fees, Brand Marketing Fund contributions and other amounts:

    (i)    **$1,703,699** from Exclusive San Francisco;

    (ii)    **$1,298,066** from Exclusive SoCal;

    (iii)    **$383,993** from Exclusive Ohio; and

    (iv)    **$447,270** from Exclusive Las Vegas.[6]

(*See* R.56 Statement ¶ 171).

        2.    <u>Liquidated Damages</u>. Section 16.7.2 of the each of the JV Franchise Agreements require each JV Franchisee to pay Corcoran certain liquidated damages in the event of that the subject franchise agreement is terminated before the "Expiration Date" (as defined in each franchise agreement), other than by mutual consent. (Sapra Decl. at ¶ 160). By the Termination Notices, Corcoran terminated the JV Franchise Agreements before their "Expiration Date". (*Id*.).

Pursuant to the formula for calculation of liquidated damages set forth in the JV Franchise Agreements, the JV Franchisees are indebted to Corcoran for liquidated damages under the applicable franchise agreements as follows:

---

[6] The foregoing amounts exclude (i) any amounts due for unreported transactions or unpaid obligations under the Franchise Agreements which accrued after October 31, 2022; (ii) interest, attorney's fees and costs due under the Franchise Agreements; (iii) liquidated damages due under the Franchise Agreements; and (iv) amounts due under the Notes, Security Agreements, or other agreements with Corcoran.

**CORCORAN GROUP LLC'S NOTICE OF MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**
8:22-CV-01195

(i)     **$976,185** from Exclusive San Francisco;

(ii)    **$6,310,686** from Exclusive SoCal;

(iii)   **$1,631,189** from Exclusive Ohio;

(iv)    **$1,255,108** from Exclusive Las Vegas; and

(v)     **$3,834,426** from Exclusive Tahoe.

(*See* R.56 Statement ¶ 181).

New Jersey law looks with favor upon contractual provisions, which fix specified amounts of damages in the event of a breach of contract. *D.HM Indus., Inc. v. Cent. Port Warehouses, Inc.,* 127 N.J. Super. 499 (App. Div. 1973), *aff'd,* 64 N.J, 548 (1974). A liquidated damages clause is valid where such a clause "constitutes a reasonable forecast of the provable injury resulting from the breach," and where the harm "is incapable or very difficult of accurate estimate." *Wasserman's, Inc. v. Middletown,* 137 N.J. 238, 249 (1994). Moreover, New Jersey courts have held that liquidated damages clauses between commercial parties, in contexts similar to this case, are presumptively valid, and the burden is on the party opposing enforcement of the clause to demonstrate otherwise. *Cent. Steel Drum Co. v. Gold Cooperage, Inc.,* 200 N.J. Super. 251,265 (App. Div.), *overruled on other grounds, Kutzin v. Pirnie,* 124 N.J. 500 (1991).  New Jersey courts have enforced liquidated damages clauses substantially similar to the clause at issue in this case. *See, e.g., Coldwell Banker Real Estate LLC v. Bellmarc Group LLC,* (September 9, 2021, D.N.J) ("Coldwell Banker is also entitled to liquidated damages of $1,640,769.33 as a result of a breach of the Franchise Agreements."), a copy of the unpublished Finding of Facts and Conclusions of Law, is attached to the Declaration of Daniel M. Eliades, at Exhibit F.

The validity of a liquidated damages clause is valid and enforceable and, as with any other type of unambiguous contractual provision, a question of law. *Naporano Assocs., L.P. v. B & P Builders,* 309 N.J. Super. 166, 176 (App. Div. 1998); *Hosiery Corp. of Am.* v. *Int'/ Data Processing, Inc.,* No. 89-CV-115, 1991 WL 30015, at *15 (D.N.J. Feb. 28, 1991).

Section 16.7.2 of the each of the JV Franchise Agreements provides:

> **16.7.2** *If an "early termination" of this Agreement occurs (which will mean any termination of the Agreement before the Expiration Date, other than a mutual termination under Section 16.2.1 or termination by you under Section 16.2.5), you will*

*immediately pay us liquidated damages. The parties agree that it would be impracticable or extremely difficult to calculate the actual amount you would have been obligated to pay as Royalty Fees, New Development Services Royalty Fees, BMF contributions, and other fees due under this Agreement through the Expiration Date and that the following method of calculation represents a fair and reasonable estimate of our damages: Liquidated damages will be equal to the combined monthly average of Royalty Fees, New Development Services Royalty Fees, BMF contributions, and any other fees under this Agreement (without regard to any fee waivers or other reductions) payable from the Opening Date through the date of early termination, multiplied by the lesser of (i) thirty-six (36) or (ii) the number of full months remaining in the Term.*

(*See* R.56 Statement ¶ 180).

This language demonstrates the parties' intent to fix specified amounts of liquidated damages in the event of a breach of contract as actual damages for breach of the JV Franchise Agreements are impossible or very difficult to estimate. Indeed, the amount Corcoran would have earned under the JV Franchise Agreements, in the absence of breach by the JV Franchisees, depends in large part upon factors such as the national, regional, and local economy; mortgage interest rates; inventory of real estate offered for sale; the  patterns of buyers and sellers of real estate; national or world events; the entry or withdrawal of competitors from the market; and the effort, skill, and resources of the JV Franchisees.

        3.    <u>Attorney Fees</u>. Under New Jersey law, a contractual agreement providing for the payment of attorneys' fees is valid and enforceable. *Cohen v. Fair Lawn Diaries, Inc.*, 86 N.J. Super. 206 (App. Div. 1965), *aff'd* 44 N.J. 450; *Alcoa Edgewater No. 1 Federal Credit Union v. Carroll*, 44 N.J. 442 (1965) (Holding that a contractual provision for attorneys' fees constituted an element of damages); *Papalexiou v. Tower West Condo.,* 167 N.J. Super. 516, 531 (Ch. Div. 1979) (With respect to a fees and costs provision, New Jersey "does not have a public policy which would prevail over the enforcement of an express contract between private parties.")

In Section 22.10 of their franchise agreements JV Franchisees agreed to pay Corcoran attorneys' fees, costs and other amounts incurred by Corcoran to enforce or collect amounts owed under the JV Franchise Agreements. (*See* R.56 Statement ¶ 39). Accordingly, Corcoran is contractually entitled to attorneys' fees and costs incurred in connection with this action and requests leave to submit an affidavit establishing these amounts should the Motion be granted.

**CORCORAN GROUP LLC'S NOTICE OF MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**
8:22-CV-01195

4.  <u>Pre-judgment Interest</u>. State law governs the availability of prejudgment interest on state law claims. *Mid-Jersey Bank* v. *Fidelity-Mortgage Investors,* 518 F.2d 640, 645 (3d Cir. 1975).  S*ee also Utica Mut. Ins. Co.* v. *DiDonato,* 187 N.J. Super. 30, 43 (App. Div. 1982) (allowance of prejudgment interest in a commercial case may be determined by provision in contract).

The JV Franchise Agreements obligate the JV Franchisees to pay Corcoran interest and other amounts as and when set forth in Section 11.2: *Any payments more than ten (10) days past due will bear interest at the lesser of the highest rate allowed by law or 18% per annum (1.5% per month).* (*See* R.56 Statement ¶ 156).

Even if the franchise agreements were silent on the issue of prejudgment interest, New Jersey courts have allowed awards of prejudgment interest, in the court's discretion, to "indemnify the claimant for the loss of what the monies due him would presumably have earned had the payment not been delayed." *Cooper Distrib. Co. v. Amana Refrigeration, Inc.,* 63 F.3d 262, 284 (3d Cir. 1995); *Lautek Corp. v. Image Business Sys.,* 276 N.J. Super. 531, 551 (App. Div. I 994); *Busik v. Levine,* 63 N.J. 351, 358 (1973) (entitlement to prejudgment interest applies equally to liquidated and unliquidated claims).

Corcoran is contractually entitled to prejudgment interest at the annual rate of 18% on the outstanding Royalty Fees, Brand Marketing Fund contributions and other amounts due from the JV Franchisees[7] from December 2, 2022 (ten days after the Termination Dates of the JV Franchise Agreements) through and including the date of judgment. Corcoran hereby waives its claim for interest on the liquidated damages due from JV Franchisees.

**D.  <u>Corcoran is Entitled to Summary Judgment for Breach of the Security Agreements.</u>**

In its Counterclaim – Third Party Complaint, Corcoran asserts that the JV Franchisees breached the security agreements they conveyed to Corcoran in Counts twenty-seven (Exclusive San

---

[7] $1,703,699 from Exclusive San Francisco; $1,298,066 from Exclusive SoCal; $383,993 from Exclusive Ohio; and $447,270 from Exclusive Las Vegas.

Francisco), thirty-two (Exclusive SoCal), thirty-seven (Exclusive Ohio), forty (Exclusive Las Vegas), and forty-five (Exclusive Tahoe). (*See* ECF No. 85).

Under Cal. Com. Code § 9203 (A), Under Ohio Rev. Code Ann. § 1309.203, and Under Nev. Rev. Stat. Ann. § 104.9203, a security interest is enforceable against a debtor and third parties so long as: (a) the debtor has entered a security agreement describing the collateral; (b) value has been given; and (c) the debtor has rights in the collateral. There has been no challenge to the validity of any of the JV Security Agreements.

Section 1 of each JV Security Agreement provides:

*(a)     Debtor will properly maintain and care for the Collateral and will not remove the Collateral from the Offices (as defined in the Franchise Agreements);*

*(b)     Debtor will notify Secured Party in writing prior to any change in Debtor's place of business;*

*(c)     Debtor has not executed and will not execute as Debtor any security agreement or financing statement covering any of the Collateral except with Secured Party, nor will Debtor pledge or encumber the Collateral, or allow any lien to be placed against the Collateral, whether voluntary or involuntary;*

*(d)     Debtor represents and warrants to Secured Party that the Collateral shall not become collateral for any other obligations previously incurred, nor collateral under any other security agreement(s) previously executed by Debtor; and*

*(e)     Debtor will not sell, contract for sale or otherwise dispose of any of the Collateral except in the ordinary course of business.*

(*See* R.56 Statement ¶ 64).

Each of the JV Security Agreements provides that a breach of any term, provision, warranty or representation in the security agreement, the corresponding JV Franchise Agreement, or any other agreement between the parties is an "Event of Default" of the JV Security Agreement. (Id.)  Each of the JV Franchisees defaulted under the applicable JV Security Agreements. (d Exhibits 45-49 to ECF No. 106-3.).

Upon an Event of Default of the JV Security Agreements, among other things, Corcoran may require the JV Franchisees to assemble the Corcoran's collateral and make it available to Corcoran. (*See* R.56 Statement ¶ 66).

In the Collateral Notices of November 21, 2022, Corcoran demanded that each of the JV Franchisees, except Exclusive Tahoe, assemble Corcoran's collateral and the records pertaining to the collateral and make same available for Corcoran's inspection. ELI Realty and the applicable JV Franchisees failed to comply with Corcoran's demand. (*See* R.56 Statement ¶ 175). Since the date of the Collateral Notices, the JV Franchisees have failed to remit to Corcoran any of Corcoran's collateral or the proceeds thereof. (Id.)

The obligations of the JV Franchisees under the JV Security Agreements are clear.  There are no genuine disputes as to any material fact concerning the contractual obligations or the JV Franchisees breach.  Accordingly, Corcoran is entitled to summary judgment counts twenty-seven, thirty-two, thirty-seven, forty, and forty – five requiring each of the JV Franchisees to provide Corcoran with separate written accountings including: (i) a complete inventory of all listings and pending transactions of the Joint Venture Franchisee as of November 21, 2022 (each a "Listing and Pending Report"); and (ii) the identity, location and/or disposition of the items listed in the Listing and Pending Report, as well as any other Corcoran- Exclusive San Francisco Collateral, Corcoran-Exclusive SoCal Collateral, Corcoran-Exclusive Las Vegas Collateral, Corcoran-Exclusive Tahoe Collateral, and Corcoran-Exclusive Ohio Collateral (all as defined in the Motion), as of and subsequent to November 21, 2022.

## IV.   CONCLUSION

For the foregoing reasons, Corcoran respectfully requests that this Court grant the Motion and enter judgment (i) dismissing, with prejudice, all of the claims of the Joint Venture Franchisees against Corcoran in this litigation, and (ii) granting Corcoran summary judgment on Corcoran's claims against each of the Joint Venture Franchisees for breach of their franchise and security agreements with Corcoran.

1  Dated: March 13, 2024                    Respectfully submitted,

2

3                                           Jonathan P. Hersey (SBN 189240)
                                            Damon M. Pitt (SBN 291473)
4                                           K&L Gates LLP
                                            1 Park Plaza
5                                           Twelfth Floor
                                            Irvine, CA 92614
6                                           Telephone: 949.253.0900
                                            Facsimile: 949.253.0902
7                                           Email: damon.pitt@klgates.com

8                                           Daniel M. Eliades (Admitted *Pro Hac Vice*)
                                            K&L GATES LLP
9                                           One Newark Center, 10th Floor
                                            Newark, NJ 07102
10                                          Telephone: 973.848.4018
                                            Facsimile: 973.848.4001
11                                          Email: Daniel.Eliades@klgates.com

12                                          By: */s/ Daniel M. Eliades*
                                                Daniel M. Eliades
13                                              *Attorney for Corcoran Group LLC*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CORCORAN GROUP LLC'S NOTICE OF MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**
8:22-CV-01195